# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BEACH TV PROPERTIES, INC.,      :
      :
    Plaintiff,      :    Civil Action No.:    15-1823 (RC)
      :
    v.      :    Re Document No.:    59
      :
HENRY A. SOLOMON,      :
      :
    Defendant.      :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO AMEND ITS COMPLAINT

## I. INTRODUCTION

Plaintiff the Atlanta Channel, Inc. ("ACI"), seeks leave to amend its complaint for a second time. The proposed second amended complaint includes two new defendants, three new grounds for recovery, and new factual allegations. The only active defendant prior to this motion was ACI's former attorney, Henry Solomon. The only active claim was that he failed to complete one page of routine paperwork at the FCC. Now, Plaintiff alleges that Mr. Solomon, his colleague Melodie Virtue, and their law firm, Garvey Schubert Barer ("Garvey"), were all negligent when they advised ACI to assign its television license to former-plaintiff Beach TV Properties, Inc. ("Beach TV"). Without explicitly pleading facts supporting it, Plaintiff alleges that the assignment somehow diminished ACI's malpractice claim against Mr. Solomon. Plaintiff also alleges that Ms. Virtue and Mr. Solomon "lulled" ACI into not filing this suit earlier.

Garvey opposes Plaintiff's motion on the grounds that amendment of the complaint would be futile, because it would not withstand a motion to dismiss. In support of its opposition, Garvey argues that the added count against Mr. Solomon does not adequately allege the elements

of legal malpractice. It makes this same argument with respect to the "duty" element for the new count against Ms. Virtue. In addition, Garvey argues that the new claim against Ms. Virtue is not yet ripe, that adding her as a defendant would be disruptive, and that the complaint does not support an argument that Ms. Virtue "lulled" ACI into inaction.

The Court agrees with Garvey that adding the new count against Mr. Solomon would be futile. Plaintiff's proposed second amended complaint in no way describes how the assignment of ACI's television license could have caused its malpractice suit to lose value. Its negligence claim thus does not contain a plausible theory of causation. However, the Court finds that ACI adequately alleged the other elements of the new claims, including the duty element of the claim against Ms. Virtue. The Court also finds that the claim against Ms. Virtue, though contingent upon certain legal rulings that have not yet occurred, is ripe. Moreover, adding such a claim would not be so disruptive as to justify denying Plaintiff a forum to raise its claims. Finally, Defendant's arguments pertaining to "lulling" are not applicable here—Plaintiff's lulling claim is a preemptive response to the affirmative defense that the statute of limitations bars recovery, not a freestanding claim in the complaint. Because adding the new count against Ms. Virtue would not be futile and Garvey is allegedly liable under the doctrine of *respondeat superior*, the Court grants Plaintiff's motion in part and denies it in part.

## II. FACTUAL BACKGROUND

The Court already provided a detailed factual background in its memorandum opinion addressing Defendants' motions to dismiss. *See Beach TV Props., Inc. v. Solomon*, No. 15-1823, 2016 WL 6068806, at *3 (D.D.C. Oct. 14, 2016). Assuming familiarity with the prior opinion, the Court outlines only the most relevant facts to the resolution of Plaintiff's motion to amend.

This legal malpractice case arises out of attorney Henry Solomon's alleged failure to adequately complete an FCC Statement of Eligibility, which would have entitled ACI to an FCC Low-Power Television class A license. *Id.* at *1. Key omissions on routine FCC paperwork completed by Mr. Solomon allegedly caused ACI to forfeit its statutory right to a class A license, resulting in a claimed loss of hundreds of millions of dollars. *Id.* Mr. Solomon represented ACI from the time of filing the license application in 2000 until at least 2012. *See id.*; *see also* Pl.'s Proposed Second Am. Compl. ¶ 39, ECF No. 59-3. In 2009, Mr. Solomon allegedly advised ACI to assign its TV license to Beach TV, but "failed to advise ACI on the effect the assignment would have on ACI's malpractice claim against him." Pl.'s Proposed Second Am. Compl. ¶ 45.

During the administrative appeals of the FCC's rejection, Mr. Solomon moved from the law firm Haley Bader to Garvey. *Beach TV Props.*, 2016 WL 6068806, at *3. The Court dismissed Plaintiff's claims against Haley Bader for lack of personal jurisdiction and against Garvey for failure to state cognizable claims. *Id.* at *1. It also dismissed claims made by Beach TV for lack of standing, because ACI's attempted assignment of the malpractice claims was invalid under Virginia law. *Id.* at *1, *17.

Plaintiff's proposed amended complaint makes four distinct claims and seeks to add two defendants. *See* Pl.'s Proposed Second Am. Compl. ¶¶ 51–62; 73–87. The first count is largely the same as it was in Plaintiff's original complaint, and alleges that Mr. Solomon committed malpractice by failing to complete the FCC Statement of Eligibility. *Compare* Pl.'s Proposed Second Am. Compl. ¶¶ 73–75 *with* Am. Compl. ¶¶ 122–23, ECF No. 21.

Plaintiff seeks to add a second count—"Count Two"—alleging that Mr. Solomon's failure to adequately counsel ACI with respect to the license that ACI assigned to Beach TV was negligent and "compromise[d] ACI's ability to recover damages based on its ownership of

WTHC-LD." Pl.'s Mot. Am. Compl. ¶ 15; Pl.'s Proposed Second Am. Compl. ¶¶ 76–79.

Plaintiff alleges that Mr. Solomon negligently advised ACI that the assignment of the television

license WTHC-LD would shield that license from potential ACI creditors, and prepared and filed

documents for the assignment. Pl.'s Proposed Second Am. Compl. ¶¶ 42–43. Mr. Solomon was

negligent, ACI argues, because "Mr. Solomon failed to advise ACI that the License Assignment

could adversely affect ACI's legal malpractice claim against him." Pl.'s Proposed Second Am.

Compl. ¶ 45. ACI's proposed amended complaint does not detail why or how the assignment of

the license could adversely affect the malpractice claim, but its motion suggests that ownership

of the WTHC-LD license is a prerequisite to recovering for malpractice, and that assigning the

license without the malpractice claim undermined the holder of the malpractice claim's ability to

recover damages. Pl.'s Mot. Am. Compl. ¶ 15; *see generally* Pl.'s Proposed Second Am. Compl.

After the Court ruled that the assignment of the malpractice claim against Mr. Solomon was

invalid because D.C. law did not apply, Beach TV assigned the WTHC-LD license back to ACI,

so ACI now holds both the malpractice claim and the license. Pl.'s Proposed Second Am.

Compl. ¶¶ 47–50. Thus, to the extent that Beach TV's ownership of the license for seven years

does not affect ACI's ability to recover damages on the malpractice claim in Count One or the

amount of such damages, Plaintiff concedes Count Two is moot. Pl.'s Reply Def.'s Opp'n to

Pl.'s Mot. Amend Compl. at 5, ECF No. 64.

Notably, moving to add Count Two is somewhat inconsistent with ACI's prior argument

at the motion-to-dismiss stage. In its opposition to Haley Bader's motion to dismiss, ACI

previously argued that the assignment from ACI to Beach TV was "governed by District of

Columbia law, which permits" the assignment of both TV licenses and malpractice claims. Pl.'s

Opp'n Haley Bader Mot. Dismiss at 16, ECF No. 36. Thus, Plaintiff argued, the malpractice

claim did not lose any value when it was assigned from ACI to Beach TV along with the WTHC-LD license. Pl.'s Opp'n Haley Bader Mot. Dismiss at 18. But now, after the Court held that D.C. law does not apply, meaning that the assignment of the malpractice claim was invalid, *see Beach TV Properties, Inc.*, 2016 WL 6068806, at *16, ACI accuses Mr. Solomon of malpractice for failing to recognize that assignment of the malpractice claim was invalid.

The third count—and first new proposed defendant—arises out of the alleged negligence of attorney Melodie Virtue. According to the complaint, Ms. Virtue worked with Mr. Solomon and then, after Mr. Solomon stopped working as a full-time attorney, took over as lead counsel to ACI. Pl.'s Proposed Second Am. Compl. ¶¶ 51–56. Plaintiff alleges that Ms. Virtue was negligent in failing to inform ACI that Mr. Solomon had committed malpractice, that his withdrawal from the case could affect the statute of limitations of malpractice claims, that she had a conflict of interest in light of her professional relationship with Mr. Solomon, and that ACI should retain separate counsel. Pl.'s Proposed Second Am. Compl. ¶¶ 59, 80–84. The proposed amended complaint also alleges that both Mr. Solomon and Ms. Virtue "lull[ed] ACI into inaction in filing its malpractice claims against" them by continuing to work on their case. Pl.'s Proposed Second Am. Compl. ¶¶ 57–58.

The final count of the proposed amended complaint seeks to add Garvey as a defendant for the malpractice of Mr. Solomon and Ms. Virtue through the doctrine of *respondeat superior*. Pl.'s Proposed Second Am. Compl. ¶ 85–87. Thus, the facts alleged for ACI's second and third counts are also relevant to its fourth count.

## III. ANALYSIS

Defendant Solomon and his former law firm, Garvey, oppose Plaintiff's motion on the grounds that amendment of the complaint would be futile. *See* Garvey's Mem. P. & A. Opp'n

Pl.'s Mot. Leave Amend Compl. ("Garvey's Opp'n") at 14, ECF No. 62; Def. Solomon's Opp'n Pl.'s Mot. Leave Amend Compl. ("Def.'s Opp'n") at 4, ECF No. 63.  They specifically argue that Counts Two and Three—and, effectually, Count Four—do not state cognizable claims, and therefore allowing Plaintiff to amend its complaint to include them would be futile.  *See* Garvey's Opp'n at 16–27.  They also assert that Plaintiff's claims against Ms. Virtue are not ripe, and that adding them would be unduly disruptive to the case.  Garvey's Opp'n at 25–27.

Garvey is partially correct.  Although Plaintiff is not precluded from making its argument in light of its position at the motion-to-dismiss stage and adequately pleads the elements of duty and breach, Plaintiff does not adequately plead causation, because it never explains how the assignment of a television license could adversely affect the value of its malpractice claim against Mr. Solomon.  With that said, adding the claim against Ms. Virtue would not be futile.  Plaintiff adequately states the legal duty that she owed ACI and does not seek recovery on the independent ground of "lulling," as Garvey seems to suggest.  And, despite ACI's failure to respond to Garvey's arguments with respect to disruption and ripeness, the Court recognizes that amendment would not be unduly disruptive, and that the claim against Ms. Virtue is ripe.

## A.  Legal Standard

In general, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  Although the standard is generous, leave should be denied in cases involving "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085,

1099 (D.C. Cir. 1996) (citing *Foman*, 371 U.S. at 181–82). Accordingly, in determining the futility of amendment, the Court applies the same standard it applies in resolving a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *Id.*

As noted in the Court's previous opinion, to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations that, if accepted as true, would state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## B. Count Two

As noted above, ACI seeks to add a count—"Count Two"—to the complaint. Count Two alleges that Mr. Solomon negligently recommended that ACI should assign its WTHC-LD license to Beach TV without counseling ACI that such an assignment could adversely affect its malpractice claim against Mr. Solomon. Pl.'s Proposed Second Am. Compl. ¶¶ 78–79; Pl.'s Mot. Am. Compl. ¶ 15.

Garvey makes three arguments in support of its claim that the proposed addition of Count Two is futile. First, it argues that the count fails because it is predicated upon ACI's previous, faulty assumption that D.C. law applies. Garvey's Opp'n at 16–18. Second, Garvey argues that the claims proposed in Count Two fail because they do not adequately plead the duty or breach elements of malpractice. Garvey's Opp'n at 18–20. Third, Garvey argues that the claims in

Count Two fail because they do not adequately allege proximate causation and damages.  *See* Garvey's Opp'n at 21–22.[1]  The Court addresses each of these arguments in turn.

### 1.  ACI is Not Estopped from Alleging that Mr. Solomon Should Have Advised His Client that the Assignment Could be Held Invalid, Despite Previously Arguing that D.C. Law Applies

In its opposition to Haley Bader's motion to dismiss its original complaint, ACI asserted that the assignment from ACI to Beach TV was "governed by District of Columbia law, which permits" the assignment of both licenses and malpractice claims in certain circumstances.  Pl.'s Opp'n Haley Bader Mot. Dismiss at 16.  Thus, ACI argued at that time that the malpractice claim did not lose any value when it was assigned from ACI to Beach TV.  Pl.'s Opp'n Haley Bader Mot. Dismiss at 18.  In its previous memorandum opinion, the Court disagreed with ACI's position, instead holding that Virginia law applies instead of D.C. law, meaning that the assignment of the malpractice claim was invalid, leaving ACI with the malpractice claim but Beach TV with the WTHC-LD license.  *See Beach TV Properties, Inc.*, 2016 WL 6068806, at *16.  Now ACI moves to add a new count alleging that Mr. Solomon committed an additional act of negligence because he should have known that the assignment of the malpractice claim was invalid, and failed to advise ACI that assigning the WTHC-LD license could jeopardize ACI's earlier malpractice claim against him.

Garvey argues that amending the complaint to include this new claim is futile.  It argues that, because ACI itself previously asserted that D.C. law applied to the assignment to Beach TV of both the WTHC-LD license and the malpractice claim, Mr. Solomon could not have been negligent in advising ACI to convey the license to Beach TV under the same D.C. law that ACI

---

[1] Defendant Solomon similarly argues that Count Two does not contain sufficient factual material to constitute a plausible claim.  *See* Def.'s Opp'n at 4–5.  His argument is largely duplicative of Garvey's second two arguments.

previously argued applied to the assignment. Garvey's Opp'n at 16–18. Garvey does not cite to any cases suggesting that advancing a legal argument in opposition to a motion to dismiss estops a party from advancing an inconsistent argument later in the case. Garvey's Opp'n at 16–18. The Court concludes that ACI is not estopped from advancing this argument.

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Zedner v. United States*, 547 U.S. 489, 504 (2006) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)) (internal quotations and alterations omitted). Although "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle," three factors generally guide courts' analyses. *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (internal citations omitted). First, the party's later position usually must be "clearly inconsistent" with its earlier position. *Id.* (internal quotation marks and citation omitted). Second, a party generally must have succeeded in its earlier position to be estopped from advancing its later position. *Id.* at 750–51 (reasoning that judicial estoppel of inconsistent positions generally does not apply "absent success in a prior proceeding," because "a party's later inconsistent position introduces no 'risk of inconsistent court determinations'" (quoting *United States v. C.I.T. Constr. Inc.,* 944 F.2d 253, 259 (5th Cir. 1991)); *see also* 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477 (2d ed. 2002). Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage if it is not estopped. *New Hampshire v. Maine*, 532 U.S. at 751.

In light of the three factors outlined above, ACI's addition of Count Two would not be futile. Because ACI now relies on the application of Virginia law to establish that Mr. Solomon was negligent when it previously argued that D.C. law applied to the assignment, its positions are clearly inconsistent, and the first factor weighs in favor of estoppel. But the second and third factors weigh heavily against estoppel. ACI did not prevail in its argument that District of Columbia law applied to the assignment of the malpractice claim. *See Beach TV Properties, Inc.*, 2016 WL 6068806, at *16. Not only does the lack of success weigh against judicial estoppel, but it generally serves as a prerequisite to its application. *New Hampshire v. Maine*, 532 U.S. at 750–51 (reasoning that judicial estoppel of inconsistent positions generally does not apply "absent success in a prior proceeding," because "a party's later inconsistent position introduces no 'risk of inconsistent court determinations'" (quoting *C.I.T. Constr.,* 944 F.2d at 259); *see also* Wright, Miller & Cooper, *supra*, § 4477 (discussing the "*demand* that the party to be estopped have benefited from the prior inconsistent statement" (emphasis added)).

The third factor further weighs against estoppel. It may have been in ACI's best interest to advance a difficult, but potentially advantageous choice-of-law position when it opposed the motion to dismiss. But ACI does not unfairly benefit from now being able to assert that Mr. Solomon should have anticipated the difficulty of that argument. ACI now simply alleges that, in light of the applicability of Virginia law, Mr. Solomon was negligent in advising ACI to assign the WTHC-LD license, because such assignment "could adversely affect ACI's legal malpractice claim against him arising out of his preparation, review[,] and filing of the defective ACI Statement." Pl.'s Proposed Second Am. Compl. ¶¶ 44–45. Because ACI failed in advancing its first position and advancing a contrary position now does not unfairly advantage ACI, the Court finds that ACI's previous argument that D.C. law applied does not estop it from

asserting malpractice against Mr. Solomon for failing to anticipate that the assignment could be held invalid based on the applicability of Virginia law.

### 2. ACI Plausibly Alleges Duty and Breach in Connection with Count Two

Garvey argues that allowing ACI to amend its complaint to add Count Two—which alleges that Mr. Solomon negligently failed to advise ACI on the effect assigning the television license could have on its malpractice claim against him—would be futile because ACI never "articulat[ed] . . . what exactly the standard of care purportedly required Mr. Solomon to do—or not do"—with respect to assignment of the license. Garvey's Opp'n at 19. Garvey also contends that the proposed amended complaint never articulates how Mr. Solomon breached such a duty. Garvey's Opp'n at 19. Garvey then sets out several bullet points of questions that the proposed amended complaint supposedly leaves unanswered. Among them are the following: (1) "[w]hy Beach TV's transfer of the TV license back to ACI . . . has not remedied their concerns;" (2) whether Plaintiff believes Beach TV should also proceed as a plaintiff; (3) the basis for Plaintiff's ostensible contention that the license should not have been assigned; (4) what risks ACI and Beach TV were exposed to through the assignment; and (5) what advice an independent lawyer would have given about the assignment of either the license or the malpractice claim. Garvey's Opp'n at 19–20. Because these questions need not be answered at this stage of the proceedings, Plaintiff adequately pled the elements of duty and breach in Count Two.

The elements of a legal malpractice claim "are the same as those of an ordinary negligence action." *Chase v. Gilbert*, 499 A.2d 1203, 1211 (D.C. 1985) (quoting *O'Neil v. Bergan*, 452 A.2d 337, 341 (D.C. 1982)). However, as part of the duty that one owes *under the circumstances*, "those with special training and experience adhere to a standard of conduct commensurate with such attributes." *O'Neil*, 452 A.2d at 341 (quoting *Morrison v. MacNamara*,

407 A.2d 555, 560 (D.C. 1979)).  Stated in terms tailored to the actions of a legal expert, to state

a claim for legal malpractice, a plaintiff must allege plausible facts showing that (1) an attorney–

client relationship existed; (2) the attorney breached a duty of reasonable care; (3) causation; and

(4) damages.  *Mawalla v. Hoffman*, 569 F. Supp. 2d 253, 256 (D.D.C. 2008) (citing *Chase*, 499

A.2d at 1211–12).  Establishing the applicable standard of care often requires the testimony of

expert witnesses.  *See Burke v. Scaggs*, 867 A.2d 213, 219 (D.C. 2005) (citing *Ray v. American

Nat'l Red Cross*, 696 A.2d 399, 404 (D.C. 1997)).

Federal Rule of Civil Procedure 8(a) provides that "a claim for relief must contain . . . a

short and plain statement of the claim showing that the pleader is entitled to relief."  Because a

uniform standard of care applies in actions for negligence in the District of Columbia, plaintiffs

need not engage in a formal recitation of the elements for negligence to properly plead a

plausible claim for relief.  *See Sherrod v. McHugh*, No. 16-0816, 2017 WL 627377, at *6

(D.D.C. Feb. 15, 2017); *see also Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1352 (S.D. Fla.

2008) ("conclud[ing] that under . . . Federal Rule of Civil Procedure 8, [p]laintiffs are not

required to allege the applicable standard of care in their complaint," and that because the

"[d]efendant . . . is on notice of the general nature of [p]laintiffs' negligence claim, [the

defendant's] request to dismiss that claim is" insufficient).  Under Rule 8(d), a party may set out

a claim in the alternative, in which case "the pleading is sufficient if any one of them is

sufficient."  Fed. R. Civ. P. 8(d)(2).

Garvey's conclusory assertions that ACI did not set forth the applicable standard of care

or allege breach are not suited for this stage of the proceedings.  Although Plaintiff's negligence

claim related to the assignment of the WTHC-LD license from ACI to Beach TV is not a

paragon of clarity, it suffices to survive a motion to dismiss, because a plaintiff need not predict

and answer every possible objection when pleading the elements of negligence. Succinctly stated, Plaintiff claims, in the alternative, that Mr. Solomon failed to behave as a reasonable and prudent attorney would have when he did not "advise ACI that the License Assignment could adversely affect ACI's legal malpractice claim against him." Pl.'s Proposed Second Am. Compl. ¶¶ 44–45. The alleged advice regarding assignment of the license took place in the context of an attorney–client relationship. *See* Pl.'s Proposed Second Am. Compl. ¶¶ 27, 42–43. Thus, a duty is established. *Mawalla*, 569 F. Supp. 2d at 256. And, with respect to breach of that duty, whether a reasonable and prudent attorney would have given such advice is a question of fact that may require the consultation of expert witnesses. *See Burke*, 867 A.2d at 219. Given that ACI need not spell out the standard of care in any greater detail at this time, it has established a duty and a breach. *See Chase*, 499 A.2d 1211–12; *Mawalla*, 569 F. Supp. 2d at 256.

The questions that Garvey raises are either answered by the proposed amended complaint or irrelevant at this stage. At this stage of the proceedings, ACI is not required to show that the assignment of the license from Beach TV to ACI did not fully restore the value of ACI's malpractice claim. ACI makes its claim in the alternative: if the license assignment did not affect the value of the malpractice claim, Count Two will be moot. Pl.'s Reply Def.'s Opp'n to Pl.'s Mot. Am. Compl. at 5. But if the value of the malpractice action is diminished by the assignment, Mr. Solomon was negligent in the advice he gave ACI regarding the assignment.

Moreover, whether ACI believes Beach TV should proceed as an additional plaintiff in this case is irrelevant to *ACI's* malpractice claim. And, although Garvey is correct that ACI provided little explanation as to the basis for its contention that the license should not have been assigned from ACI to Beach TV, the plausible negligence claim outlined above was sufficient to put Mr. Solomon and Garvey on notice of that claim. The same can be said for the risks that

ACI and Beach TV were each exposed to by the assignment—which, as the Court discusses below, are not described in any detail in the proposed amended complaint. To advance its claim, however, ACI need not plead the specific risks and benefits that a negligent lawyer failed to consider. It suffices that Mr. Solomon unreasonably "failed to advise ACI on the risks or merits of assigning [the] malpractice claim," *see* Pl.'s Proposed Second Am. Compl. ¶ 46. Finally, ACI did, in effect, answer Garvey's question about what an independent lawyer would have advised in ACI's situation. According to ACI, an independent and reasonable lawyer would have advised ACI that the value of its malpractice claim could decrease as a result of the assignment. *See* Pl.'s Proposed Second Am. Compl. ¶¶ 44–45. Although this claim seems suspect in light of Plaintiff's previous argument that D.C. law applies, *see Beach TV Properties, Inc.*, 2016 WL 6068806, at *16, it suffices to survive a motion to dismiss.

### 3. ACI Does Not Allege a Plausible Theory of Causation

The Court next addresses Garvey's argument that the addition of Count Two is futile because ACI fails to adequately allege causation and damages. *See* Garvey's Opp'n at 21. Garvey contends that Plaintiff does not explain "how ACI's ability to recover . . . might be diminished by the assignment of either the license or the malpractice claim," and that it is not "obvious or self-evident what concerns Plaintiff[] ha[s] in mind." Garvey's Opp'n at 21. Simply, Garvey's issue is that Plaintiff fails to present a coherent story of how the assignment of the WTHC-LD license could have led to the damages Plaintiff alleges.

To survive a motion to dismiss under the standards of *Iqbal* and *Twombly*, a "plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, NA*, 614 F.3d 400, 404 (7th Cir. 2010); *accord Poola v. Howard Univ.*, 147 A.3d 267, 280–81 (D.C. 2016). In the context of causation in a legal malpractice

case, a plaintiff must "set forth a plausible statement not only that a breach of duty occurred but that the breach caused the plaintiff to lose a valid claim or defense in the underlying action and that, absent that loss, the underlying claim "would have been successful." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016) (internal citations omitted). This effectively requires a plaintiff to "present two cases, one showing that [its] attorney performed negligently, and a second or predicate 'case within a case' showing that [it] had a meritorious claim that [it] lost due to [its] attorney's negligence." *Jacobsen v. Oliver*, 451 F. Supp. 2d 181, 187 (D.D.C. 2006) (quoting *Mihailovich v. Laatsch*, 359 F.3d 892, 904–05 (7th Cir. 2004)). "Only by making out both cases can a plaintiff demonstrate a 'causal relationship, or proximate cause . . . .'" *Id.* (quoting *Smith v. Haden*, 872 F. Supp. 1040, 1053 (D.D.C. 1994)).

In *Schumacher*, an employer sued its attorney for negligently handling the defense of a workers' compensation claim against it. 844 F.3d at 673. Although the employer described its lawyer's alleged conduct in detail, he described the underlying workers' compensation claim "in rather summary fashion," alleging only that "there existed certain factual defenses and a medical causation defense" that were not asserted against the employee. *See id.* at 677 (emphasis omitted). This, the complaint alleged, "forced [the plaintiff] to accept a disadvantageous position which greatly compromised its ability to defend the claim." *Id.* (emphasis omitted). Because these allegations were conclusory and did not "set forth a plausible description of a lost defense that, absent [the attorney's] alleged neglect, would have assured [the plaintiff] success on the underlying claim," the trial court was left to speculate about the underlying claim. *See id.* at 677–79. The Seventh Circuit thus found that the employer did not state a plausible claim with respect to causation. *See id.* at 678.

As noted above, ACI never explains why or how the assignment of the license could have adversely affected the malpractice claim.[2]  Instead, it simply asserts that Mr. Solomon failed to exercise reasonable care when it advised ACI to assign the license to Beach TV, and that "ACI was damaged as a direct and proximate result of Mr. Solomon's [negligence] if and to the extent the [assignment] adversely affected ACI's malpractice claims . . . in Count One."  Pl.'s Proposed Second Am. Compl. ¶¶ 44–48, 78.  Just as in *Schumacher*, this Court is left to speculate about what effect, if any, the underlying assignment of the WTHC-LD license from ACI to Beach TV, and then back to ACI had on ACI's malpractice claim.  This pleading gap between Mr. Solomon's alleged malpractice and the damages that ACI alleges shows that amendment of Plaintiff's complaint, as proposed, would be futile.  As Garvey simply and correctly states it, ACI "fail[s] to explain how ACI's ability to recover under Count One might be diminished by the assignment of either the license or the malpractice claim.  Nor, by any means, is it obvious or self-evident what concerns Plaintiff[] ha[s] in mind."  Garvey's Opp'n at 21.  Although there has been, lurking in the background of this case, some vague sense that the assignment of the license or legal malpractice claim could have adversely affected either ACI or Beach TV, Plaintiff never sufficiently connects the dots to state a plausible claim.  Plaintiff does not even go so far as to state that it has been, like the plaintiff in *Schumacher*, "forced to accept a disadvantageous position which greatly compromised its ability to defend the claim."  844 F.3d at 673 (emphasis omitted).  Instead, it vaguely suggests that its malpractice claim *may* have been harmed by the license assignment.  Without explaining how the assignment might have, in the alternative from

---

[2] The Court notes the possibility that this analysis could apply equally to Count Three of the proposed amended complaint.  However, because no defendant or potential defendant has raised the issue at this point, *see* Garvey's Opp'n; Def.'s Opp'n, the Court need not address it here.

Count One, harmed ACI's interest, the Court cannot even begin to analyze the "case within the case" to determine whether there was a meritorious malpractice claim that was harmed by assignment of the television license to Beach TV. Thus, ACI's proposed amended complaint fails to allege a plausible theory of causation in Count Two, making such amendment futile. Consequently, the Court will deny ACI leave to amend its complaint to include it.

### C. Count Three

ACI seeks to add Count Three to its complaint, alleging that, after Ms. Virtue took over the representation of ACI from Mr. Solomon, she failed to advise ACI that it had a malpractice claim against him, that the statute of limitations could make that malpractice claim time-sensitive, and that she could not appropriately provide advice because she had a conflict of interest given her relationship to Mr. Solomon. *See* Pl.'s Proposed Second Am. Compl. ¶¶ 59–61, 80–84.

Garvey argues that adding Count Three to the amended complaint would be futile in four ways. *See* Garvey's Opp'n at 22–27. First, it argues that ACI's claim against Ms. Virtue fails because "lulling" is not a discrete cause of action under either D.C. or Virginia law. Garvey's Opp'n at 22–24. Second, in summary terms, Garvey contends that ACI has not adequately alleged the standard of care that Ms. Virtue breached. Garvey's Opp'n at 24–25. Garvey's third contention is that adding Ms. Virtue to this case would be disruptive and unnecessary. Garvey's Opp'n at 25–26. Finally, Garvey argues that any claims for injuries allegedly caused by Ms. Virtue's alleged malpractice are not yet ripe. Garvey's Opp'n at 26–27. ACI responds only to the first two arguments, essentially ignoring the final two. *See* Pl.'s Reply Def.'s Opp'n to Pl.'s Mot. Am. Compl.; *see also id.* at 1 (incorrectly asserting that Garvey and Mr. Solomon "oppose the amendment of the complaint solely on the grounds [that] Counts Two and Three fail to state

claims for relief"). The Court will first address Garvey's ripeness argument, then proceed to Garvey's argument pertaining to the alleged disruption of joining Ms. Virtue, then conclude with the arguments about whether ACI stated a plausible claim of lulling against Ms. Virtue.[3]

### 1. Garvey's "Ripeness" Argument is Inapplicable; ACI is Entitled to Plead in the Alternative

Garvey argues that because Plaintiff only seeks recovery "if and to the extent" that it was damaged by the license assignment or Ms. Virtue's actions somehow jeopardized its claims under the statute of limitations, the cause of action is not yet ripe. *See* Garvey's Opp'n at 26–27. The alleged injury, Garvey argues, would ripen only if the Court rules that Plaintiff's malpractice claim lost value as a result of Ms. Virtue's negligence and, even if it does, that date is well into the future. *See* Garvey's Opp'n at 26. Because that date is well into the future and may never come, Garvey argues that the claim is not ripe. As noted above, ACI does not address this argument but does, in the context of other arguments, justify its language by noting that Counts Two and Three are made in the alternative to Count One. *See* Pl.'s Reply Def.'s Opp'n to Pl.'s Mot. Am. Compl. at 2–7. That is, if the statute of limitations has not run on Plaintiff's claim against Mr. Solomon, the claim against Ms. Virtue is moot because her alleged negligence would not have caused ACI any damages. *See* Pl.'s Reply Def.'s Opp'n to Pl.'s Mot. Am. Compl. at 5–6.

---

[3] Although courts have discretion to treat unanswered arguments as conceded, doing so is not a requirement. *See, e.g.*, *Mason v. Geithner*, 811 F. Supp. 2d 128, 178 (D.D.C. 2011), *aff'd*, 492 F. App'x 122 (D.C. Cir. 2012); *U.S. ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10, 13 (D.D.C. 2003), *aff'd sub nom. Rockefeller ex rel. U.S. v. Washington TRU Sols. LLC*, No. 03-7120, 2004 WL 180264 (D.C. Cir. Jan. 21, 2004). Because ACI's other arguments shed light on its likely responses to the unresponded to arguments, the issue of ripeness is relatively straightforward, and the issue of ripeness is uniquely important to a court's exercise of jurisdiction, *see Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003), the Court will not treat Garvey's ripeness argument as conceded. *Cf. id.* (noting that courts may consider ripeness *sua sponte*).

Unlike the other claims addressed herein, a motion to dismiss for ripeness is governed by Federal Rule of Evidence 12(b)(1) because questions of ripeness go to the Court's subject-matter jurisdiction. *Exxon Mobil Corp. v. FERC*, 501 F.3d 204, 207 (D.C. Cir. 2007); *Venetian Casino Resort, LLC v. EEOC*, 409 F.3d 359, 366 (D.C. Cir. 2005). The plaintiff has the burden of proving ripeness, and its allegations are not entitled to presumptive truthfulness. *See Renne v. Geary*, 501 U.S. 312, 316 (1991). Indeed, the Court must give Plaintiff's allegations "closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim." *Ludvigson v. United States*, 525 F. Supp. 2d 55, 57 (D.D.C. 2007). In doing so, the Court may consider evidence outside of the pleadings. *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 21 (D.D.C. 2003).

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . .'" *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). Determining ripeness requires the Court to evaluate "[(1)] the fitness of the issues for judicial decision and [(2)] the hardship to the parties of withholding court consideration." *Id.* at 808 (citing *Abbott Labs.*, 387 U.S. at 148–49). Malpractice claims can ripen even before the underlying claim subject to the negligent representation has been fully resolved. *See Wolcott v. Ginsburg*, 746 F. Supp. 1113, 1117 (D.D.C. 1990). Decreased settlement value and increased litigation costs associated with recovering on the underlying claim constitute concrete injury in malpractice actions. *See id.*; *Lorenzetti v. Jolles*, 120 F. Supp. 2d 181, 190 (D. Conn. 2000) (citing *Winter v. Brown,* 365 A.2d 381, 386 (D.C. 1976)).

"Simply because the outcome of one claim is contingent upon the outcome of another claim in the case does not mean that the first claim cannot be alleged or that the first claim is not ripe." *Dimensional Music Publ'g, LLC v. Kersey ex rel. Estate of Kersey*, 448 F. Supp. 2d 643, 653 (E.D. Pa. 2006). In *Dimensional Music Publishing*, the defendant law firm claimed that the malpractice claim against it was not ripe because it was contingent upon the court ruling that the plaintiff did not have rights that the law firm was hired to secure. 448 F. Supp. 2d at 645–46, 653. The court found that the case was indeed ripe despite the contingency, because a claim in the alternative can be sufficiently concrete for subject-matter jurisdiction despite the uncertain nature of damages. *Id.* at 653.

This case is similar to *Dimensional Music Publishing*. Although, as noted above, ACI's proposed amended complaint could have been clearer, it states Count Three in the alternative. Stated differently, ACI seeks recovery from Ms. Virtue only if its claim against Mr. Solomon was devalued either by the assignment of the WTHC-LD license to Beach TV or lost entirely due to the passage of time as a result of the applicable statute of limitations. *See* Pl.'s Reply Def.'s Opp'n to Pl.'s Mot. Am. Compl. at 5. Notwithstanding the uncertain nature of the *source* of ACI's alleged damages, ACI has pleaded sufficiently concrete alternative theories for recovery. *See Dimensional Music Publ'g, LLC*, 448 F. Supp. 2d at 653. Under one alternative, Ms. Virtue was not negligent because she did not cause ACI's malpractice claim to lose any value. Under the other, Ms. Virtue's malpractice adversely affected ACI's rights with respect to its malpractice claim against Mr. Solomon. *See id.* Assuming, just as the court did in *Dimensional Music Publishing*, that this latter theory turns out to be correct, ACI alleges a ripe claim against Ms. Virtue. ACI claims that her negligence—specifically, her failure to inform ACI that Mr. Solomon had committed malpractice, that his withdrawal from the case could affect the statute of

limitations of malpractice claims, that she had a conflict of interest in light of her professional relationship with Mr. Solomon, and that ACI should retain separate counsel—devalued its case against Mr. Solomon. Thus Count Three, though stated in the alternative, is sufficiently concrete to survive dismissal. *See Wolcott v. Ginsburg*, 746 F. Supp. at 1117.

### 2. The Disruption Associated with Adding Ms. Virtue as a Party Does Not Justify Preventing Plaintiff from Doing So

The Court next addresses Garvey's contention that the Court should not exercise its discretion to allow Plaintiff to add Ms. Virtue as a defendant in this case, because to do so would be disruptive to discovery. *See* Garvey's Opp'n at 25–26. Although ACI did not directly address this point, the Court declines to deny amendment of the complaint to add Ms. Virtue as a defendant on the basis of the potential disruption to discovery her addition might cause.

In general, courts should freely allow parties to amend pleadings to include new parties "when justice so requires." *Garnes-El v. District of Columbia*, 841 F. Supp. 2d 116, 124 (D.D.C. 2012). However, Garvey cites to *Garnes-El* for the proposition that leave should not be given when the moving party had no excuse for failing to include the party in its previous complaint, already had chances to amend the complaint, and adding the new party would cause unfair delay. In *Garnes-El*, the plaintiff provided no excuse for his failure to move to amend earlier in the proceedings, despite the fact that he had already amended his complaint twice before. *Id.* at 124. Moreover, the plaintiff moved to add the new party almost three years after the deadline to amend in the court's scheduling order, and did so only in his opposition to the defendant's motion for summary judgment after discovery had closed. *See Garnes-El*, 841 F. Supp. 2d 116, No. 08-cv-2233, ECF Nos. 27, 28, 59, 2/11/2011 Minute Order. The court found that allowing amendment of the new party would be prejudicial to the new party the plaintiff sought to join as

well as the existing defendant, who had already moved for summary judgment. *See Garnes-El*, 841 F. Supp. 2d at 124.

But *Garnes-El* is inapposite for three reasons. First, as Garvey concedes, in contrast to the plaintiff in *Garnes-El* who moved to amend *three years* after the deadline to amend had passed, here ACI met the Court's deadline for filing a motion to add new claims or parties to the complaint. *See* Garvey's Opp'n at 25; *compare* Scheduling Order, ECF No. 58 *with* Pl.'s Mot. Am. Compl. at 6. Although justice may not "require" that the Court allow the addition of appropriate parties before the scheduling order deadline, justice favors allowing ACI to do so here. Second, in *Garnes-El*, the court took issue with the large amount of discovery that had already taken place (indeed, discovery had closed) and that the new party would have missed. *See* 841 F. Supp. 2d at 124. That sort of unfair prejudice does not exist here, because ACI sought to amend the complaint a mere two months after the Court ordered the start of discovery. *Compare* Scheduling Order, ECF No. 58 *with* Pl.'s Mot. Am. Compl. at 6. Third, in *Garnes-El*, the plaintiff had already amended his complaint twice, and sought to do so again only in opposition to summary judgment after the close of discovery without excuse for not having acted sooner, which the court found unfair to the defendant. 841 F. Supp. 2d at 124. Here, ACI has not yet amended its complaint and does not do so only to avoid a defendant's motion for summary judgment. Taken together, the holding in *Garnes-El* is inapposite and the Court concludes that justice requires permitting ACI to amend its complaint to include Ms. Virtue as a defendant.

### 3. ACI's Mention of "Lulling" Does Not Render Amendment Futile

Plaintiff seeks to add the factual allegation that Ms. Virtue "lulled ACI into inaction in filing its malpractice claims." Pl.'s Proposed Second Am. Compl. ¶¶ 57–58. The addition of

this allegation seems to be a preemptive response to the affirmative defense of statute of limitations. *See* Pl.'s Mot. Am. Compl. ¶ 12. Garvey opposes amendment, arguing that "lulling" is not an independent cause of action. *See* Garvey's Opp'n at 22–23. Although Garvey may be correct, that conclusion does not render the addition of Count Three futile.

"Lulling" is not an element of malpractice in the District of Columbia. *See Chase*, 499 A.2d at 1211 (quoting *O'Neil*, 452 A.2d at 341) (outlining the elements of a malpractice claim). As shown by the cases that Garvey cites, lulling is instead an exception to the affirmative defense of statute of limitations. *See Barry v. Donnelly*, 781 F.2d 1040, 1042 (4th Cir. 1986); *Bailey v. Greenberg*, 516 A.2d 934, 937 (D.C. 1986). In general, a plaintiff need not plead facts in its complaint that might be responsive to potential affirmative defenses that an opponent may raise. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 466 (4th Cir. 2007). The only potential exception to this rule would be for "the unusual case where a claim is filed *clearly* beyond the applicable limitations period and the plaintiff seeks to forestall its dismissal by alleging the facts of discovery." *Id.*

Count Three does not assert a cause of action for "lulling," but rather it alleges malpractice by Ms. Virtue. *See* Pl.'s Proposed Second Am. Compl. ¶¶ 80–84. The "lulling" allegation in the complaint is alleged separate from Count Three, *see* Pl.'s Proposed Second Am. Compl. ¶ 57, ostensibly to preemptively address a looming statute of limitations affirmative defense. The addition of this paragraph does not render Count Three futile. Garvey does not move to strike the portions of the complaint discussing lulling as superfluous to the malpractice

claims.[4]  Accordingly, Garvey's argument that "lulling" is not an independent cause of action is inapposite at this stage of the proceedings.

### 4.  ACI Adequately Alleges Ms. Virtue's Standard of Care

Finally, the Court addresses whether ACI has adequately alleged the appropriate standard of care to which Ms. Virtue is to be held.  Garvey's argument is cursory and primarily relies upon its arguments against adding Count Two.  *See* Garvey's Opp'n at 24–25.  In total, Garvey argues that ACI's assertions are "vague and conclusory" and "to the extent understandable" are "implausible, raising questions such as" whether a reasonable and prudent attorney would have been familiar with the doctrine of "continuing representation" and "[w]hat specific conduct . . . was required by the standard of care and the basis for such a contention."  Garvey's Opp'n at 24.

As noted above, a party need not engage in a formal recitation of the elements of negligence to state a claim for relief.  A uniform standard of reasonable care applies to all actions for negligence in the District of Columbia.  *See Sherrod*, 2017 WL 627377 at *6.  Determining what a reasonable attorney would have done in a given situation often requires expert testimony, *see Burke*, 867 A.2d at 219.

ACI alleges that Ms. Virtue had an obligation—consistent with what a reasonable and prudent attorney would have done under the circumstances—to inform ACI of certain information, including that it had a cause of action for malpractice against Mr. Solomon and that it should retain separate counsel to assess it because she had a conflict given her relationship to him.  *See* Pl.'s Proposed Second Am. Compl. ¶ 59.  Whether a reasonable attorney would have been aware of the doctrine of continuing representation and "[w]hat specific conduct . . . was

---

[4] Neither party argues that this is the unusual case where the plaintiff's claims are clearly beyond the applicable limitations period and the preemptive response to a statute-of-limitations defense is required to be added.  *See* Garvey's Opp'n at 22–23.

required by the standard of care and the basis for such a contention," *see* Garvey's Opp'n at 24, are questions of fact that may be resolved with the aid of expert testimony. *See Burke*, 867 A.2d at 219. For now, ACI has alleged enough to survive a motion to dismiss. Accordingly, for the same reasons that ACI stated a plausible standard of care in Count Two, it also did so in Count Three.

### D. Count Four

Garvey's sole argument that adding Count Four would be futile is that, because Plaintiff seeks to hold Garvey liable only under the doctrine of *respondeat superior*, "if the claims in Count Two and Three are dismissed, then the claims in Count Four" must be dismissed as well. *See* Garvey's Opp'n at 27. Because the Court does not dismiss Count Three, Count Four remains insofar as it seeks recovery for Ms. Virtue's alleged malpractice.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Amend its Complaint is **GRANTED IN PART** and **DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: June 1, 2017                                    RUDOLPH CONTRERAS
                                                       United States District Judge