# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| BEACH TV PROPERTIES INC., *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 15-1823 (RC) |
| | : | | |
| v. | : | Re Document No.: | 102 |
| | : | | |
| HENRY A. SOLOMON, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANT HENRY A. SOLOMON'S MOTION TO DISMISS CROSSCLAIM

## I. INTRODUCTION

In 1999, Defendant Henry Solomon submitted an incomplete form to the Federal Communications Commission ("FCC") on behalf of his then-client, Plaintiff the Atlanta Channel, Inc. ("ACI"). The incomplete form resulted in ACI being denied a valuable license for one of its TV channels, a decision that was upheld on review and on reconsideration by the FCC over a decade later. ACI filed suit against Solomon for legal malpractice in 2015. In 2017, ACI added to its complaint malpractice claims against Defendants Melodie Virtue and her law firm Garvey, Schubert & Barer. P.C. (together, the "Garvey Defendants"), who took over the FCC licensing dispute from Solomon when he retired in 2010 and who ACI alleges failed to disclose that Solomon's retirement could start the limitations clock on any malpractice claims against him. In their answer to ACI's complaint, the Garvey Defendants brought a crossclaim against Solomon for equitable indemnification or contribution. Solomon now moves to dismiss that crossclaim, arguing that it is barred under D.C. law. The Court grants the motion to dismiss the crossclaim for contribution but denies the motion as to indemnification.

## II. FACTUAL BACKGROUND[1]

This Court has already discussed the factual background for this case in detail in prior opinions. *See, e.g.*, *Beach TV Props., Inc. v. Solomon*, 324 F. Supp. 3d 115, 118–21 (D.D.C. 2018); *Beach TV Props., Inc. v. Solomon*, 306 F. Supp. 3d 70, 76–81 (D.D.C. 2018). The Court assumes familiarity with its prior opinions and confines its discussion to the facts most relevant to the present motion.

ACI is a broadcast television company that operates the low power television station WTHC-LD in Atlanta. Second Am. Compl. ¶ 15, ECF No. 69. Following the passage of the Community Broadcasters Protection Act of 1999, Pub. L. No. 106-113, 113 Stat. 1501, 1501A–594 , ACI determined that it would need to obtain a Class A license in order to keep WTHC-LD on the air. Second Am. Compl. ¶¶ 17–23. ACI sought the services of Solomon, an attorney specializing in FCC law and procedure, *id.* ¶ 5, to submit a statement of eligibility for a Class A license for WTHC-LD with the FCC, *id.* ¶ 25. Solomon filed the statement of eligibility on December 29, 1999. *Id.* ¶¶ 27. However, the statement was defective and the FCC denied ACI the license. *Id.* ¶¶ 28, 33. Through Solomon, ACI applied for review of the denial on December 29, 2000. *Id.* ¶¶ 36–37. The FCC affirmed its denial of the license in 2012, and denied reconsideration of that decision in 2014. *Id.* ¶ 37.

In 2000, Solomon joined the law firm of Garvey Schubert Barer, P.C. Garvey Defs.' Answer 2, ECF No. 99. Melodie Virtue, a lawyer at the firm, worked with Solomon on ACI

---

[1] On a motion to dismiss for failure to state a claim, the Court accepts as true the factual allegations in the complaint and construes them liberally in the Plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). Here, the Court accordingly accepts as true the factual allegations in the Crossclaim, including the allegations supporting ACI's first claim against Solomon, which the Garvey Defendants incorporate by reference in the Crossclaim, Garvey Defs.' Answer 12, ECF No. 99.

matters while he was employed at Garvey Schubert Barer. *Id.* at 2–3. After Solomon left the firm in 2010, Virtue took over the ACI licensing matter, reviewing the pending FCC application for review starting in early 2012 and representing ACI in its petition for reconsideration after the FCC's affirmance of the denial. *Id.* at 6–7. ACI contends that Virtue failed to make a number of required disclosures to ACI upon assuming responsibility for the FCC proceedings relating to the license, including warning ACI about Solomon's malpractice and the resulting conflict of interests between Solomon and the Garvey Defendants, and advising ACI to retain independent counsel. Second Am. Compl. ¶¶ 59–61. According to ACI, Virtue's work on the FCC proceedings "lulled [it] into inaction in filing its malpractice claim against . . . Solomon." *Id.* ¶ 57.

ACI initially filed suit on October 26, 2015. *See* Compl., ECF No. 1. After extensive litigation and the dismissal of most of the claims in ACI's first amended complaint, *see Beach TV, Props., Inc. v. Solomon*, No. 15-1823, 2016 WL 6068806 (D.D.C. Oct. 14, 2016), ACI filed its Second Amended Complaint on June 1, 2017. *See* Second Am. Compl. Count one of the Second Amended Complaint is a legal malpractice claim against Solomon for $25,000,000, which ACI alleges is the loss in value to WTHC-LD resulting from the denial of the Class A license. *Id.* ¶¶ 70, 73–75.[2] In the alternative, counts three and four are legal malpractice claims for the same amount against Virtue and, under *respondeat superior*, Garvey Schubert Barer. *Id.* ¶¶ 80–87. In these two claims, which are conditioned on ACI's malpractice claim against Solomon being barred by the statute of limitations, *id.* ¶ 83, ACI alleges that Virtue's failure to

---

[2] The Second Amended Complaint erroneously includes a second claim against Solomon, a proposed amendment that ACI acknowledges the Court rejected in a prior opinion. *See Beach TV Props.*, 324 F. Supp. 3d at 120 (citing Garvey Schubert Barer Mem. Opp'n Pl.'s Mot. Amend 15, ECF No. 62).

make the required disclosures "adversely affected ACI's malpractice claims against . . . Solomon," *id.* ¶ 82.

After the Court denied their motion to dismiss counts three and four, the Garvey Defendants filed an Answer and Crossclaim against Solomon on September 21, 2018, Garvey Defs.' Answer 1. In the Crossclaim, the Garvey Defendants allege that they are entitled to "equitable indemnification, restitution, reimbursement and/or contribution in whole or in part" from Solomon because he would be unjustly enriched if the Garvey Defendants were the only ones to pay for damages substantially resulting from his malpractice. *Id.* at 15. Solomon filed a motion to dismiss the Crossclaim on October 12, 2018. Solomon Mot. Dismiss Crossclaim, ECF No. 102. The Garvey Defendants filed their opposition on October 25, 2018, Garvey Defs.' Mem. Opp'n, ECF No. 103, and Solomon filed his reply on November 1, 2018, Solomon Reply, ECF No. 104. The motion is now ripe for review.

### III. LEGAL STANDARD

To prevail on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff need only provide a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam) (omission in original) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000).

Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

## IV. ANALYSIS

Solomon moves to dismiss the Garvey Defendants' crossclaim in its entirety, arguing that the Crossclaim only raises claims for contribution and indemnification, both of which are unavailable as a matter of law in this case. Solomon Mem. Supp. Mot. Dismiss 4–6, ECF No. 102-1. The Garvey Defendants retort that both claims are well-supported under D.C. law and that the motion to dismiss is premature.[3] Garvey Defs' Mem. Opp'n 4–10. The Court addresses each claim in turn. The Court grants the motion to dismiss the crossclaim for contribution because—assuming the Garvey Defendants are liable on counts three and four of ACI's second amended complaint—Solomon and the Garvey Defendants were not joint tortfeasors. However,

---

[3] In their opposition, the Garvey Defendants summarily state that they "seek indemnification, contribution and/or other relief," Garvey Defs.' Mem. Opp'n 1, but they do not otherwise challenge Solomon's assertion that the claims for "restitution" and "reimbursement" are synonyms for indemnification. The Court agrees with Solomon that, given that equitable indemnification is a form of restitution that provides for the full "reimbursement" the Garvey Defendants otherwise seek, the claims are synonymous. The Court accordingly treats the indemnification, restitution, and reimbursement claims as one below.

because the validity of the Garvey Defendants' equitable indemnification claim does not depend on whether they were actively negligent, the Court denies the motion to dismiss as to that claim.

### A. Contribution

First, Solomon moves to dismiss the Garvey Defendants' contribution crossclaim because he and the Garvey Defendants were not joint tortfeasors. Solomon asserts that, assuming both parties were negligent, his alleged negligence occurred thirteen years before the Garvey Defendants' and was an independent act resulting in a separate injury to ACI. Solomon Mem. Supp. Mot. Dismiss 4–6, ECF No. 102-1. In response, the Garvey Defendants contend that, should they be found liable for malpractice in failing to make the required disclosures to ACI, they and Solomon would in fact be joint tortfeasors because the Garvey Defendants' malpractice would stem from Solomon's and ACI seeks the same judgment for the same amount of damages against the Garvey Defendants as it does against Solomon. Garvey Defs.' Mem. Opp'n 9–10. The Court is unconvinced.

The D.C. Court of Appeals has consistently held that a defendant can only obtain contribution from a codefendant if they are joint tortfeasors. "An essential prerequisite for entitlement to contribution is that the parties be joint tortfeasors in the sense that their negligence concurred in causing the harm to the injured party." *District of Columbia v. Washington Hosp. Ctr.*, 722 A.2d 332, 336 (D.C. 1998). If "each tortfeasor causes a separate and distinct injury to the victim, there is no basis for" contribution. *Id.* at 339. As a result, the D.C. Court of Appeals has also noted that contribution is not available for injuries involving successive, independent tortfeasors. *See id.*

And while the D.C. Court of Appeals has not squarely addressed the issue, "other jurisdictions consistently have held that attorneys sued for legal malpractice have no valid claims

6

for contribution against the alleged original wrongdoer." *Threlkeld v. Haskins Law Firm*, 922 F.2d 265, 269 (5th Cir. 1991) (listing cases). This is because plaintiffs in these types of cases "allegedly suffer[] two distinct injuries" and "the attorneys sued for legal malpractice and the original tortfeasors are not liable for the same thing." *Id.*; *see also, e.g.*, *Cherry Hill Manor Assocs. v. Faugno*, 861 A.2d 123, 128 (N.J. 2004) (finding that lawyer who committed malpractice by failing to bring claim against original tortfeasors could not obtain contribution against original tortfeasors because they caused "separate torts at disparate times"); *Jakobleff v. Cerrato, Sweeney & Cohn*, 468 N.Y.S.2d 894, 895 (App. Div. 1983) (affirming dismissal of contribution claim when both the lawyers accused of committing malpractice and the original tortfeasors "allegedly violated duties to the plaintiff" but they "did not share in responsibility for the same injury"); *Vesely, Otto, Miller & Keefe v. Blake*, 311 N.W.2d 3, 5–6 (Minn. 1981) ("Appellants and [the original tortfeasor] committed separate and distinct torts, and committed them at different times; they were not jointly liable for either tort at any point in time.").

Here, ACI alleges that Solomon and the Garvey Defendants caused it separate, distinct injuries. The Garvey Defendants focus on the identical money judgment sought by ACI against both sets of defendants and on the uncontested link between the injury allegedly caused by Solomon and the injury they allegedly caused. Garvey Defs.' Mem. Opp'n 9–10. But just because one alleged injury could not have occurred without the other does not mean that the injuries were caused concurrently, or that they are not independent. On one hand, ACI alleges that Solomon's malpractice resulted in the denial of a Class A license for WTHC-LD almost twenty years ago. *See* Second Am. Compl. ¶¶ 73–75. As a result, ACI lost out on the $25,000,000 value the Class A license would have given WTHC-LD. *See id.* On the other hand, assuming Solomon was negligent but a malpractice claim against him is time-barred and the

7

Garvey Defendants are also found to have been negligent, their negligence will have caused ACI to lose out on a $25,000,000 legal malpractice claim against Solomon. *See id.* ¶¶ 80–87. While the amount of the alleged loss may be the same, the negligent conduct involved occurred at different times and created different types of injuries to ACI. Because ACI does not allege that Solomon and the Garvey Defendants caused it to suffer a single, indivisible $25,000,000 injury, but rather that it "allegedly suffered two distinct injuries" in the same amount, *Threlkeld*, 922 F.2d at 269, the Court cannot allow Solomon or the Garvey Defendants to receive contribution from one another. The Court therefore grants the motion to dismiss the Garvey Defendants' contribution claim.

### B. Indemnification

Next, Solomon moves to dismiss the Garvey Defendants' crossclaim for equitable indemnification, asserting that the Garvey Defendants were "actively negligent" in their legal malpractice and therefore cannot be indemnified. Solomon Mem. Supp. 4. The Garvey Defendants retort that active negligence does not prevent indemnification because the D.C. Court of Appeals has treated claims for indemnification on a case-by-case basis, taking into account the parties' relationship and their relative culpability as factors to consider in deciding such claims. Garvey Defs.' Mem. Opp'n 4–5. Without taking a position as to the ultimate validity of the indemnification claim, the Court agrees that the Garvey Defendants' active negligence would not, in itself, defeat their claim. The Court accordingly denies the motion to dismiss the Garvey Defendants' crossclaim for indemnification.

In his motion to dismiss, Solomon argues that "if the Garvey Defendants have any liability at all, it would arise from their own active negligence," Solomon Mem. Supp. 4, and that under D.C. law "[w]here joint tort-feasors are guilty of active negligence and their

negligence concurs in causing the injury, none is entitled to indemnity," *id.* (alteration in original) (quoting *Early Settlers Ins. Co. v. Schweid,* 221 A.2d 920, 923 (D.C. 1966)). Solomon concludes that "[o]ne liable for active negligence cannot seek equitable indemnification from a co-defendant." *Id.* The Court disagrees. The cases Solomon relies on in his motion do not simply involve an actively negligent defendant seeking equitable indemnification from a co-defendant, but rather *joint tortfeasors* who negligently and concurrently caused a single injury. *See Washington Hosp. Ctr.*, 722 A.2d at 340–41 (noting the continuing rule that "a joint tortfeasor whose active negligence concurs in causing an injury may be entitled to contribution, but indemnity is not available" (citing *Early Settlers*, 221 A.2d at 923, and *R. & G. Orthopedic Appliances & Prosthetics, Inc. v. Curtin*, 596 A.2d 530, 547 (D.C. 1991))). Here, as discussed in Part IV.A., Solomon and the Garvey Defendants were not joint tortfeasors, but rather successive tortfeasors. The principle barring indemnification for joint tortfeasors mentioned in *Early Settlers* and re-iterated in *R. & G.* and *Washington Hospital Center* is therefore not at play.

As the Garvey Defendants point out, the D.C. Court of Appeals has in fact applied equitable indemnification in a number of situations involving successive, "actively" negligent tortfeasors. Under the principle that equitable indemnity can be "implied out of a relationship between the parties to prevent a result which is unjust," *Caglioti v. Dist. Hosp. Partners, Lp*, 933 A.2d 800, 807 (D.C. 2007) (quoting *Howard Univ. v. Good Food Servs., Inc.*, 608 A.2d 116, 123 (D.C. 1992)), the Court of Appeals has allowed equitable indemnification claims in situations involving successive medical tortfeasors, *e.g. id.* (citing *R. & G. Orthopedic Appliances*, 596 A.2d at 546–48). In *Caglioti*, the plaintiff was first injured by a malfunction in an electric wheelchair and taken to the hospital, where he sustained significant additional injuries as a result of medical malpractice. *Id.* at 804. As part of a settlement with the wheelchair manufacturer, the

9

plaintiff agreed to release all claims against the medical providers that had allegedly aggravated his injuries. *Id.* Despite the "active" negligence of both the wheelchair manufacturer and the medical providers, the D.C. Court of Appeals recognized that the wheelchair manufacturer could pursue an indemnification claim against the medical providers. *Id.* at 807.

In his reply, Solomon changes course and argues that the Garvey Defendants' claim must fail because their opposition distinguishes between their "passive" negligence and his "active" negligence, a distinction the D.C. Court of Appeals has found without merit in recent indemnification cases. The Court is unconvinced. To be sure, the Court of Appeals has rejected the active/passive theory of indemnification. In *East Penn Manufacturing. Co. v. Pineda*, 578 A.2d 1113 (D.C. 1990), the D.C. Court of Appeals explained that "[b]ecause the terms 'active' and 'passive' and 'primary' and 'secondary' are indefinite, their utility as meaningful guideposts to when indemnity should be awarded has been criticized by the courts." *Id.* at 1127 n.20 (citing *Am. Motorcycle Ass'n v. Sup. Ct.*, 578 P.2d 899, 909 (Cal. 1978)). The court warned in the same case that elevating "such notions as 'active/passive' negligence . . . to rules of general application may simply obfuscate what ultimately is a principle of equity." *Id.* And a year later, the Court of Appeals specifically indicated that it "ha[d] rejected the 'active/passive' theory of implied indemnity." *Nat'l Health Labs. v. Ahmadi*, 596 A.2d 555, 558 (D.C. 1991).

Arguably, portions of the Garvey Defendants' opposition appear to be alluding to this rejected theory. *E.g.* Garvey Defs.' Opp'n 8 ("[A]t a minimum[,] . . . Mr. Solomon's alleged duties of disclosure and alleged breaches thereof were primary and direct, while those alleged against Ms. Virtue were, *at most*, conditional and secondary."). But Solomon fails to address the Garvey Defendants' remaining arguments, that their relationship with him and the relative degrees of culpability of each party in causing a loss to ACI warrants indemnification. *See*

Garvey Defs.' Mem. Opp'n 4–5.  And in any event, the only ground advanced for dismissal in Solomon's motion was that the "Garvey Defendants' active negligence bars their claim[]." Solomon Mem. Supp. 4.  While the Court is unsure whether an indemnification claim can ultimately succeed,[4] Solomon's arguments do not support dismissal.  *See generally United States v. Real Prop. Identified as: Parcel 03179-005R*, 287 F. Supp. 2d 45, 61 (D.D.C. 2003) ("It is not this '[C]ourt's role . . . to act as an advocate for [the parties] and construct legal arguments on [their] behalf . . . .'" (alterations and first omission in original) (quoting *Stephenson v. Cox*, 223 F. Supp. 2d 119, 122 (D.D.C. 2002)).  The Court denies the motion to dismiss as to equitable indemnification.

## V.  CONCLUSION

For the foregoing reasons, Defendant Henry A. Solomon's motion to dismiss the crossclaim of Defendants Melodie A. Virtue and Garvey Schubert Barer, P.C. (ECF No. 102) is **GRANTED IN PART AND DENIED IN PART**.  The motion to dismiss is granted as to the crossclaim for contribution but denied as to the crossclaim for indemnification.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  April 22, 2019                                            RUDOLPH CONTRERAS
                                                                                  United States District Judge

---

[4] The Court notes that the Restatement of Torts, which the D.C. Court of Appeals has consistently relied on to establish the boundaries of indemnification, *e.g. East Penn*, 578 A.2d 1127 n.20; *Caglioti*, 933 A.2d at 807, requires that "two persons" be "liable . . . for the same harm and one of them discharges the liability" of the other, Restatement (Second) of Torts § 886B; *see also* Restatement (Third) of Torts: Apportionment of Liability § 22 (providing for indemnity when "two or more persons are or may be liable for the same harm and one of them discharges the liability of another").  Here, it is entirely unclear to the Court that the successive injuries allegedly caused by Solomon and the Garvey Defendants can be combined into a single harm for which indemnification can be obtained.  And it is equally difficult to see a circumstance where the Garvey Defendants could discharge Solomon's liability, when a claim against the Garvey Defendants would be premised on the claim against Solomon being time-barred.

11