# WTHC-LD

# Atlanta, Georgia

# Report

**Prepared by**

**W. Lawrence Patrick, Managing Partner**
**Susan K. Patrick, Managing Partner**
**Patrick Communications, LLC**

**May 13, 2019**

## Introduction

This report was prepared at the request of Arthur D. Burger, Esq. of Jackson & Campbell, P.C., Washington, D.C., in support of its defense of Garvey Schubert Barer, a Seattle, Washington based law firm ("GSB"). The litigation involves The Atlanta Channel, Inc. (the "Plaintiff") and GSB and one of its attorneys, Melodie A. Virtue, Esq, who practices communications law in the Washington, D.C. offices of the firm.

Patrick Communications has been asked to offer comments and critiques of the report in this case submitted by Michael C. Garibaldi of the Garibaldi Group ("Garibaldi"). The report is titled *Damage Analysis in the Case of The Atlanta Channel v. Solomon* ("the Damage Report").

## Statement of Qualifications

This report was prepared by W. Lawrence Patrick, Ph.D., J.D., and Susan K. Patrick, M.B.A, both experienced broadcast station brokers, investment bankers and appraisers of broadcast properties. The two Managing Partners of Patrick Communications have sold over 160 full-power television stations, several dozen Class A and LPTV stations and over 600 radio groups or clusters. They have also prepared several hundred valuations for a variety of nearly 40 senior creditors, 35 private equity investors, dozens of broadcasting and cable television firms as well as for litigation purposes. A complete statement of qualifications appears as Appendix A to this report.

## Lack of Conflict Statement

Neither Mr. or Ms. Patrick or their firm have any ownership or other interest in either party to this litigation. The fee being paid by GSB for this report is not dependent on the opinions and conclusions contained in this report. The opinions and conclusions contained herein are solely those of its authors. Likewise, any errors or omissions are solely the authors' also.

Mr.  or Ms. Patrick have never engaged GSB or any of its principals to represent them or any of their broadcasting companies before the FCC or any other regulatory or judicial bodies.  Likewise, neither they nor their firm have ever been engaged by the Plaintiff or its commonly owned company, Beach TV.

## Comments and Conclusions

The Damage Report is very basic and essentially only provides for an analysis of the discounted values of a series of streaming-related expenses in order to determine a damage amount related to converting from a broadcast operation, as WTHC-LD is now, to a 100 percent streaming delivery system.

However, there are a number of issues that were not considered in the Damage Report, that render the analysis, at a minimum incomplete, and potentially irrelevant and without merit.

- There was no independent verification of the actual streaming costs in the damage report.  Mr. Garibaldi notes that he relied on information supplied to him by plaintiff.  In order for the analysis to be valid and relied upon, a detailed independent examination of the costs upon which the analysis was based, should have been conducted.

- With the recent grant by the Federal Communications Commission ("FCC") of a construction permit for the Plaintiff to move its broadcast operations to Channel 3 in the Atlanta market, there is no evidence that streaming will even be needed. The Garibaldi report may well be an irrelevant analysis.  At a minimum, it would need to be demonstrated streaming would be needed to supplement the Channel 3 coverage in order to provide comparable coverage to WTHC-LD's current operation.  It is the opinion of authors of this report that it is highly likely that Channel 3 would provide such coverage without streaming.

- In addition, in order to fairly represent true damage, the Damage Report should be a "net damage analysis."  In other words, the cost of streaming must be offset by the current cost of operations.  There is not sufficient

3

information available for the authors of this report to perform a comprehensive analysis of every line item expense for the current WTHC-LD operation.  However, based on a review of the 2017 ACI tax return, the costs associated with engineering, utilities (which for a TV station are primarily associated with the transmission of a signal) and license requirements, annual costs related to a broadcast operation appear to be approximately $125,000 per year.  Similarly, the annual costs outlined in the Sloan Expert Report that are related to the broadcast operation are approximately $114,000 annually.  The Damage Report submitted by Mr. Garibaldi itemizes annual streaming costs at $109,500 initially.    Given that the cost of streaming is less than the estimates for the broadcast operation, the net damage analysis should be that there is no damage at all.   In fact, Plaintiff will experience cost savings each year.  It is an incomplete analysis to not consider this difference in cost.

- Finally, any reimbursement for future streaming costs, once calculated properly and with reductions for costs saved, would be duplicative damages to those claimed by Sloan in his expert report. If damages are paid to Plaintiff that reflect the full market value for the Plaintiff's business with a Class A license, Plaintiff would have been made fully whole for the entire value of the business.  Adding damages for streaming costs would no longer be relevant as Plaintiff would have been fully compensated for the value of the business, in the same manner Plaintiff would be fully compensated if the business was sold.  Adding damages for streaming costs means Plaintiff is awarded more than 100 percent of fair market value.

The opinions expressed in this report, along with any errors or omissions, are solely the authors.  The authors respectfully note that their opinions may change or expand depending on the acquisition of additional information that may be presented or which they may develop prior to any actual trial for this litigation.

Submitted by:

W. Lawrence Patrick

Susan K. Patrick

# Appendix A -Statement of Qualifications

## W. Lawrence Patrick

Larry Patrick serves as Managing Partner of Patrick Communications, LLC, a media investment banking and brokerage firm established by Mr. Patrick in 1984 and is based in Maryland.  Mr. Patrick also owns 23 small market radio stations in Wyoming and is also a part-owner of eight television stations in New York, Los Angeles, Boston, San Francisco, Philadelphia, Houston and Honolulu.

Patrick Communications has handled over 600 radio and 160 television broadcasting deals worth over $8.0 billion. The firm has also handled over $1.0 billion in media financings and has brokered the sale of dozens of broadcast towers and broadband spectrum.  The firm has consulted dozens of broadcast and cable companies as well as 40 financial institutions, including Fortress Investment Group, Fleet Bank, Bank of America, Goldman Sachs, Silver Point Capital, BlackRock, Yucaipa Partners, D. B. Zwirn, Vestar Partners, Corporate Partners, Canyon Capital, Citicorp and BBVA/Compass Bank.

Mr. Patrick served as Chairman of the Board and Lead Independent Director of ION Media Networks, a group of 60 television stations serving over 91 million television households, from 2005-2008.  Mr. Patrick oversaw the refinancing of $1.1 billion in senior debt, a $1.7 billion exchange offer for the public bondholders and eventually the sale of the Company in a going-private sale to Citadel Investment Group and NBC-Universal for $2.6 billion cash.  ION is the largest television broadcast workouts ever in this country.

His firm also regularly provides detailed station appraisals to broadcasters and financial institutions, including two of the largest broadcast-related estate appraisals ever.  These appraisals were the basis for successful litigation against the Internal Revenue Service.

Mr. Patrick has served as a federal or state court receiver or bankruptcy trustee in eight cases involving 50 broadcast stations.  In addition, Mr. Patrick has

served as a consultant on voluntary workouts of more than 100 other stations and managed numerous stations for lenders and investors.

Mr. Patrick has testified in over 35 federal and state court cases as an expert witness on station valuations, contract damage claims, libel damages and station management and operations, however, none have occurred in the past four years. He also has testified numerous times before committees of the U.S. Senate and the House of Representatives, the Federal Communications Commission, the Federal Trade Commission, the Copyright Royalty Tribunal and the Australian Communications Department.

Mr. Patrick previously owned and operated 12 middle market radio stations from 1986 through 1992.  Mr. Patrick also served as Chief Operating Officer of Gilmore Broadcasting of Kalamazoo, Michigan from 1983 through 1986.  Gilmore owned four radio and three television stations as well as 18 cable television systems valued at $600.0 million.  Prior to this, Mr. Patrick served as Senior Vice President of the National Association of Broadcasters in Washington, D.C. from 1979 through 1983.

Mr. Patrick holds a B.A. in telecommunications from the University of Kentucky (1972); a M.S. in communications from the University of Tennessee (1973); a Ph.D. in communications and management from Ohio University (1975); and a J.D. from the Georgetown University Law Center (1979).  He was admitted as a member of the Maryland bar in 1980, although he has not actively practiced law. Mr. Patrick has completed professional development programs in Private Equity at Oxford University in 2013 and 2017 as well as in Private Capital Markets at Pepperdine University in 2014.

The fee structure for Patrick Communications for this case is $7,500 for preparation of this report.  Any further testimony or work shall be provided at the rate of $800 per hour.

### Susan K. Patrick

Susan Patrick is co-owner and Managing Partner of Patrick Communications LLC, one of the most successful media brokerage and investment banking firms in the country.   Ms. Patrick also co-owns Legend Communications of WY, 23 small market radio stations in Wyoming, and is the primary Managing Partner of that group.   She is also a part-owner of eight television stations in New York, Los Angeles, Boston, San Francisco, Philadelphia, Houston and Honolulu.

Patrick Communications has handled over 600 radio and 160 television broadcasting deals worth over $8.0 billion. The firm has also handled over $1.0 billion in media financings and has brokered the sale of dozens of broadcast towers and broadband spectrum. The firm has consulted dozens of broadcast and cable companies as well as 40 financial institutions, including Fortress Investment Group, Fleet Bank, Bank of America, Goldman Sachs, Silver Point Capital, BlackRock, Yucaipa Partners, D. B. Zwirn, Vestar Partners, Corporate Partners, Canyon Capital, Citicorp and BBVA/Compass Bank.

Ms. Patrick has been involved in the media brokerage business for more than 30 years and has personally brokered the sale of broadcast and cable properties totaling hundreds of millions of dollars.

The firm also provides detailed station appraisals to broadcasters and financial institutions.   Appraisal clients include major banks and Wall Street investment firms as noted above, the Internal Revenue Service, the Justice Department, as well as scores of both publicly and privately-held communications companies.

Ms. Patrick oversees the appraisal and investment banking projects for the firm and has authored hundreds of valuation studies, including two of the largest broadcast-related estate appraisals ever.   These valuations were the basis for successful litigation against the Internal Revenue Service.

Ms. Patrick has also provided expert testimony and reports for clients in matters before state and federal courts as well as the Federal Communications

Commission, although none in the past four years.   She has also been a speaker/panelist at communications seminars and state association meetings.

Susan Patrick is a past member of the National Association of Broadcasters Radio Board of Directors.   She currently serves on the National Association of Broadcasters Small Market Radio Committee.   Ms. Patrick has also served on the Federal Communications Commission's Diversity Task Force.

Ms. Patrick has been named one of Radio Ink's 50 Most Influential Women annually since 2003 through to the present.   In 2005, Ms. Patrick was selected as one of Maryland's 100 Most Outstanding Women.   Ms. Patrick was inducted into the Ohio University College of Communication's Hall of Fame in 2005 and she is a past member of the University of Maryland's Board of Visitors for the Merrill College of Journalism.

Prior to joining Patrick Communications, Ms. Patrick was a Media Broker with Blackburn and Company, a leading brokerage firm at the time.   She also had tenures at the National Association of Broadcasters, and Hiber and Hart, a media consulting firm.

Ms. Patrick has also owned radio stations in Ohio and Missouri in addition to the Wyoming stations she now owns and manages.

Susan Patrick holds a B.A. in Communications from the University of Iowa and an MBA in Finance from the Robert H. Smith School of Business at the University of Maryland.

The fee structure for Patrick Communications for this case is $7,500 for preparation of this report.   Any further testimony or work shall be provided at the rate of $800 per hour.

# Appendix B -Materials Reviewed

**(in no particular order)**

- *Valuation of WTHC, Atlanta, GA as a Class A LP Station"* dated January 23, 2019, by Stephan S. Sloan, Media Services Group.
- *Damage Analysis in the Case of the Atlanta Channel v. Solomon,* by Michael J. Garibaldi, The Garibaldi Group.
- Answer of Plaintiff ACI to the Supplemental Set of Interrogatories of Defendant Henry A. Solomon.
- WTHC-LD Channel 3 Displacement Engineering Narrative and Environmental Report
- Construction Permit for Channel 3 issued by the Federal Communications Commission
- ACI 2017 tax return