# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| THE ATLANTA CHANNEL, INC., | : | | |
| Plaintiff, | : | Civil Action No.: | 15-1823 (RC) |
| v. | : | Re Document No.: | 110, 120 |
| HENRY A. SOLOMON, *et al.*, | : | | |
| Defendants. | : | | |

# MEMORANDUM OPINION

### Granting in Part Defendant Henry A. Solomon's Motion to Strike; Granting in Part the Garvey Defendants' Motion to Strike

## I. INTRODUCTION

This legal malpractice case again comes before this Court on two motions to strike respectively filed by defendant Henry A. Solomon and defendants Garvey Schubert Barer and Melodie Virtue ("the Garvey Defendants"). In support of its legal malpractice case against Defendants, Plaintiff The Atlanta Channel, Inc. ("ACI") designated two expert witnesses specialized in the field of legal ethics, George W. Conk and Tom W. Davidson. Solomon has now moved to strike Davidson's expert report and to exclude his testimony, arguing that Davidson was untimely disclosed as an expert witness. And the Garvey Defendants have moved to strike Conk on a number of grounds, including that his proposed testimony is improper because it entirely consists of inadmissible legal conclusions. After reviewing the parties' arguments, the Court grants in part and denies in part both motions.

## II. BACKGROUND

This case has a lengthy history and this Court has already summarized its factual background on several occasions in past opinions. *See, e.g.*, *Beach TV Props., Inc. v. Solomon*

("*Beach TV II*"), 324 F. Supp. 3d 115, 118 (D.D.C. 2018); *Beach TV Props., Inc. v. Solomon* ("*Beach TV I*"), No. 15-1823 (RC), 2016 WL 6068806, at *1–4 (D.D.C. Oct. 14, 2016). The Court assumes familiarity with those prior opinions and briefly outlines only the facts most relevant to the pending motions to strike.

On December 29, 1999, Solomon submitted a statement of eligibility for a Class A license to the Federal Communications Commission ("FCC") on behalf of his then-client, ACI. *See Beach TV II*, 324 F. Supp. 3d at 118. The form was improperly filled, and ACI alleges that it was dismissed by the FCC as a result. *See id.* ACI alleges that it was thereby unable to obtain a Class A license for a television station it owned, at a loss of at least $25,000,000. *See id.* Solomon applied for review of the dismissal before the FCC in 2000. *See id.* at 119. The same year, he also joined the firm of Garvey Schubert Barer. *See id.* Solomon retired from Garvey Schubert Barer in 2010, while the application for review was still pending, and his work with ACI was taken over by Virtue, another attorney at Garvey Schubert Barer. *See id.* Virtue began working specifically on ACI's pending application for review in early 2012. *See id.* The FCC ultimately denied the application for review on November 9, 2012, and the D.C. Circuit upheld that denial in September 2015. *See id.*

ACI filed suit on October 26, 2015. *See* Compl., ECF No. 1. ACI's first amended complaint, filed on February 2, 2016, included claims for legal malpractice against, *inter alia*, both Solomon and Garvey Schubert Barer. *See* First Am. Compl. ¶¶ 122–37, ECF No. 21. But on October 14, 2016, this Court dismissed all but one of those claims, leaving only one remaining live claim against Solomon. *See Beach TV I*, 2016 WL 6068806, at *1. ACI proceeded to discovery on that claim, with the Court entering a Scheduling Order on October 31, 2016 setting, *inter alia*, a deadline for the submission of ACI's expert disclosures and reports

relating to Solomon's liability on February 28, 2017. *See* Scheduling Order (Oct. 31, 2016), ECF No. 58. ACI disclosed Conk as a liability expert within that deadline, *see* Def. Henry A. Solomon's Mem. Supp. Mot. Strike ("Solomon's Mem. Supp.") 2, ECF No. 110-1, and ACI and Solomon completed discovery as to liability by early 2018, *see* Joint Status Report 2, ECF No. 85 ("Plaintiff ACI and Defendant Solomon have completed discovery regarding liability issues *as to each other*."). The Court then set a deadline for ACI's submission of its expert reports on damages due January 31, 2019. *See* Scheduling Order (Oct. 4, 2018), ECF No. 101.

In the meantime, ACI filed a second amended complaint including new claims against Virtue and Garvey Schubert Barer on June 1, 2017. *See* Second Am. Compl., ECF No. 69. In the second amended complaint, ACI alleges that Virtue committed malpractice by failing to make a number of disclosures to it upon taking over the FCC license matter in 2012 (the so-called "Virtue obligations"). *See id.* ¶¶ 59–60, 80–84. And ACI alleges that Garvey Schubert Barer is liable for her malpractice as her employer. *See id.* ¶ 87. ACI's claims against the Garvey Defendants proceeded to discovery on a delayed schedule from its claim against Solomon, with the Court setting a deadline for the submission of ACI's expert reports regarding the Garvey Defendants' liability on January 31, 2019. *See* Scheduling Order (Oct. 4, 2018).

On September 18, 2018, ACI informed the Garvey Defendants that it intended to use Conk as a liability expert not just on its claim against Solomon, but also on its claims against them. *See* Pl.'s Mem. Opp'n Garvey Defs.' Mot. Strike ("Pl.'s Garvey Defs. Opp'n") 1, EFC No. 125. And on January 17, 2019, ACI disclosed a new expert to Solomon, Tom W. Davidson. *See* Solomon's Mem. Supp. 1–2. Solomon has now moved to strike Davidson as an untimely disclosed liability expert, *see* Def. Henry A. Solomon's Mot. Strike, ECF No. 110, while the Garvey Defendants move to strike Conk on a number of grounds, *see* Garvey Defs.' Mot. Strike,

3

ECF No. 120.

## III. ANALYSIS

Solomon has moved to strike Davidson as an expert witness, arguing that striking his testimony is an appropriate sanction for ACI's untimely disclosure. *See* Solomon's Mem. Supp. 4. And the Garvey Defendants move to strike Conk on four separate grounds: that his testimony consists entirely of legal conclusions, that he has no knowledge of the appropriate standard of care, that he lacks knowledge of the facts of the case, and that he is not a qualified expert witness under Federal Rule of Evidence 702. *See* Garvey Defs.' Mem. Supp. Mot. Strike 5, ECF No. 120-1. The Court addresses each motion in turn. It finds Solomon's argument as to Davidson persuasive only in part, because only part of Davidson's report is directed at liability issues. And while the Court agrees that at least some of Conk's opinions, as proffered in the expert report, are inadmissible, it does not find his reliance on the D.C. Rules of Professional Conduct and other legal authorities on ethics to be *per se* improper, nor is it convinced by the Garvey Defendants' other arguments for striking his testimony in its entirety. The Court therefore grants both motions only in part.

**A. The Court Grants in Part Solomon's Motion to Strike Davidson as Untimely Disclosed**

The Court first reviews Solomon's motion to strike Tom W. Davidson as an expert witness. Solomon argues that Davidson should be stricken as an expert because his disclosure as a liability expert is untimely. *See* Solomon Mem. Supp. 2–4. The Court briefly discusses the standard for exclusion of testimony not properly disclosed, before going over the parties' arguments. The Court agrees with Solomon that at least some aspects of Davidson's proffered testimony relates to liability issues and is untimely. However, it also finds that some of

Davidson's expert opinions address damages issues and are therefore timely disclosed. The Court accordingly strikes Davidson as an expert witness only as to his opinions on liability.

Federal Rule of Civil Procedure 26 requires parties to disclose the identity their expert witnesses, *see* Fed. R. Civ. P. 26(2)(A), as well as provide, for each expert, an expert report containing "a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; [and] any exhibits that will be used to summarize or support [the opinions]," Fed. R. Civ. P. 26(a)(2)(B). And under Rule 26(a)(2)(D), such a report must be disclosed "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Pursuant to Rule 37(c), failure to disclose information as required by Rule 26(a) results in the party not being allowed to use that information, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Rule 37(c)(1) is a self-executing sanction[.]" *Norden v. Samper,* 544 F. Supp. 2d 43, 49 (D.D.C. 2008). "The proponent of the evidence bears the burden of showing that the failure to disclose the evidence 'was substantially justified or is harmless.'" *Moore v. Napolitano*, 926 F. Supp. 2d 8, 25 n.12 (D.D.C. 2013) (quoting Fed. R. Civ. P. 37(c)).

Here, ACI disclosed Davidson as an expert in January 2019, before the deadline for disclosure of damages experts but well after the deadline for disclosure of liability experts. Solomon argues that Davidson is a liability expert, *see* Solomon's Mem. Supp. 2, while ACI contends that Davidson's report addresses three issues, all of which relate to ACI's damages: foreseeability of the harm caused by Solomon's alleged malpractice, contributory negligence by ACI, and Solomon's duty of care, *see* Pl.'s Mem. Opp'n Henry A. Solomon Mot. Strike ("Pl.'s Solomon Opp'n") 1–3, ECF No. 111. The Court agrees with ACI as to foreseeability, but not as to the other issues on which Davidson proffers his expert opinion. Foreseeability here touches

upon "the extent of the damage Mr. Solomon's alleged negligence proximately caused," *Beach TV II*, 324 F. Supp. 3d at 121, and is a therefore a damages issue, on which Davidson was timely disclosed. On the other hand, the Court cannot agree that either contributory negligence or Solomon's duty of care are issues that "straddle[] both 'damages' and 'liability.'" Pl.'s Solomon Opp'n 2. A cursory examination of Davidson's report indicates that, aside from the foreseeability of the damages caused by Solomon's alleged malpractice, it focuses entirely on what standard of care applied to Solomon and whether Solomon complied with that standard. *See generally* Expert Witness Statement of Tom W. Davidson, ECF No. 110-2. This is a pure liability issue on which Davidson was untimely disclosed.

Having found that Davidson's disclosure as an expert witness was untimely, the Court must next determine whether the failure to disclose "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, the Court finds that ACI has failed to show either exception to a Rule 37 sanction applies. ACI appears to first argue that the late disclosure of an expert addressing contributory negligence was substantially justified because Solomon only explained the basis for his contributory negligence defense "after the close of Liability Discovery." Pl.'s Solomon Opp'n 2. But, as Solomon points out, he raised his contributory negligence defense in his answer to ACI's first amended complaint in on January 12, 2016. *See* Def. Henry A. Solomon's Answer to First Am. Compl. 7, ECF No. 17. He did so again in his answer to the second amended complaint on June 15, 2017. *See* Def. Henry A. Solomon's Answer to Second Am. Compl. 13, ECF No. 70. And he filed the document that ACI argues "first asserted the factual and legal basis for his contributory negligence defense," Pl.'s Solomon Opp'n 2, in September 2017, almost two years ago. ACI has therefore not shown that it was substantially

6

justified in waiting until January 2019 to present evidence regarding Solomon's contributory negligence defense.

Neither is the late disclosure of Davidson as an expert witness harmless. While it may be true that discovery as to damages only closed recently, liability discovery had been closed for well over a year and a half when ACI first produced Davidson's report. Reopening liability discovery to allow for Davidson's deposition—and the possible submission of a rebuttal expert witness report, triggering yet more discovery—will undoubtedly cause the parties significant costs and further delay in a case that has now been pending for close to five years. Finding that the disclosure was not harmless, the Court therefore concludes that Davidson's untimely opinions must be excluded. It accordingly grants Solomon's motion in part and strikes Davidson's testimony except as it relates to the foreseeability of the harm caused by Solomon's alleged negligence.

### B. The Court Grants in Part the Motion to Strike Conk's Testimony

Next, the Court addresses the Garvey Defendants' motion to strike George Conk as an expert witness. The Garvey Defendants make four arguments for excluding Conk's testimony, contending that 1) Conk solely relies on legal authorities for his opinions, which are inadmissible legal conclusions, 2) Conk is not familiar with the applicable standard of care, 3) Conk does not know the pertinent facts of the case, and finally 4) Conk is unqualified under Federal Rule of Evidence 702 because he "disregarded his duties" as an expert witness. Garvey Defs.' Mem. Supp. 5. The Court agrees in part as to the first argument, but disagrees as to the rest. It accordingly only grants in part the motion to strike.

*1. Only Some of Conk's Opinions Are Inadmissible Legal Conclusions*

The Court first reviews the Garvey Defendants' arguments that Conk's testimony should be excluded in its entirety as solely consisting of legal opinions. The Court is not entirely convinced, and it accordingly only grants in part the motion to strike on that ground.

The Garvey Defendants are correct that experts are generally prohibited from opining on legal issues. Federal Rule of Evidence 702 provides that an expert "may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. And courts have generally found that when an expert's testimony "'consists of legal conclusions,' it 'cannot properly assist the trier of fact'" and is therefore not admissible. *Convertino v. U.S. Dep't of Justice*, 772 F. Supp. 2d 10, 12 (D.D.C. 2010) (quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1211 (D.C. Cir. 1997)). This is because "[l]egal conclusions . . . 'intrude upon the duties of, and effectively substitute for the judgment of, the trier of fact and the responsibility of the Court to instruct the trier of fact on the law.'" *Id.* (quoting *United States ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002)).

However, this general rule becomes much more complex in the context of legal malpractice suits. "When an expert witness is required, the expert must 'clearly articulate and reference a standard of care by which the defendant's actions can be measured.'" *Robinson v. Wash. Metro. Area Transit Auth.*, 774 F.3d 33, 39 (D.C. Cir. 2014) (quoting *Varner v. Dist. of Columbia*, 891 A.2d 260, 269 (D.C. 2006)). And when that defendant is a lawyer, that standard of care necessarily implicates legal issues that would not arise in a typical negligence case. *See, e.g.*, *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100–01 (1st Cir. 1997) ("[T]here may be particular areas of law, such as legal malpractice, where expert testimony on legal matters is

admissible where it would normally be excluded."). In particular, given that lawyers are subject to a number of ethical duties separate from their duty of care to their clients, courts are divided as to whether those ethical duties can constitute evidence of the standard of care—and whether expert witnesses should be able to refer to ethical rules when testifying to the standard of care.[1] Most courts "allow testimony on ethical violations as evidence of an attorney's failure to comply with the legal standard of care," Michael P. Ambrosio & Denis F. McLaughlin, *The Use of Expert Witnesses in Establishing Liability in Legal Malpractice Cases*, 61 Temp. L. Rev. 1351, 1362 (1988) (citing cases), often under the rationale that "[a] legal expert's use of [ethical rules] in determining the standard of care required in a legal malpractice case is not unlike the use of practice codes in other negligence contexts," *Waldman v. Levine*, 544 A.2d 683, 691 (D.C. 1988).

Particularly relevant here, the District of Columbia considers ethical rules applicable to D.C. attorneys to be relevant to determining the appropriate standard of case in a legal malpractice case. *See Waldman*, 544 A.2d at 691 (noting that "[i]t is an obvious proposition that the [D.C.] Code of Professional Conduct provides a gauge by which to determine the competency of the Bar" and finding appropriate an expert's "use of the Code in determining the standard of care required in a legal malpractice case"); *see also Williams v. Mordkofsky*, 901 F.2d 158, 163 (D.C. Cir. 1990) ("While the Model Code [of Professional Responsibility] does not provide for a direct private malpractice action, violations of the Code certainly constitute evidence in an action at common law" (citing *Waldman*, 544 A.2d at 690–91)). In addition,

---

[1] The issue has generated some amount of academic scholarship. *See, e.g.*, David S. Caudill, *The Roles of Attorneys as Courtroom Experts: Revisiting the Conventional Limitations and Their Exceptions*, 2 St. Mary's J. on Legal Malpractice & Ethics 136 (2012); Wilburn Brewer, Jr., *Expert Witness Testimony in Legal Malpractice Cases*, 45 S.C. L. Rev. 727 (1994).

courts both in this circuit and in others have allowed experts to testify as to violations of ethical rules in legal malpractice cases. *See, e.g.*, *Hendry v. Pelland*, 73 F.3d 397, 401 (D.C. Cir. 1996) (discussing expert testimony that defendant had violated D.C. disciplinary rule in breach of fiduciary duty case); *Miami Int'l. Realty Co. v. Paynter*, 841 F.2d 348, 353 (10th Cir. 1988) (rejecting argument that lower court erroneously admitted expert testimony as to lawyer's failure to comply with Colorado Code of Professional Responsibility in legal malpractice case); *Jacobsen v. Oliver*, 555 F. Supp. 2d 72, 86–87 (D.D.C. 2008) (evaluating expert opinion that attorney's fee arrangement violated D.C. Rule of Professional Conduct 1.5 in breach of fiduciary duty case); *Smith v. Haden*, 872 F. Supp. 1040, 1045 n.2 (D.D.C. 1994) (rejecting Defendant's objection to legal expert's use of D.C. disciplinary rule in determining applicable standard of care in legal malpractice case).

Here, the Garvey Defendants contend that Conk's proposed testimony is inadmissible because his expert reports "are essentially memoranda of law" that "rely on a variety of legal authorities," including the D.C. Rules of Professional Conduct and ethics opinions from D.C. and other jurisdictions. Garvey Defs.' Mem. Supp. 6. The Court is for the most part unconvinced. As discussed above, the District of Columbia considers a lawyer's ethical duties to be relevant to determining the appropriate standard of care. *See Waldman*, 544 A.2d at 691. And federal courts have generally allowed experts to testify to violations of a lawyer's ethical duties, as long as the violation of ethical rules is not presented as *de facto* negligence. *See, e.g.*, *Paynter*, 841 F.2d at 353. The Court therefore cannot find that Conk's reliance on legal authorities regarding a D.C. lawyer's ethical duties to help determine the Garvey Defendants' standard of care was improper.

The Court does agree, however, that Conk improperly uses the legal authorities he relies on for his proffered opinions in much of his report. The D.C. Court of Appeals and the D.C. Circuit have made clear that while a lawyer's ethical responsibilities, and breach thereof, can be used as evidence in a legal malpractice action, violations of the D.C. Rules of Professional Conduct "does not provide for a direct malpractice action." *Williams*, 901 F.2d at 163 (citing *Waldman*, 544 A.2d at 690–91). In *Paynter*, the Tenth Circuit similarly noted that a legal expert's testimony regarding the Colorado Code of Professional Responsibility was not improper as long as the code "was not presented as having the force and effect of a law nor that deviations from it constituted negligence *per se*." 841 F.2d at 348. Yet that is what Conk appears to do in both his initial report and his rebuttals to both Solomon and the Garvey Defendants' experts, conflating the D.C. Code of Professional Responsibility with the standard of care applicable to both sets of defendants. *See, e.g.*, Report of George W. Conk, Esq. ("Conk Report") 5, ECF No. 120-3 ("Solomon had a duty to inform The Atlanta Channel about any outstanding problems presenting a 'significant risk' to the client at the time of his retirement." (quoting D.C. Rules of Prof'l Conduct 1.7(a)(2))); First Rebuttal Report of George W. Conk, Esq. ("Conk First Rebuttal Report") 2–3, ECF No. 120-4 (noting that Garvey Schubert Barer and Virtue failed to comply with their duty to inform ACI of "the material risks and reasonably available alternatives to the proposed course of conduct" they were suggesting (quoting D.C. Rules of Prof'l Conduct 1.0(e))). The Court will therefore strike Conk's testimony to the extent he equates the Garvey Defendants' breach of their ethical duties with a breach of the standard of care they owed ACI. Conk will be permitted to testify to the ethical duties applicable to the Garvey Defendants, and the breach thereof, only to the extent he explains how those ethical responsibilities framed his

11

determination of what the applicable standard of care was for an attorney in the Garvey Defendants' circumstances.

### 2. Conk's Testimony Is Not Otherwise Inadmissible

Next, the Court briefly reviews the Garvey Defendants' three other arguments for striking Conk's testimony: that Conk is not familiar with the applicable standard of care, failed to review the relevant facts of the case before issuing his opinion, and is unqualified because he disregarded his duties as a legal expert. *See* Garvey Defs.' Mem. Supp. 5. The Court disagrees.

First, the Garvey Defendants have not shown that Conk is not familiar with the applicable standard of care. The Garvey Defendants offer a simple argument for striking Conk: an expert witness in a legal malpractice case can only testify about the standard of care applicable to "competent lawyers under circumstances similar to those at issue." Defs.' Mem. Supp. 9 (citing *Jacobsen*, 555 F. Supp. 2d at 72; *Iacangelo v. Georgetown Univ.*, 560 F. Supp. 2d 53 (D.D.C. 2008)). Here, they argue, this standard would require an expert witness who is familiar with circumstances where the *exact same situation* arose, *see id.* at 10, and who is also familiar with how a "competent *FCC* lawyer (such as Ms. Virtue)" would react under such circumstances, *id.* at 11 (emphasis added). And, they conclude, Conk lacks the required knowledge because he admits to being familiar with neither. *See id.* at 10–12. But the Garvey Defendants do not provide any case law supporting the notion that an expert's knowledge of the standard of care must be this narrowly tailored in order for his opinion to be admissible.[2] Analyzing how a

---

[2] Indeed, in *Jacobsen*, a case the Garvey Defendants cite for the proposition that the Court should disregard a legal expert opinion that is based primarily on ethical rules, the court did not outright reject the testimony of the legal expert. *See* 555 F. Supp. 2d at 86. Because the expert acknowledged that his opinion was "not rooted in community or professional standards," the court found that the opinion did not constitute the significantly probative evidence required to grant summary judgment to the plaintiff. *Id.* But the court still found that the expert's opinion could constitute "colorable evidence" supporting the plaintiff's case. *Id.*

lawyer would act in similar circumstances does not mean one has to determine how a lawyer would act under the very same circumstances. Given that no two cases are the same, such a requirement would essentially guarantee that no expert is ever qualified to testify in a legal malpractice case. Furthermore, in the case at issue here, where ACI's argument for liability is based on the failure to make a disclosure in response to a conflict of interest—a situation that can arise in all areas of practice—the Court is not convinced that knowledge of how a "competent FCC lawyer" would act is required either.

Next, the Court also finds that Conk is sufficiently familiar with the facts of this case to testify as to his expert opinion on the standard of care applicable to Virtue. The Garvey Defendants argue that Conk "failed to review the pertinent facts," Defs.' Mem. Supp. 12, because he did not read in full the depositions of Virtue, Solomon, and another deposed individual before preparing his report, nor did he review ACI's responses to the Garvey Defendants' requests for admissions and interrogatories, *see id.* at 13–16. According to the Garvey Defendants, this failure to review discovery materials results in Conk's testimony being "worthless" and warrants striking it in its entirety. *Id.* at 17. The Court disagrees.

First, ACI's theory of liability revolves around Virtue's failure to make a series of disclosures when faced with a particular situation the facts of which are mostly undisputed, rather than with complex, disputed facts often at issue in cases where expert testimony is required. The Court is therefore not inclined to strike Conk's testimony simply because he has not *fully* reviewed the discovery in this case. Indeed, the Court fails to see how Conk's consideration of ACI's admissions that it did not make specific statements or requests to the Garvey Defendants, *see* Garvey Defs.' Mem. Supp. 15, would have changed his proffered opinion when he opines that Virtue should have *volunteered* specific disclosures as a competent

13

attorney.  Nor do the Garvey Defendants explain how Conk's failure to review full deposition transcripts rather than those portions he did review prevented him from obtaining sufficient factual basis to form his opinion.[3]  "An expert 'need not consider *every* possible factor to render a reliable opinion," and here Conk's opinion is "sufficiently reliable in the eyes of the Court."  *Campbell v. Nat'l R.R. Passenger Corp.*, 311 F. Supp. 3d 281, 299 (D.D.C. 2018).

And second, the Court does not find the discrepancies the Garvey Defendants identify in Conk's report sufficient to warrant striking him as an expert witness.  To be sure, Conk's report proffers a number of opinions that do not appear relevant to this case, including on the liability of Garvey Schubert Barer itself, *see, e.g.*, Conk First Rebuttal Report 2; Second Rebuttal Report of George W. Conk, Esq. 7, ECF No. 133-1.  And Conk's reports also contain a number of factual inaccuracies.  But the Court is not convinced that those inaccuracies demonstrate such a lack of knowledge about the relevant facts as to render Conk's opinion unreliable.  The Garvey Defendants will be able to cross-examine Conk at trial and will have the opportunity to discredit his testimony to the extent they wish to show his opinion is not sufficiently based on facts.  But these problems go to the weight to be given to Conk's testimony by the trier of fact, not to its admissibility.

Finally, the Court addresses the Garvey Defendants' argument that Conk is not qualified to testify as an expert because he showed "pervasive disregard" for his duties as an expert witness.  Defs.' Mem. Supp. 18.  The Garvey Defendants argue that Conk disregarded the procedural requirements for submitting his expert opinion, failing to comply with the deadlines

---

[3] The Garvey Defendants characterize the deposition excerpts Conk states he has reviewed as "tidbits."  Garvey Defs.' Mem. Supp. 13.  The Court cannot agree with that characterization, when the excerpts Conk reviewed contained dozens of pages from each deposition.  *See, e.g.*, Excerpts from Dep. of Melodie A. Virtue, ECF No. 72-6.

set by this Court or to produce an expert report addressed directly to Count III. *See id.* 18–20. And they appear to argue that he behaved unethically, including by providing intellectually dishonest answers at his deposition. *See id.* at 20–22. As to that second argument, the Court is not convinced by the Garvey Defendants' characterization of Conk's motivations and of his deposition testimony, which they simply paint in a negative light by selectively citing from Conk's deposition transcript. *See id.* at 21. With respect to the disclosure requirements, the Court certainly agrees that the irregular designation of Conk as a liability expert and failure to provide an updated report reflects poorly on ACI. But it fails to see why ACI's failure to comply with its obligations should reflect on *Conk's* qualifications as an expert.

In addition, unlike with the Davidson expert report, ACI's disclosure of Conk as an expert occurred within the deadline for the company to designate its liability experts, and the Garvey Defendants were able to depose Conk and produce their own rebuttal expert. And while Conk's initial report did not purport to directly address Count III, it did provide Conk's opinions as to the liability of the Garvey Defendants. Ultimately, the Court finds the defects in ACI's disclosure harmless, and it therefore declines to strike Conk as an expert witness. *See Moore*, 926 F. Supp. 2d at 25 n.12 (quoting Fed. R. Civ. P. 37(c)).

## IV. CONCLUSION

For the foregoing reasons, Defendant Henry A. Solomon's motion to strike Plaintiff's expert Tom W. Davidson and the Garvey Defendants' motion to strike Plaintiff's expert George W. Conk are both **GRANTED IN PART AND DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 13, 2019  RUDOLPH CONTRERAS
United States District Judge

15