**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| THE ATLANTA CHANNEL, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 15-1823 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 145, 150, 155 |
| | : | | |
| HENRY A. SOLOMON, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

**GRANTING IN PART AND DENYING IN PART DEFENDANT HENRY A. SOLOMON'S MOTION TO
STRIKE; DENYING GARVEY DEFENDANTS' AMENDED MOTION FOR RECONSIDERATION;
DENYING AS MOOT GARVEY DEFENDANTS' MOTION FOR RECONSIDERATION**

## I. INTRODUCTION

In this long-running legal malpractice suit, the parties continue to dispute the

admissibility of Plaintiff's evidence.  Presently before the Court are two sets of motions

regarding the testimony of Plaintiff's expert George W. Conk, whom Plaintiff ACI designated as

a specialist in legal ethics in support of its liability claims.  This Court previously ruled on the

motion of Defendants Garvey Schubert and Melodie Virtue ("the Garvey Defendants") to strike

Mr. Conk's testimony, granting the motion in part and striking Mr. Conk's opinions "to the

extent he equates the Garvey Defendants' breach of their ethical duties with a breach of the

standard of care they owed ACI."  *Atlanta Channel, Inc. v. Solomon* (*Beach TV VI*), No. 15-cv-

1823, 2019 WL 4394837, at *5 (D.D.C. Sept. 13, 2019).[1]  The Garvey Defendants now move for

reconsideration of the Court's opinion in *Beach TV VI*, contending both that the Court

---

[1] Because this case was originally captioned as *Beach TV v. Solomon*, the Court uses the
shortened citation *Beach TV VI* to promote consistency with its earlier opinions.

misconstrued portions of the record in rejecting the majority of their argument and directing the

Court's attention to an intervening district court case in the Southern District of New York.

Separately, Defendant Henry Solomon has moved to strike Mr. Conk on a number of grounds,

including the same contention that his testimony contains inadmissible legal conclusions that the

Court addressed in *Beach TV VI* with respect to the Garvey Defendants.  After reviewing both

parties' arguments, the Court denies the Garvey Defendants' motion for reconsideration and

grants in part and denies in part Defendant Solomon's motion to strike.

## II.  BACKGROUND

In light of the lengthy history of this case and the Court's summary of the factual

background in prior opinions, *see, e.g.*, *Beach TV Properties, Inc. v. Solomon* (*Beach TV IV*), 324

F. Supp. 3d 115, 118 (D.D.C. 2018); *Beach TV Properties, Inc. v. Solomon* (*Beach TV I*), No. 15-

cv-1823, 2016 WL 6068806, at *1–4 (D.D.C. Oct. 14, 2016), the Court briefly discusses only the

facts most relevant to the pending motions.

This malpractice suit has its origins in late December 1999, when Mr. Solomon, an

attorney, submitted a statement of eligibility for a Class A license to the Federal

Communications Commission ("FCC") on behalf of his client at the time, the Atlanta Channel,

Inc. ("ACI").  *See Beach TV VI*, 2019 WL 4394837 at *1 (citing *Beach TV IV*, 324 F. Supp. 3d at

118).  Because several portions of the form that Mr. Solomon submitted were incomplete, the

FCC dismissed the statement of eligibility.  *See id*.  ACI alleges that the omissions on the

statement of eligibility left it unable to apply for a valuable Class A license that, on Plaintiff's

account, a station that it owned would have otherwise received (along with the pecuniary

benefits associated with this valuable broadcast spectrum space).  *See id*.  Attempts to appeal to

the FCC and, later, to the D.C. Circuit for review of the initial denial over the course of nearly 15 years proved unavailing.  *See id*.

After the D.C. Circuit upheld the FCC's denial of ACI's statement of eligibility, Plaintiff filed suit for legal malpractice in this Court on October 26, 2015.  *See id*. (citing Compl., ECF No. 1).  ACI amended the complaint in February 2016 to include claims against, *inter alia*, Defendants Solomon and the law firm Garvey Schubert Barer.  *See id*. (citing First Am. Compl. ¶¶ 122–37, ECF No. 21).  This Court subsequently dismissed all claims apart from one claim against Defendant Solomon.  *See Beach TV I*, 2016 WL 6068806, at *1.  Discovery on the claim between ACI and Defendant Solomon commenced in late 2016 and concluded with respect to liability issues in early 2018.  *See Beach TV VI*, 2019 WL 4394837 at *1 (citing Joint Status Report 2, ECF No. 85).

In parallel, ACI pursued additional claims against Ms. Virtue and Garvey Schubert Barer, filing a second amended complaint in June 2017.  *See id*. (citing Second Am. Compl., ECF No. 69).  This second amended complaint alleges that Ms. Virtue committed malpractice after she took over the FCC license matter from Mr. Solomon in 2012 and that her employer, Garvey Schubert Barer, is liable for her malpractice.  *See id*. (citing Second Am. Compl. ¶¶ 59–60, 80–84, 87).  Discovery on this set of claims proceeded on a different timeline, with submission of ACI's expert reports with respect to liability due by late January 2019.  *See id*.

A flurry of activity in this case ensued in early fall of 2019.  First, on August 5, 2019, Defendant Solomon moved to strike Mr. Conk's opinions concerning him in their entirety, arguing that this testimony consists of inadmissible legal conclusions, discusses events that do not pertain to the sole remaining count against him, includes unnecessary and unhelpful points and was, in part, filed after the close of discovery.  Def. Solomon's Mot. to Strike ("Solomon

Mot."), ECF No. 145.   On September 13, 2019, the Court resolved a separate motion by the Garvey Defendants to strike Mr. Conk as an expert witness.  *See generally Beach TV VI*, 2019 WL 4394837.  In *Beach TV VI*, this Court rejected the majority of the Garvey Defendants' arguments yet granted the motion to strike in part, agreeing that Mr. Conk's opinions should be stricken to the extent that they equated the Garvey Defendants' breach of ethical duties with a breach of the standard of care owed to ACI.  2019 WL 4394837, at *5 (permitting Mr. Conk "to testify to the ethical duties applicable to the Garvey Defendants, and the breach thereof, only to the extent he explains how those ethical responsibilities framed his determination of what the applicable standard of care was for an attorney in the Garvey Defendants' circumstances").  Thereafter, the Garvey Defendants moved the Court to reconsider its opinion, contending that the Court "patently misunderstood" their argument concerning the applicable standard of care.  Mem. P. & A. in Supp. of Garvey Defs.' Mot. Recons. 7–8, ECF No. 150-1.  Ten days later, the Garvey Defendants filed an amended motion for reconsideration, reiterating the same points and directing the Court to a recently-decided case in the Southern District of New York.  Garvey Defs.' Am. Mot. Recons. ("Garvey Mot.") 2, ECF No. 155.  For the forthcoming reasons, the Court is unpersuaded by the Garvey Defendants' motion, which amounts to little more than a warmed-over version of the same arguments the Court already rejected in *Beach TV VI*, 2019 WL 4394837.  But the Court is convinced by certain arguments that Defendant Solomon makes in his motion to strike, and thus grants in part and denies in part that motion.

### III.  ANALYSIS

The arguments presented by Defendant Solomon in his motion to strike rely in part on the same points that the Garvey Defendants raised in the motion to strike that this Court resolved in *Beach TV VI*.  *See* Solomon Mot. 3 (citing Mem. P. & A. in Supp. of the Mot. of the Garvey

Defs. to Strike George Conk ("Garvey Defs.' Mot. Strike") 6–17, ECF No. 120-1) (adopting and incorporating by reference Garvey Defendants' contentions that Mr. Conk "merely states" inadmissible legal conclusions). As the Court just mentioned, *Beach TV VI*, which was decided after Defendant Solomon filed his motion to strike, but before he filed his reply brief, addressed the arguments made by the Garvey Defendants that Defendant Solomon incorporated by reference in the motion to strike presently pending before the Court. Because the Garvey Defendants argue that the Court should revisit its *Beach TV VI* conclusions, the Court begins with the Garvey Defendants' motion for reconsideration and then considers Defendant Solomon's motion to strike.

### A. The Garvey Defendants' Motion for Reconsideration

The Garvey Defendants present two arguments in support of their motion for reconsideration. Their primary assertion is that the Court "appeared to have misundestrood their contentions with respect to Mr. Conk's lack of familiarity with the applicable standard of care." Mem. P. & A. in Supp. of Garvey Mot. ("Garvey Mem.") 1, ECF No. 155-1. More specifically, the Garvey Defendants charge that the Court erroneously concluded that the Garvey Defendants invoked a narrow standard of care based on "the exact same situation," *id*. at 5–6, when they in fact relied on a standard of care "based on 'similar circumstances'" in their initial motion to strike, *id*. at 2, 5. Because they assert that "this mistaken premise was determinative" in the Court's denial of their motion to strike Mr. Conk as an expert witness, the Garvey Defendants maintain that the Court's misunderstanding demands reconsideration of its holdings in *Beach TV VI. Id.* at 11. In further support of this argument, the Garvey Defendants invoke *Joffe v. King & Spaulding LLP*, 17-cv-3392, 2019 WL 4673554 (S.D.N.Y. Sept. 24, 2019). Citing *Joffe*, the Garvey Defendants assert that the Court was too lenient in permitting Mr. Conk to refer to the

Rules of Professional Conduct ("RPC") as evidence of the standard of care, *id*. at 8, when in fact his opinions should be inadmissible in this legal malpractice suit because they rest on his interpretation of ethical rules and are not "grounded . . . on knowledge of actual conduct by other lawyers," *id*. at 9; *see id*. at 8–11. The Court will briefly summarize the applicable legal standards before assessing the merits of the Garvey Defendants' arguments.

Federal Rule of Civil Procedure 54(b) governs a situation, like the one at hand, wherein a party petitions the court to reconsider an interlocutory order. *Robinson v. District of Columbia*, 296 F. Supp. 3d 189, 192 (D.D.C. 2018) (discussing Rule 54(b)); *see* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). A court applying Rule 54 has authority to reconsider an interlocutory decision "as justice requires." *U.S. ex rel. Westrick v. Second Chance Body Armor, Inc.* (*Westrick*), 893 F. Supp. 2d 258, 268 (D.D.C. 2012) (quoting *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.,* 630 F.3d 217, 227 (D.C. Cir. 2011). Under this "as justice requires" standard, "reconsideration may be warranted," *inter alia*, "where the court has 'patently misunderstood the parties . . . or [where] a controlling or significant change in the law has occurred.'" *Id.* (second alteration in original) (quoting *Arias v. DynCorp,* 856 F. Supp. 2d 46, 52 (D.D.C. 2012). "These considerations leave a great deal of room for the court's discretion and, accordingly, th[is] . . . standard amounts to determining 'whether [relief upon] reconsideration is necessary under the relevant circumstances.'" *Lewis v. District of Columbia*, 736 F.Supp.2d 98, 102 (D.D.C. 2010) (first alteration in original) (quoting *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004)).

That said, the deciding court's discretion pursuant to Rule 54(b) is not open-ended; to the contrary, it is "limited by the law of the case doctrine and subject to the caveat that where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Robinson*, 296 F. Supp. 3d at 192 (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005)).  The party who moves for reconsideration must show "that reconsideration is appropriate and that harm or injustice would result if reconsideration were denied." *Westrick*, 893 F. Supp. 2d at 268 (citing *Husayn v. Gates*, 588 F. Supp. 2d 7, 10 (D.D.C. 2008)).

In this case, the Garvey Defendants assert that reconsideration under Rule 54(b) is appropriate for two reasons: because of the Court's purported patent misunderstanding of its argument and because *Joffe*, 2019 WL 4673554, represents an intervening change in the law. Garvey Mem. 10–11.  Neither argument is persuasive.  For one, based on its review of the record, the Court did not misunderstand the Garvey Defendants' contentions concerning the relevant standard of care.  In their motion for reconsideration, the Garvey Defendants contend that the Court misunderstood them because they previously meant to argue "that the applicable standard of care is based on 'similar circumstances,'" just as the Court explained in *Beach TV VI*, 2019 WL 4394837, at *6, yet "this Court mistakenly found that the Garvey Defendants were relying on a more narrow standard of care" that "requir[ed] an expert's familiarity with the 'exact same circumstances.'"  Garvey Mem. 1–2.  The problem with this argument is that the Garvey Defendants' initial motion, construed in context, *does* in fact invoke a narrower standard of care—as Plaintiff points out.  *See* Pl.'s Opp'n to Garvey Mot. ("Pl.'s Opp'n") 3–4, ECF No. 158 (citing Garvey Defs.' Mot. Strike 14) (arguing that the Garvey Defendants presented a "syllogism . . . [that] clearly argued for an 'exact same circumstances' standard").

To understand how the original motion invoked a narrower standard in this way, the Court next recounts the Garvey Defendants' arguments that Mr. Conk lacked knowledge of the applicable standard of care.  The Garvey Defendants' motion to strike, like their motion for reconsideration, relies heavily on an exchange between their counsel and Mr. Conk.  Therein, Mr. Conk was asked whether he had "encountered any actual situations in which lawyers have been involved in situations which are similar to those" facing the Garvey Defendants.  Garvey Defs.' Mot. Strike 10 (internal citations omitted); Garvey Mem. 3 (emphasis omitted) (internal citations omitted).  When Mr. Conk attempted to clarify what was being asked, counsel rephrased the question as "whether or not [Mr. Conk had] ever encountered, whether [he had] been aware of, observed, participated in, actual situations that have taken place that are similar to those that are alleged" with respect to the Garvey Defendants.  Garvey Defs.' Mot. Strike 10; Garvey Mem. 3 (emphasis omitted) (internal citations omitted).  Unsatisfied with the response, counsel restated the question once again, stating, "I am not asking you about cases in which you have testified or offered an opinion.  I am asking you about actual situations with actual lawyers and actual clients that have involved situations similar" to those alleged against the Garvey Defendants.  Garvey Defs.' Mot. Strike 10–11 (internal citations omitted); Garvey Mem.. 3–4 (emphasis omitted) (internal citations omitted).  When Mr. Conk responded, over the repeated objections of Plaintiff's counsel concerning the ambiguous nature of the word "similar," that he "really [couldn't] answer that question" and didn't "know what [counsel] mean[t] by actual lawyers and actual cases," counsel for the Garvey Defendants clarified that he meant "actual involvement, your ability to have observed things either as a practicing lawyer or otherwise." Garvey Defs.' Mot. Strike 11 (internal citations omitted); Garvey Mem. 4 (emphasis omitted) (internal citations omitted).  This exchange ended with Mr. Conk's statement that he understood

the Garvey Defendants' counsel to be asking him whether he had "ever seen any other situation like this," and his indication that he had not, because "[i]t's really a pretty unique circumstance." Garvey Defs.' Mot. Strike 11 (emphasis omitted) (internal citations omitted), Garvey Mem. 4 (emphasis omitted) (internal citations omitted).

Read in context, these statements suggest to the Court that the Garvey Defendants did in fact rely on a narrower standard of care than merely familiarity with and knowledge of "similar circumstances." The Garvey Defendants dispute this point, claiming that they merely contend that Mr. Conk cannot establish familiarity with a standard of care based on "similar circumstances" because he lacks "knowledge of actual practices by other lawyers," Garvey Mem. 2 (citing *Joffe*, 29–35), in the context of "similar" legal malpractice cases, *id.* The flaw in this argument is that, if the situation is "unique" in the way Mr. Conk suggests, there would be no way for any expert to establish the requisite familiarity if satisfying a "similar circumstances" standard of care requires "actual involvement" with "actual clients" in a similar situation. Put differently, read in context, the Court finds that Mr. Conk's statement that he had not "ever seen any other situation like this," *id.* at 4, does not mean that he has never encountered similar circumstances. If the question is whether the situations that he did encounter are sufficiently similar, then the Court finds compelling ACI's argument that the Garvey Defendants had "ample opportunity to ask Conk during his deposition about his actual experience with conflicts of interest, informed consent[,] and statute of limitations to determine whether and to what extent his actual hands-on experience comports with his opinions." Pl.'s Opp'n 7. They declined to do so, instead relying on a different, narrower understanding that requires familiarity with "actual" circumstances that are similar to the charges implicating the Garvey Defendants.

In short, despite the Garvey Defendants' representations to the contrary, what they argued in their motion to strike was that only direct experience with a sufficiently parallel situation—which was not possible here because of the uniqueness of the facts presented—could qualify an expert to testify.  This is precisely the conclusion that the Court reached in *Beach TV VI*. Nothing about the Garvey Defendants' resubmission of the same testimony with the word "similar" emphasized in bold, *see* Garvey Mem. 3–4, convinces the Court that the present motion for reconsideration is anything other than an attempt to relitigate arguments that this Court already found unavailing.  *See Beach TV VI*, 2019 WL 4394837, at *6 (noting that the Garvey Defendants provide no case law "supporting the notion that an expert's knowledge of the standard of care must be this narrowly tailored in order for his opinion to be admissible.").

As further support for this conclusion, it bears mention that the Garvey Defendants' motion for reconsideration excludes any discussion of other reasons for the Court's *Beach TV VI* conclusion that they were arguing for a narrower standard of care.  As the Court noted in *Beach TV VI*, the Garvey Defendants' original motion to strike also emphasized Mr. Conk's statement that he didn't "know what an average FCC lawyer is," and so could not say whether such an individual would be aware of the continuing representation doctrine.  Garvey Defs.' Mot. Strike 12 (emphasis omitted).  The Garvey Defendants presented this statement as further evidence that Mr. Conk was unqualified "to opine on how an ordinarily competent FCC lawyer would have acted."  *Id*.  But just as the Court previously held, because "ACI's argument for liability is based on the failure to make a disclosure in response to a conflict of interest—a situation that can arise in all areas of practice—the Court is not convinced that knowledge of how a 'competent FCC lawyer' would act is required" to qualify Mr. Conk to testify.  *Beach TV VI*, 2019 WL 4394837, at *6.  At no point in their motion for reconsideration do the Garvey Defendants address this

additional ground for the Court's conclusion that they were relying on too cribbed a notion of knowledge of "similar circumstances." The upshot is simple: nothing in the present motion convinces the Court that its *Beach TV VI* determinations were clearly erroneous in a way that merits reconsideration pursuant to Rule 54(b).

The Garvey Defendants' appeal to *Joffe* is equally unpersuasive. At the outset, the Court is puzzled why a single out-of-circuit, nonbinding opinion qualifies as "a controlling or significant change in the law," *Westrick*, 893 F. Supp. 2d at 268 (citation omitted), that merits reconsideration under Rule 54(b)'s standard. The Garvey Defendants assert that the opinion should be persuasive to this Court because the *Joffe* court rejected an expert report that "relied mainly on [the expert's] interpretation of the Rules of Professional Conduct." Garvey Mem. 8. In making this argument, the Garvey Defendants highlight this Court's statement in *Beach TV VI* that "courts are divided as to whether . . . ethical duties [of attorneys] can constitute evidence of the standard of care" that attorneys owe to clients, "and whether expert witnesses should be able to refer to ethical rules when testifying to the standard of care." 2019 WL 4394837, at *4. The Garvey Defendants' argument is not as clear as they may think it is, yet what they seem to be suggesting is that, given this division of opinions, the case at hand is one in which *Joffe* supports the conclusion that Mr. Conk improperly referenced ethical rules as the basis for his testimony.

This argument fails because it requires ignoring the Court's other statements in *Beach TV VI* concerning the controlling legal standard. Therein, this Court followed its observation concerning the split of authority in some courts with a statement of the operative rule in this jurisdiction: "the District of Columbia considers ethical rules applicable to D.C. attorneys to be relevant to determining the appropriate standard of care in a legal malpractice case." 2019 WL 4394837, at *5 (citing *Waldman v. Levine*, 544 A.2d 683, 691 (D.C. 1988); *Williams v.*

*Mordkofsky*, 901 F.2d 158, 163 (D.C. Cir. 1990)).  In other words, "[t]he D.C. Court of Appeals and the D.C. Circuit have made clear that while a lawyer's ethical responsibilities, and breach thereof, can be used as evidence in a legal malpractice action, violations of the D.C. Rules of Professional Conduct 'do[] not provide for a direct malpractice action.'"  *Id*. (quoting *Williams*, 901 F.2d at 163).  Applying this rule, this Court granted the Garvey Defendants' motion to strike portions of Mr. Conk's testimony that seemed to invoke ethical rules to draw legal conclusions concerning malpractice, rather than merely discussing the rules in the context of "explain[ing] how those ethical responsibilities framed his determination of what the applicable standard of care was for an attorney in the Garvey Defendants' circumstances." *Id*.  Curiously, the Garvey Defendants' motion for reconsideration never so much as mentions this controlling precedent or the Court's application of it, nor do they provide any "reason why the Court should jettison its reliance on *Waldman* and *Williams* . . . and embrace *Joffe*."  Pl.'s Opp'n 8.  The instant motion thus attempts to dress up a non-binding opinion that is contrary to governing law as a significant change in law.  The Court sees through this disguise: the Garvey Defendants cannot, without so much as a line of argument as to why the cited precedent should persuade the Court to abandon settled, controlling law, invoke *Joffe* to try to "reargue facts and theories upon which [the] court has already ruled."[2]  *Robinson*, 296 F. Supp. 3d at 192 (D.D.C. 2018) (citing *Bailey v. U.S. Marshal Serv.*, No. 08-cv-0283, 2009 WL 973197, at *2 (D.D.C. Apr. 2, 2009)).

---

[2] Though the Court rests its conclusions on the application of the Rule 54(b) legal standard in the manner discussed above, it is worth also mentioning that *Joffe* is distinguishable on its facts.  As Plaintiff notes, the Garvey Defendants gloss over the factual distinctions between *Joffe*, an action for alleged retaliatory termination that involved expert testimony concerning an attorney's reporting obligations to his employer, *see* 2019 WL 4673554 at *1–2, *14–16, and this case, which involves the duty that an attorney owes to his client.  *See* Pl.'s Opp'n 8 n.6 ("*Joffe* is readily distinguishable because it does not involve an attorney's duty to the client.").  Particularly because the Garvey Defendants urge the Court to take a closer look at the cause of action in assessing Mr. Conk's opinion testimony and to "consider the distinction

Accordingly, because the Court finds both of the grounds on which the Garvey

Defendants seek reconsideration to be without merit, the Garvey Defendants' motion is denied.[3]

### B. Defendant Solomon's Motion to Strike

With its *Beach TV VI* holding undisturbed, the Court next considers Defendant

Solomon's separate motion to strike Mr. Conk's expert testimony as it pertains to his own

liability.  Defendant Solomon makes several points in support of his motion.  First, relying on the

same arguments that the Garvey Defendants raised in their own motion, Defendant Solomon

contends that Mr. Conk's testimony should be stricken because it merely states inadmissible

legal conclusions and does not adequately discuss the applicable standard of care.  Solomon Mot.

1.  Second, he asserts that most of the testimony is irrelevant as applied to him because it centers

on his retirement and does not relate to the allegedly actionable conduct that occurred in

December 1999.  *Id*.  Third, he maintains that Mr. Conk's discussion of his professional liability

insurance is inadmissible under Federal Rule of Evidence 411.  *Id*. at 1–2.  And finally, he argues

that Mr. Conk's May 1, 2019, submission should be stricken as untimely because it was served

well past the final deadline for Plaintiff's expert disclosures on liability issues as they pertain to

---

between allegations of a lawyer's breach of fiduciary duties and cases of legal malpractice alleging negligence," Garvey Mem. 9, the Court looks askance at their own reliance on persuasive authority that involves an entirely different application of the ethical rules.  And to the extent that the Garvey Defendants seek to invoke *Joffe* solely for the proposition that an expert's testimony must do more than merely interpret the relevant ethical standard, *see Joffe*, 2019 WL 4673554, at *17, this Court already ruled in the Garvey Defendants' *favor* on this point by holding that Mr. Conk's testimony should be admitted only to "extent he explains how those ethical responsibilities framed his determination of what the applicable standard of care was for an attorney in the Garvey Defendants' circumstances."  *Beach TV VI*, 2019 WL 4394837, at *5.

[3] Because, for the reasons the Court just discussed, the Garvey Defendants have failed to show that reconsideration is appropriate based on this Court's misunderstanding of their arguments or an intervening change in the law, the Court does not address whether the Garvey Defendants carried their additional burden to establish "that harm or injustice would result if reconsideration were denied."  *Westrick*, 893 F. Supp. 2d at 268 (internal citation omitted).

him.  *Id*. at 2.  For the reasons set forth below, the Court finds Defendant Solomon's arguments

persuasive insofar as they overlap with its *Beach TV VI* conclusions, agrees with him in part

concerning Mr. Conk's testimony regarding his retirement, and concurs regarding the

untimeliness of the May 2019 submission.  However, because the Court is not convinced by his

other arguments, it grants in part and denies in part his motion to strike.  The Court considers

Defendant Solomon's contentions in turn.

### 1.  Mr. Conk's Discussion of Ethical Rules

As a general rule, experts may not opine on legal issues.  *See Beach TV VI*, 2019 WL

4394837, at *4.  As this Court explained in *Beach TV VI*, Federal Rule of Evidence 702 permits

an expert to "testify in the form of an opinion or otherwise if . . . the expert's scientific, technical,

or other specialized knowledge will help the trier of fact to understand the evidence or to

determine a fact in issue."  *Id.* (quoting Fed. R. Evid. 702).  Testimony that "consists of legal

conclusions . . . cannot properly assist of a trier of fact."  *Convertino v. DOJ*, 772 F. Supp. 2d 10,

12 (D.D.C. 2010) (quoting *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1211

(D.C. Cir. 1997)).  Thus, expert testimony that does no more than provide legal conclusions is

inadmissible.  *Beach TV VI*, 2019 WL4394837, at *4 (quoting *Convertino*, 772 F. Supp. 2d at

12).  This rule ensures that expert testimony does not improperly intrude on the domain of the

Court.  *Convertino*, 772 F. Supp. 2d at 12 ("[L]egal conclusions . . . intrude upon the duties of,

and effectively substitute for, the judgement of the trier of fact and the responsibility of the Court

to instruct the trier of fact on the law." (internal quotation omitted)).

This Court has previously addressed in depth how legal malpractice suits complicate this

general rule.  *See Beach TV VI*, 2019 WL 4394837, at *4–5.  In *Beach TV VI*, the Court

explained that, in a legal malpractice suit that requires an expert witness, "the expert must clearly

articulate and reference a standard of care by which the defendant's actions can be measured." *Id*. at *4 (internal quotation marks omitted) (quoting *Robinson v. Wash. Metro. Area Transit Auth.*, 774 F.3d 33, 39 (D.C. Cir. 2014); *see also Varner v. District of Columbia*, 891 A.2d 260, 269 (D.C. 2006). In the District of Columbia, an expert testifying in a legal malpractice suit may consider the ethical rules that apply to D.C. attorneys as "a gauge by which to determine the competency of the Bar." *Waldman*, 544 A.2d at 691 (citation omitted). That said, the D.C. Code of Professional Conduct may only be used to "determin[e] the standard of care required in a legal malpractice case," *id*., such that an alleged breach of that standard of care can be evidence in such a case, *Beach TV VI*, 2019 WL 4394837, at *5 (quoting *Williams*, 901 F.2d at 163). An expert may not present an ethical rule as "having the force and effect of a law" or indicate "that deviations from it constitute[] negligence *per se*." *Id*. (quoting *Miami Int'l Realty Co. v. Paynter*, 841 F.2d 348, 353 (10th Cir. 1988); *see also Williams*, 901 F.2d at 163 (noting that ethical rules "do[] not provide for a direct private malpractice action" while indicating that "violations of the [Model Code of Professional Responsibility] certainly constitute evidence in an action at common law").

In this case, for reasons substantially similar to its analysis in *Beach TV VI*, the Court finds that much of Mr. Conk's opinion testimony concerning Defendant Solomon improperly invokes legal authorities. Mr. Conk's testimony frequently appears to equate a breach of an ethical duty with a breach of the standard of care that Defendant Solomon owed to ACI. *See, e.g.*, Report of George W. Conk ("Conk Report") 5, ECF No. 145-2 ("Solomon had a duty to inform The Atlanta Channel about any outstanding problems presenting a 'significant risk' to the client[.]" (quoting RPC 1.7(a)(2)); *id*. at 6 ("Solomon was obligated to scrutinize the status of matters within the scope of representation[.]" (citing RPC 1.2)); Rebuttal Report of George W.

Conk ("Conk Rebuttal Report") ¶ 47, ECF No. 145-3 (asserting that "Solomon thereby breached

his duty to keep the client reasonably informed" by failing to comply with RPC 1.4(c)). This is

improper expert testimony. Accordingly, to the extent that Mr. Conk "conflate[s] the D.C. Code

of Professional Responsibility with the standard of care applicable to [Defendant Solomon],"

*Beach TV VI*, 2019 WL 4394837, at *5, his opinion is stricken. Mr. Conk may testify, however,

within the same bounds that the Court drew for the Garvey Defendants: he may speak to "the

ethical duties applicable to [Defendant Solomon], and the breach thereof," but "only to the extent

he explains how those ethical responsibilities framed his determination of what the applicable

standard of care was for an attorney" in Defendant Solomon's circumstances.[4]  *Id.*

---

[4] As mentioned previously, Defendant Solomon's opening brief, which was filed before this Court's *Beach TV VI* opinion, initially incorporated by reference the Garvey Defendants' arguments contending that (1) "Mr. Conk's proffered opinions are legal conclusions that are inadmissible under D.C. law," Garvey Defs.' Mot. Strike 6–8; (2) "Mr. Conk is not familiar with the applicable standard of care," *id.* at 9–12; and (3) Mr. Conk "failed to review the pertinent facts," *id.* at 12–17.  *See* Solomon Mot. 3.  Defendant Solomon's reply brief reiterates only the first contention.  *See* Def. Henry A. Solomon's Reply in Further Supp. of Mot. to Strike the Expert Opinions of George W. Conk ("Solomon Reply") 3, ECF No. 154 (discussing *Beach TV VI*, noting that "[t]he Court struck Conk's testimony to the extent Conk equates the Garvey Defendants' breach of their ethical duties with a breach of the standard of care they owed ACI," and urging the Court to apply the "same ruling . . . to Conk's testimony with regard to Solomon" (internal citation omitted)).

For the foregoing reasons, the Court agrees that its *Beach TV VI* conclusions with respect to Mr. Conk's discussion of ethical duties apply with equal force to Defendant Solomon; thus, it grants in part and denies in part Defendant Solomon's motion to strike Mr. Conk's expert testimony on the grounds that it consists of inadmissible legal conclusions.  In addition, for the reasons that this Court rejected the Garvey Defendants' original contentions that Mr. Conk is not sufficiently familiar with the applicable standard of care, *see Beach TV VI*, 2019 WL 4394837, at *6, and which the Court revisited above in the context of the Garvey Defendants' motion for reconsideration, the Court is unpersuaded by Defendant Solomon's argument that Mr. Conk is not qualified to speak to the relevant standard of care.  Along similar lines, the Court finds the third argument concerning Mr. Conk's familiarity with the facts unavailing and extends its *Beach TV VI* holding on this point to find that Mr. Conk "is sufficiently familiar with the facts of this case to testify as to his expert opinion on the standard of care" applicable to Defendant Solomon. *See Beach TV VI*, 2019 WL 4394837, at *6–7.  Cross-examination at trial is the proper method for Defendant Solomon to contest the credibility and/or reliability of Mr. Conk's testimony.  *Id.* at *7.

2.  Relationship between Mr. Conk's Testimony and December 1999 Conduct

Defendant Solomon argues, additionally, that much of Mr. Conk's testimony has no

bearing on the legal malpractice claim (Count One) against him.  More specifically, he contends

that "the vast majority of the Conk opinions as against Defendant Solomon concern events that

occurred years after the filing of the Statement of Eligibility" and are "being offered on issues

concerning the application of the statute of limitations" that "do not relate to the standard of care

applicable to Defendant Solomon" or the breach thereof.  Solomon Mot. 4.  Defendant Solomon

maintains that these legal ethics opinions are not only irrelevant, but also, if admitted, will be

unfairly prejudicial to him and risk misleading the jury; accordingly, he urges the Court to

exclude Mr. Conk's testimony pursuant to Federal Rules of Evidence 403 and 702.  *Id.* at 5–6.

On Plaintiff's account, this testimony is proper because it directly relates to Defendant

Solomon's statute of limitations defense, which "put his 'transition' into issue."  Pl.'s Opp'n to

Solomon Mot. 5–6, ECF No. 149.  In other words, Plaintiff asserts that this testimony speaks to

the "Disclosure Obligations" that Mr. Conk believes applied "when Solomon sought to turn over

responsibility for the FCC proceeding to Virtue," *id.* at 4, and which "are relevant to the

reasonableness of Plaintiff's belief that Solomon remained its attorney" after this point—a

question that is "dispositive of Solomon's statute of limitations defense," *id*. at 5.  For the

following reasons, Defendant Solomon has the better argument.

The fundamental issue, as Defendant Solomon points out, is that this testimony does not

speak to the sole remaining count against him, which concerns his submission of the statement of

eligibility in 1999—not his retirement a decade later.  Solomon Mot. 4.  This count "alleg[es]

that Solomon 'committed legal malpractice in the representation of ACI by failing to exercise

due and proper care in the preparation and filing of the ACI Statement [of eligibility to apply for

a Class A license].'"  *Id.* (quoting Second Am. Compl. ¶¶ 73–75).  ACI thus faces an uphill

battle from the start to establish why an expert's opinions concerning the standard of care owed

by a retiring attorney in Mr. Solomon's position are relevant to a cause of action involving

Defendant Solomon's entirely separate actions in 1999.  And the Court is not convinced by

Plaintiff's attempts to connect the two by bringing in Defendant Solomon's statute of limitations

defense.

      Understanding why Plaintiff's contentions fall flat requires briefly reviewing what this

Court has already concluded concerning Defendant Solomon's retirement.  In *Beach TV Props.,*

*Inc. v. Solomon* (*Beach TV III*), 306 F. Supp. 3d 70, 82–91 (D.D.C. 2018), the Court spoke to the

parties' statute of limitations dispute.  Therein, the Court found that "there was clearly no

meeting of the minds as to when Mr. Solomon's representation of ACI ended," *id.* at 87, and that

there were "sufficient questions of fact to preclude the Court from granting ACI or Mr. Solomon

summary judgment on the statute of limitations question" *id.* at 89.  In addition, the Court

rejected ACI's arguments that, assuming *arguendo* that Mr. Solomon's representation ended

before the statute of limitations began to run, its claim against Defendant Solomon was not time-

barred.  *Id.* at 89–91.  The Court was, specifically, not persuaded by ACI's assertions that Mr.

Solomon "lulled ACI into thinking that he still represented it, and fraudulently concealed that he

was no longer representing it."  *Id.* at 89.  Finding the record to be "devoid of evidence that Mr.

Solomon took affirmative steps after late 2009 to maintain the appearance that he was still

representing ACI," the Court concluded that the statute of limitations could not be tolled on the

basis of either lulling or fraudulent concealment.  *Id.* at 91.

      These *Beach TV III* conclusions highlight the problems with what Plaintiff now asserts

with respect to Mr. Conk's testimony.  Again, ACI appears to be drawing a connection between

the statute of limitations defense, which Defendant Solomon invokes, Mr. Conk's testimony, and what Mr. Colley believed at the time of Defendant Solomon's retirement.  But ACI never convincingly establishes how, exactly, Mr. Conk's opinions concerning any "Disclosure Obligations" for an attorney in Mr. Solomon's position in 2010, *see* Pl.'s Opp'n to Solomon Mot. 4–5, are helpful to the jury in its determination of when *Mr. Colley* reasonably believed that Mr. Solomon's representation ended (the date on which the statute of limitations began to run).  Notably, in *Beach TV III*, this Court already rejected ACI's lulling and fraudulent concealment contentions.  306 F. Supp. 3d at 91.  Thus, ACI cannot now invoke Mr. Conk's testimony to suggest that any alleged breach of the ethical duties of a lawyer upon retirement amounted to "affirmative steps after late 2009 to maintain the appearance that [Mr. Solomon] was still representing ACI."  *Id*.; *see also* Solomon Mot. 6 (noting *Beach TV III* conclusions on this point).

Moreover, even putting to the side these prior conclusions, Plaintiff cannot seek an inference from Defendant Solomon's "silence in the face of a duty to speak" in the manner that ACI asserts.  Pl.'s Opp'n to Solomon Mot. 6.  Plaintiff's contentions involve the following logical chain: because, as Mr. Conk will testify, (1) the rules of professional conduct (a) apply during the transition of a matter from one attorney to another and (b) require a client's "informed consent to the transition," and (2) "informed consent in this case means [Mr. Solomon] had the affirmative duty to speak up," (3) the jury can "infer" what Mr. Colley "reasonably believed" about any continuing representation from Defendant "Solomon's silence in the face of a duty to speak."  *Id*. (internal quotation marks omitted).  As Defendant Solomon notes, ACI provides no legal authority for the proposition that it can ask the jury to infer what Mr. Colley reasonably believed from Mr. Solomon's silence.  Solomon Reply 4 (citing Graham's Handbook of Federal

Evidence for the principle that inferences from silence, if admissible, generally speak to the state of mind of the silent party—not the other party); *see* Graham, Handbook of Federal Evidence § 801.21 ("If an oral or written statement is communicated by another person to a party in the litigation containing assertions of fact which if untrue the party would under all the circumstances naturally be expected to deny, his failure to speak is receivable against him as an adoptive admission.").  Without any legal support for its argument, Plaintiff's conclusory statements concerning this inference fail to persuade the Court.

In addition, even assuming for the sake of argument that Plaintiff had cited case law on point and that there exists some permissible link between Mr. Conk's opinions about retirement and the statute of limitations issue, there is no factual basis to admit Mr. Conk's opinions.  For example, Mr. Colley does not present testimony that he was aware of Defendant Solomon's duty to speak and, thus, drew conclusions from his silence that Mr. Solomon still represented him. As this Circuit has explained, a witness such as Mr. Conk "who is 'relying solely or primarily on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'"  *Heller v. District of Columbia*, 801 F.3d 264, 272 (D.C. Cir. 2015) (alteration in original) (quoting Advisory Committee notes to Fed. R. Evid. 702); *see also United States ex rel. Morsell v. Symantec Corp.*, No. 12-cv-800, 2020 WL 1508904, at *13 (D.D.C. Mar. 30, 2020) (same).  Here, because the record does not include facts (testimony or otherwise) that indicate what Mr. Colley knew about any ethical duties, or how Mr. Conk's experience is "reliably applied to the[se] facts," Advisory Committee Notes to Fed. R. Evid. 702, there is no basis for Plaintiff to draw the inference that it seeks from Mr. Conk's opinions.  Accordingly, Mr. Conk's opinions about any "silence in the face of a duty to speak" upon retirement, Pl.'s Opp'n to

Solomon Mot. 6, are not admissible.  Such testimony is not helpful to the jury in assessing whether Mr. Colley reasonably believed that Mr. Solomon still represented him after Mr. Solomon's retirement in 2010, which remains a disputed factual issue.[5]

      3.  Admissibility of Mr. Conk's References to Professional Malpractice Insurance

      Next, Defendant Solomon moves to exclude Mr. Conk's discussion of his professional liability insurance.  *See* Solomon Mot. 6–7.  He contends that such evidence is generally inadmissible under Federal Rule of Evidence 411, and that, because it will "clearly be offered to establish negligence," none of Rule 411's stated exceptions apply and the admission of such evidence "would be extremely prejudicial" to him.  *Id*. at 6.  ACI maintains that Mr. Conk's discussion falls squarely within Rule 411's allowance of liability insurance evidence for a purpose other than to show Defendant Solomon's negligence.  Pl.'s Opp'n to Solomon Mot. 7

---

[5] In addition, Mr. Conk's reliance on D.C. Bar Ethics Opinion 294 (2007) would risk confusing the jury and is separately subject to exclusion under Federal Rule of Evidence 403. Solomon Mot. 5 & n.3; *see Edmonds v. United States*, No. 05-cv-0540 , 2009 WL 969938, at *1 (D.D.C. Apr. 7, 2009) ("Expert testimony, like all other evidence, may be excluded under Rule 403 if it would confuse or mislead the trier of fact[.]"); Fed. R. Evid. 403.  As Defendant Solomon argues, *see* Solomon Mot. 5 & n.3, Ethics Opinion 294 is explicitly "limited to the sale of an entire law practice to another lawyer upon the retirement of a lawyer," D.C. Bar Op. 294 (Dec. 1999).  Moreover, it was largely superseded in 2007 by D.C. Rule 1.17.  *See Ethics Opinions Substantively Affected by the Amended Rules (Effective 2/1/07)*, D.C. Bar, Legal Ethics, https://www.dcbar.org/bar-resources/legal-ethics/opinion-table.cfm (last visited Apr. 1, 2020) (stating that Ethics Opinion 254 was "substantively affected" by 2007 amendments, and explaining that D.C. Rule 1.17 along with Comment 10 "governs the sale of a law practice"). Plaintiff does not rebut this point or present any reason that the cited ethics opinion addresses the broader question of a retiring lawyer's duties in arranging for a new lawyer's assumption of responsibility of a matter.  Because the facts presented to the Court do not involve the sale of a law practice, permitting Mr. Conk to rely on this ethics opinion as the basis for his testimony that ACI did not give "informed consent" to "Solomon's retirement and Virtue's assumption of his responsibilities," *see* Conk Report 8; Conk Rebuttal Report ¶ 17, risks confusing the jury and is thus subject to exclusion, *see* Fed. R. Evid. 403.  Because it relates to the standard of care that an attorney owes upon retirement, which is not relevant with respect to the 1999 allegations, this testimony falls within the contours of what the Court has just found to be inadmissible expert testimony; nonetheless, the Court notes these separate grounds for excluding these opinions.

(citing Fed. R. Evid. 411).[6]  For the following reasons, the Court finds that portions of Mr. Conk's testimony on this point are admissible for another purpose, albeit only a very narrow one. *See* Fed. R. Evid. 411.

Federal Rule of Evidence 411 bars the admission of evidence of liability insurance "to prove whether the person acted negligently or otherwise wrongfully," yet permits a court to "admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control."  Fed. R. Evid. 411.  The list of enumerated exceptions in Rule 411 is illustrative, not exclusive, and courts have "held that evidence of liability insurance coverage was admissible as bearing upon a relevant material issue other than agency, employment, ownership, or control."  40 A.L.R. Fed. 541.  "In determining whether to admit or exclude evidence about insurance that is offered for a purpose other than to prove a party acted negligently, the district court must apply the principles of [Rule] 403 to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice."  *Pinkham v. Burgess*, 933 F.2d 1066, 1072 (1st Cir. 1991) (citing 10 J. Moore & H. Bendix, *Moore's Federal Practice* § 411.04 (2d ed. 1988 & Supp. 1990–91)); *see* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of[, *inter alia*,] unfair prejudice[.]").

Applying these principles, evidence of Defendant Solomon's professional malpractice insurance is potentially admissible if, as ACI maintains, it bears on a relevant material issue other than establishing Defendant Solomon's negligence or liability and its probative value is not

---

[6] Plaintiff's brief cites to the Federal Rules of Civil Procedure, not the Federal Rules of Evidence.  *See* Pl.'s Opp'n to Solomon Mot. 7.  Because the quoted language appears in the Federal Rules of Evidence and the surrounding discussion concerns these rules, the Court assumes that Plaintiff intended to reference Federal Rule of Evidence 411.

substantially outweighed by a danger of unfair prejudice.  Plaintiff argues that this testimony

bears on a relevant material issue because it is part of its case against Defendant Virtue—not

Defendant Solomon—insofar as Mr. Conk discusses Mr. Solomon's insurance in order to opine

on Defendant Virtue's "failure to disclose" the  malpractice policy to ACI.  Pl.'s Opp'n to

Solomon Mot. 7.  In other words, ACI avers that these statements are part of Mr. Conk's

admissible testimony "about the Virtue Obligations as evidence of the standard of care for the

Garvey Defendants."  *Id*.

Plaintiff's arguments support the admissibility of this evidence for a narrow purpose.  At

the outset, the Court cannot agree with Defendant Solomon that the evidence is outright barred

by Rule 411.  Defendant Solomon maintains that, because "the standard of care is one of the

elements of a prima facie case of negligence," "it is crystal clear that Conk's testimony as to the

standard of care goes directly towards proving negligence"—in contravention of Rule 411.

Solomon Reply 5.  Defendant Solomon thus asserts, in effect, that any discussion of insurance to

speak to a standard of care for the Garvey Defendants necessarily speaks to his own alleged

negligence, as a matter of law, simply because the standard of care is an element of a negligence

claim and the testifying expert is a liability expert.  *Id*.   But Defendant Solomon's argument that

"the evidence will clearly be offered to establish negligence—since Mr. Conk is Plaintiff's

liability expert," Solomon Mot. 6, conflates the purpose for which the evidence is offered with

the separate question, previously discussed, of whether Mr. Conk's testimony represents

inadmissible legal conclusions concerning liability.  Nor does Defendant Solomon provide any

case law in support of his argument, which the Court finds especially problematic because his

assertions do not acknowledge the fundamental principle that the same evidence can be

admissible for one purpose but not for another.  *See* Fed. R. Evid. 105 (discussing rules that

apply if a court "admits evidence that is admissible against a party or for a purpose—but not against another party or for another purpose").

Here, ACI does indicate a very narrow purpose for which this information might be admissible, without impermissibly speaking to Defendant Solomon's liability or negligence: whether, in Mr. Conk's opinion, Defendant Virtue had an ethical obligation "to tell Plaintiff that Solomon's malpractice carrier might pay for an independent attorney to assume responsibility for" a possible appeal from the FCC's denial of ACI's petition, and how any such duty informs Mr. Conk's evaluation of the relevant standard of care.  Pl.'s Opp'n to Solomon Mot. 7.  Insofar as discussion of Defendant Solomon's insurance coverage is limited to a factual statement (i.e., the policy existed, and it covered X, Y, and Z appeal options), connected to Mr. Conk's opinions concerning Defendant Virtue's ethical duties to speak with her client about its litigation options, it is admissible.  *See, e.g.*, Pl.'s Opp'n to Solomon Mot., Ex. B, Oct. 14, 2014 Virtue Email, ECF No. 149-1 (informing client, in October 2014, of "possible source of assistance with appellate legal fees" for appeal to D.C. Circuit).

But Mr. Conk's testimony on this point is not admissible for any other purpose.  Most significantly, as stated above, Rule 411 bars its admission to establish Defendant Solomon's liability.  Thus, for instance, Mr. Conk may not opine that "Solomon should have disclosed the existence of his policy of lawyer's professional liability insurance" in discussing a possible "malpractice claim against him and his former firm" with his client, ACI.  Conk Rebuttal ¶ 33; *see also, e.g.*, *id.* ¶ 17 ("Solomon should have advised the Atlanta Channel of the possibility of his and Haley Bader's malpractice insurer assuming the costs of the efforts to cure the consequences of Solomon's negligence.").  Such opinions are not only barred by Rule 411 itself, but also risk "confusing the issues," Fed. R. Evid. 403, because there is no claim against

Defendant Solomon for conduct during his representation of ACI.  As discussed above, the only claim involves his alleged negligence for submission of the statement of eligibility in 1999.  This alone provides an ample basis to strike this testimony insofar as Mr. Conk opines on Defendant Solomon's conduct and/or the duties owed by a retiring lawyer.

In addition, even accounting for the importance of the statute of limitations defense with respect to the count against Defendant Solomon, ACI does not establish why this particular testimony is relevant with respect to the legal malpractice claim against Defendant Solomon.  As Defendant Solomon argues, "Conk's expert legal opinions as to the duties of care and rules of professional responsibility that Solomon allegedly breached upon his retirement are not probative of whether or not the Plaintiff or its owners reasonably believed that Solomon continued to represent the Plaintiff after his retirement in 2010."  Solomon Reply 3–4.  The Court finds this point persuasive.  What the parties reasonably believed regarding when the representation ended, as the Court discussed above, *see supra* Part III.B.2, is a question for the trier of fact.  This testimony is not relevant with respect to the charge against Defendant Solomon because it does not have "any tendency to make a fact"—what Mr. Colley believed— "more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  The upshot is that, for all of the foregoing reasons, ACI may not offer Mr. Conk's testimony concerning what Defendant Solomon should have, in Mr. Conk's opinion, disclosed about his insurance policy; rather, this testimony may be offered only for the narrower purpose specified above with respect to Defendant Virtue.  And it is worth repeating, that Mr. Conk's testimony concerning Defendant Virtue must avoid conflating opinions about any breach of ethical duties with a breach of the standard of care that Defendant Virtue owed to ACI.

In reaching this conclusion, the Court bears in mind that Defendant Solomon fails to squarely address why Mr. Conk's testimony about Defendant Solomon's professional liability insurance should be barred for the distinct, limited purpose specified above.[7]  Instead, Defendant Solomon relies on the conclusory assertion that any discussion or mention of this insurance would be "extremely prejudicial" to him.  Solomon Mot. 6.  This bare assertion does not convince the Court that the testimony should be stricken in its entirety.  As Plaintiff notes, because "[j]uries understand lawyers carry malpractice insurance," Pl.'s Opp'n to Solomon Mot. 8, simply mentioning Defendant Solomon's policy does not automatically compel the conclusion that a jury "might as well decide for this plaintiff without respect to the law and facts," Solomon Mot. 6 (quoting 2 *Weinstein's Federal Evidence*, § 411.02 [1] (Purpose of Rule)).  Accordingly, the Court does not find that the probative value of mentioning or discussing Defendant Solomon's liability insurance, in the limited context of considering Defendant Virtue's communications with her client, ACI, concerning the potential for an appeal from the adverse FCC decision, is substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 403.  With these points in mind, the Court is persuaded that allowing a very narrow reference to the insurance accompanied by a limiting instruction—not a wholesale ruling of inadmissibility—

---

[7] In a single sentence in his reply brief, Defendant Solomon indicates that any "opinions . . . directed against the Garvey Defendants . . . affect Solomon as well because the Garvey Defendants have a cross-claim for indemnification against Solomon."  Solomon Reply 6.  Under the established law of this Circuit, courts have "generally held that issues not raised until the reply brief are waived."  *Sitka Sound Seafoods, Inc. v. NLRB*, 206 F.3d 1175, 1181 (D.C. Cir. 2000) (quoting *Board of Regents of Univ. of Wash. v. EPA*, 86 F.3d 1214, 1221 (D.C. Cir. 1996)); *see also Walker v. Pharm. Research & Mfrs. of Am.*, 461 F. Supp. 2d 52, 58 n.9 (D.D.C. 2006) (citing *In re Asemani*, 455 F.3d 296, 300 (D.C. Cir. 2006)).  "This principle holds when a party does not argue a point until its reply brief, even if the party referred to the argument in its opening brief."  *Bloche v. DOD*, 414 F. Supp. 3d 6, 23 n.5 (D.D.C. 2019) (citing *Sitka Sound Seafoods*, 206 F.3d at 1181).  Here, by failing to mention the cross-claim for indemnification until his reply brief, Defendant Solomon waived his argument about the possible connection between Mr. Conk's opinions about the Garvey Defendants and his own liability.

is an appropriate step to cure any possible prejudice, just as Plaintiff argues.  Pl.'s Opp'n to

Solomon Mot. 8 ("Any prejudice that could result from a jury learning Solomon has a

malpractice policy can be ameliorated by the appropriate cautionary instruction." (citing *Morton*

*v. Zidell Explorations, Inc.*, 695 F.2d 347, 351 (9th Cir. 1982)).

Accordingly, Mr. Conk's opinions concerning Defendant Solomon's insurance are

admissible insofar as they are offered in the context of Defendant Virtue's obligations to discuss

ACI's potential appeal options with her client, and, therein, "only to the extent" that Mr. Conk

"explains how . . . [any cited] ethical responsibilities framed [Mr. Conk's] determination of what

the applicable standard of care was for an attorney" in Defendant Virtue's circumstances.  *Beach*

*TV VI*, 2019 WL 4394837, at \*5.  They are inadmissible for any other purpose.[8]  *See Paxson v.*

*Davis*, 65 F.2d 492, 495 (D.C. Cir. 1933) (admitting evidence of liability insurance for purpose

other than to prove liability); *see also Eagle Suspensions, Inc. v. Hellmann Worldwide Logistics,*

*Inc.*, 571 F. App'x 281, 286 (5th Cir. 2014) (approving district court's admission of evidence for

purpose other than to show negligence); *Smith v. Summers*, 334 F. Supp. 3d 339, 345 (D.D.C.

2018) (admitting evidence of insurance to establish contractual relationship between parties).

Defendant Solomon shall provide the Court with an appropriate limiting instruction at the time of

the pretrial submissions.  *See* Fed. R. Evid. 105.

### 4.  Timeliness of Final Conk Report

Finally, Defendant Solomon moves to strike the May 1, 2019 Conk Reply Report ("Conk

Reply"), ECF No. 145-4, as untimely with respect to Plaintiff's liability claims against him.

Solomon Mot. 7.  Noting that this Court's scheduling order concerning ACI and Defendant

---

[8] The Court notes, moreover, that some of the discussion to which Defendant Solomon objects appears in the Conk Reply Report of May 1, 2019, *see* Solomon Mot. 7, which, as the Court discusses next, is inadmissible as to Defendant Solomon because it was not timely filed.

Solomon stated that "rebuttal expert disclosures and reports related to liability shall be served by April 28, 2017," and that these two parties stated in an April 2018 joint status report that they had "completed discovery regarding liability issues *as to each other*," Defendant Solomon argues that the May 2019 expert disclosure represents an untimely-filed further "expert report by Mr. Conk concerning alleged breaches of duties by Defendant Solomon." *Id.* (emphasis in original) (first quoting Sched. Order, ECF No. 58, then quoting Joint Status Report (Apr. 13, 2018), ECF No. 85). Plaintiff presents no argument to rebut this contention directly, instead asserting only that, because Mr. Conk's opinions in the Conk Reply are "repetitive of his opinions" in the two preceding reports, striking the testimony in the Conk Reply as to Defendant Solomon is "pointless." Pl.'s Opp'n to Solomon Mot. 7 n.10.

As this Court explained in *Beach TV VI*, "Federal Rule of Civil Procedure 26 requires parties to disclose the identity [of] their expert witnesses, as well as [to] provide, for each expert, an expert report containing 'a complete statement of all opinions the witness will express and the basis and reasons for them; the facts or data considered by the witness in forming them; [and] any exhibits that will be used to summarize or support [the opinions].'" 2019 WL 4394837, at *2 (third and fourth alterations in original) (first citing Fed. R. Civ. P. 26(a)(2)(A), then quoting Fed. R. Civ. P. 26(a)(2)(B)). Rule 26(a)(2)(D) sets forth the additional requirement that a party disclose such an expert report "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Where a party fails to follow these prescriptions, Federal Rule of Civil Procedure 37 bars that party from using that information, "unless the failure was substantially justified or is harmless." *Beach TV VI*, 2019 WL 4394837, at *2 (quoting Fed. R. Civ. P. 37(c)(1)). "The proponent of the evidence bears the burden of showing that the failure to disclose the evidence was substantially justified or is harmless." *Id.* (internal quotation marks

omitted) (quoting *Moore v. Napolitano*, 926 F. Supp. 2d 8, 25 n.12 (D.D.C. 2013)); *see* Fed. R. Civ. P. 37(c).

In this case, the Conk Reply was filed in 2019, well past the scheduled close of discovery concerning liability between ACI and Defendant Solomon in April 2017, and after the parties stated in April 2018 that discovery on this matter had concluded. Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." ACI never made any request to modify the controlling scheduling order. On these facts, the Court agrees with Defendant Solomon that ACI's submission of the Conk Reply represents an untimely expert report insofar as the opinions presented therein speak to Defendant Solomon's alleged breaches of duty, which goes to the question of liability. Rule 37(c)(1) therefore bars ACI from using this information unless Plaintiff carries its burden to show that the the failure to disclose the evidence in the manner required by Rule 26(a) was substantially justified or is harmless.

ACI makes no such showing here. In propounding this evidence, Plaintiff provides only one conclusory footnote that it would not matter if the Court were to strike this report because the opinions contained in it are "repetitive" of opinions in other reports. Even granting Plaintiff the benefit of the doubt and taking this statement to be ACI's argument that the failure to disclose the evidence is harmless, the Court is unconvinced that this footnote carries Plaintiff's burden to overcome Rule 37(c)'s prohibition on the use of information contained in an untimely-filed expert report. *See Beach TV VI*, 2019 WL 4394837, at *2 (quoting *Norden v. Samper*, 544 F. Supp. 2d 43, 49 (D.D.C. 2008)). An example is illustrative. Consider Defendant Solomon's argument concerning professional liability insurance, wherein he points to distinct statements in the Conk Rebuttal Report and the Conk Reply. *See* Solomon Mot. 7. Although the Court's own

read of these statements indicates that they are, at a high level of generality, asserting the same opinions, the specific manner in which Mr. Conk testifies and explains the basis for his conclusions is distinct in the two documents.  For instance, the Conk Reply discusses his opinions against the background of Mr. Conk's own experience during 27 years in which he "managed [his] own law firm, during which time [he] not only handled [the firm's] own professional liability insurance applications but [also] represented parties regarding such claims" and includes a citation to a typical insurance application.  Conk Reply 8.  The earlier Conk Rebuttal Report makes no mention of Mr. Conk's own experience in discussing why, in his opinion, a duty was breached.  Accordingly, although the opinion in the Conk Reply is, in a sense, a different expression of the same opinion voiced in the Conk Rebuttal Report (namely, the opinion that there was a breach of the standard of care that was due), the Court cannot say that it is entirely "repetitive" of the earlier opinion in the manner that Plaintiff claims.  Thus, because ACI has developed no argument showing that either exception to a Rule 37(c)(1) sanction applies, the Court strikes the testimony in the Conk Reply as to Defendant Solomon to the extent that the Conk Rebuttal Report does not include the essentially same statement and basis of opinion.

Summing up, then, the Court strikes portions of Mr. Conk's expert opinion testimony to the extent it (1) relies on legal authorities in a way that equates a breach of an ethical duty with a breach of the standard of care that Defendant Solomon owed to ACI; (2) addresses Defendant Solomon's alleged duties, or the breach thereof, upon his retirement, to draw conclusions concerning (a) Mr. Colley's state of mind or (b) the running of the statute of limitations; (3) references Defendant Solomon's professional liability insurance for any purpose other than to discuss Mr. Conk's opinions concerning Defendant Virtue's ethical duties to discuss potential

avenues for appeal with her client, ACI; or (4) involves a statement of opinion and basis thereof that appears only in the 2019 Conk Reply.

## IV.  CONCLUSION

For the foregoing reasons, the Garvey Defendants' amended motion for reconsideration is **DENIED**; the Garvey Defendants' motion for reconsideration is **DENIED AS MOOT**; and Defendant Solomon's motion to strike is **GRANTED IN PART** and **DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  April 27, 2020                                   RUDOLPH CONTRERAS
                                                         United States District Judge