# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

THE ATLANTA CHANNEL, INC., :
 :
  Plaintiff, :  Civil Action No.: 15-1823 (RC)
 :
  v. :  Re Document Nos.: 163, 173, 176
 :
HENRY A. SOLOMON, *et al.*, :
 :
  Defendants. :

## MEMORANDUM OPINION

### Denying Defendants Foster Garvey PC and Melodie Virtue's Motion for Summary Judgment on Counts III and IV; Granting Defendants Foster Garvey PC and Melodie Virtue's Motion to Substitute Expert; Granting Plaintiff's Motion for Leave to File Surreply

## I. INTRODUCTION

This case relates to legal malpractice claims stemming from a failure to completely fill out a form sent to the Federal Communications Commission ("FCC" or "Commission") in 1999. Defendant Henry Solomon submitted the incomplete form on behalf of his client, Plaintiff Atlanta Channel, Inc. ("ACI"), to establish eligibility for a special license that would have given ACI preference on the airwaves. ACI brought this malpractice action against Mr. Solomon, who argues that the suit is time barred—this Court has determined that a jury must decide whether his defense applies. Two years after filing suit, ACI added a legal malpractice claim against Defendant Melodie Virtue and her law firm Garvey, Schubert & Barer ("Garvey Firm"), a firm Mr. Solomon moved to in the early 2000s. ACI claims that Ms. Virtue, who, in 2012, took over ACI's attempt to remedy the effects of the incomplete submission, failed to fulfill several "obligations" she owed to ACI with respect to the potential malpractice claim against her

colleague Mr. Solomon.  Broadly, ACI argues that Ms. Virtue should have alerted ACI that Mr. Solomon had committed malpractice by failing to complete the form, that the statute of limitations was running on that claim, that the Garvey Firm had a potential conflict of interest, and that ACI should consult with independent counsel.  The claims against Ms. Virtue and the Garvey Firm (the "Garvey Defendants" or "Defendants") are contingent on the jury finding that ACI's claim against Mr. Solomon is time-barred.

The Garvey Defendants have moved for summary judgment.  *See* Defs.' Mot. Summ. J. ("Defs.' Mot."), ECF No. 173; Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem."), ECF No. 173-1.  They argue that, as a matter of law, they owed no duty to fulfill the "obligations" ACI claims were required.  They claim that Ms. Virtue's legal duty, who was hired to represent ACI before the FCC, did not extend to notifying ACI of a potential malpractice claim, the statute of limitations on that claim, the conflict of interest, and the need to consult with independent counsel.  They insist that no reasonable jury could find that the harm stemming from a failure to fulfill these obligations was reasonably foreseeable.  They further argue that, even if she did owe such a duty, she discharged that duty through an email she sent in November 2012.  They also claim that if the jury does find the suit against Mr. Solomon is time-barred, such a finding is incompatible with a finding against the Garvey Defendants.  ACI opposes and argues that the malpractice claims against the Garvey Defendants must be decided by a jury with the aid of expert testimony regarding the applicable standard of care.  *See* Pl.'s Opp'n Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 178.  Also before the Court is a motion to substitute an expert witness who became unexpectedly absent after the close of discovery.  *See* Defs.' Mot. Substitute Expert, ECF No. 163.  The Garvey Defendants ask that the Court allow another expert to take his place and offer testimony with respect to liability.

The Court will not declare as a matter of law that Ms. Virtue did not owe her client, ACI, a duty resembling the "obligations" ACI claims were required.  For this reason, and for the reasons stated below, the Court denies Defendants' motion for summary judgment.  Because Defendants would be prejudiced by the absence of an expert witness at trial, the Court grants Defendants' motion to substitute their expert witness.

## II.  BACKGROUND[1]

ACI filed this suit to recover damages from the erroneous filing of an incomplete form with the FCC on December 29, 1999.  *See* 2d Am. Compl. ¶¶ 26–27, ECF No. 69; SOFNID ¶ 6. ACI alleges that Mr. Solomon was responsible for filing the Statement of Eligibly form for a Class A license for a Low Power Television Station ("LPTV").  2d Am. Compl. ¶¶ 28–29.  But the form was submitted with several questions left blank, and on June 9, 2000, the FCC's Mass Media Bureau rejected the statement.  *Id.* ¶¶ 28–29, 32.  ACI argues that the failure to obtain the Class A license has led to the station being valued for at least $25,000,000 less than it would have been if it had obtained the license.  *Id.* ¶ 70.

---

[1] Because this Court has addressed this suit in many prior opinions—under a different case caption that reflects a prior plaintiff—it assumes familiarity with its previous rulings and limits its discussion of the factual and procedural history to the points that are most relevant to the pending motions.  *See, e.g.*, *Beach TV Props., Inc. v. Solomon (Beach TV IV)*, 324 F. Supp. 3d 115, 118 (D.D.C. 2018); *Beach TV Props., Inc. v. Solomon (Beach TV I)*, No. 15-cv-1823, 2016 WL 6068806, at *1–4 (D.D.C. Oct. 14, 2016).  The Court accepts as admitted, for purpose of deciding this motion, the Statement of Facts Not in Dispute filed by the Garvey Defendants alongside their motion for summary judgment.  *See* Statement of Facts Not in Dispute ("SOFNID"), ECF No. 173-2.  As explained in the Garvey Defendants' Reply, ACI did not file a statement of disputed facts in opposition to their motion, and, under the LCvR 7(h)(1), the Court may assume the facts identified by the moving party are admitted where they are not controverted by the opposing party.  *See* Defs.' Reply at 3–4, ECF No. 180.  The Court also accepts, however, the additional facts raised by ACI, which include reference to the appropriate standard of care and the expert testimony establishing that standard.  *See* Pl.'s Statement of Facts, ECF No. 178-1.

After the dismissal of the initial statement, Mr. Solomon, who was then a lawyer with the law firm Haley, Bader & Potts, filed a Petition for Reconsideration of the dismissal on June 22, 2000. SOFNID ¶¶ 7–9. The petition was denied on November 20, 2000 and Mr. Solomon filed an Application for Review with the FCC on December 20, 2000. *Id.* ¶¶ 9–11. That application remained pending until November 9, 2012—more than a decade after it had been submitted. *Id.*

For much of that time, Mr. Solomon continued working as a lawyer for ACI, but he ceased working full time as an attorney sometime in 2010. *Id.* ¶ 14. By the time he stopped working full time, Mr. Solomon had changed firms; in fact, he started working at the Garvey Firm in 2000. 2d Am. Compl. ¶ 11. The contours of Mr. Solomon's representation of ACI— when it ended, what he communicated to ACI about it ending, what ACI reasonably believed about his employment status—are at the heart of ACI's dispute with Mr. Solomon. This is because, as the Court has ruled, the resolution of the factual dispute with respect to Mr. Solomon's employment status, and what ACI reasonably believed about it, will determine whether the claims against him are time barred under the continuous representation doctrine. *See Beach TV Props., Inc. v. Solomon* (*Beach TV III*), 306 F. Supp. 3d 70, 89 (D.D.C. 2018) (explaining factual issues under continuous representation doctrine that must be resolved by fact finder).

Ms. Virtue's first involvement in representing ACI in connection with its effort to obtain a Class A license was on or about March 1, 2012. SOFNID ¶ 25. ACI asked Ms. Virtue to check with the FCC about the status of the Application for Review and told her that Mr. Solomon had submitted the Statement of Eligibility in 1999 with unchecked boxes. *Id.* ¶ 26. Once she took over the matter, Ms. Virtue learned that the FCC had lost the file, so she gathered the necessary documents to send to the Commission. *Id.* ¶¶ 27–28. The FCC finally ruled on the

4

Application for Review on November 9, 2012, when it affirmed the dismissal of the Statement of Eligibility. *Id.* ¶ 11; 2d Am. Compl. ¶ 37.

After Ms. Virtue informed ACI of the decision, Ms. Tonita Davis, one of ACI's owners, emailed Ms. Virtue and stated: "Well, we do have to remember that we've done nothing wrong (except our law firm made a clerical error), and we've lived up to every possible expectation of what a low power station could ideally do as to the public." SOFNID ¶ 46. In response, Ms. Virtue sent ACI an email on November 21, 2012. Ms. Virtue stated in the email that "[i]f a client expresses the view that its law firm has made an error, the possibility arises that the judgment of lawyers at that firm may thereafter be materially limited or affected by a desire to protect its prior work from blame." *Id.* ¶ 49. She said that ACI "should evaluate the potential for a conflict of interest if [the Garvey Firm] prepares the petition for Reconsideration." *Id.* She further stated that ACI "should consider consulting independent counsel in making [ACI's] decision," but noted that she believed "an independent lawyer would approach this issue in the same way" and that the firm's "commitment and advocacy . . . would not be adversely affected by the firm's own interests." *Id.*

ACI did consult with independent counsel and decided to retain Ms. Virtue and the Garvey Firm to file a Petition for Reconsideration before the FCC. *Id.* ¶ 54. On October 7, 2014, the FCC denied the Petition for Reconsideration. *Id.* ¶ 55. Ms. Virtue and the Garvey Firm did not continue to work for ACI on the Class A license thereafter. *Id.* On October 26, 2015, ACI filed this lawsuit. *Id.* ¶ 58.

The claims against the Garvey Defendants, added by ACI in its Second Amended Complaint, are contingent on a jury finding that the malpractice claim against Mr. Solomon is

time barred.  The remaining claims against Defendants,[2] Counts Three and Four, allege legal malpractice by Ms. Virtue and the Garvey Firm ("by operation of the doctrine of respondeat superior") for not fulfilling the so-called "Virtue Obligations."[3]  2d Am. Compl. ¶¶ 59–61, 86–87.  The Virtue Obligations are described as follows: "Prior to assuming responsibility for or participating in [the matter], Ms. Virtue had an obligation to tell ACI that:" (1) "Mr. Solomon committed malpractice by preparing and filing the defective ACI Statement"; (2) "Mr. Solomon's withdrawal from the full-time practice of law could affect the running of the statute of limitations on ACI's malpractice claims against Mr. Solomon"; (3) "ACI and Mr. Solomon were potential adversaries in a legal malpractice action"; (4) "Ms. Virtue had a conflict of interest between her representation of ACI and her professional and personal relationship with Mr. Solomon"; (5) "[t]he Garvey Firm had a conflict of interest between its representation of ACI and its relationship with Mr. Solomon"; and (6) "ACI should immediately retain separate and independent counsel to advise ACI about": (a) "Mr. Solomon's preparation and filing the defective ACI Statement"; (b) "Mr. Solomon's withdrawal from the full time practice of law"; and (c) "[t]he FCC Proceeding."  *Id.* ¶ 59.  In failing to perform the Virtue Obligations, ACI argues that Ms. Virtue "failed to obtain ACI's fully informed consent to her assumption of responsibility for and working on the FCC Proceeding and Appeal."  *Id.* ¶ 62.

Discovery having now concluded with respect to Counts Three and Four, the Garvey Defendants' motion for summary judgment is ripe for decision.  Because the Court does not grant summary judgment in their favor, Defendants' motion to substitute their expert witness on

---

[2] The Court previously dismissed Count Two, and the portion of Count Four that pertains to Count Two, of the amended complaint in a memorandum opinion dated August 29, 2018.  *See Beach TV IV*, 324 F. Supp. 3d at 127.

[3] In adopting this label, the Court takes no position on whether the listed obligations are in fact required by the appropriate standard of care.

liability is decided as well.  After an opportunity for a short period of discovery related to the substitute expert, Counts Three and Four will also be ready to proceed to trial.

## III.  MOTION FOR SUMMARY JUDGMENT

### A.  Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial.  *See Celotex*, 477 U.S. at 324.  In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.  Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

**B.  Analysis**

The Garvey Defendants insist that they raise purely legal issues that can be answered without reference to expert opinion, which is what normally is required in legal malpractice cases.  *See* Defs.' Mem. at 43–45.  The crux of their argument is that, given the undisputed facts they highlight, Ms. Virtue owed no legal duty resembling the Virtue Obligations.  They argue that the Virtue Obligations fall so far outside the scope of her representation of ACI that the Court should not let a fact finder weigh in on the matter.  Defendants offer four primary reasons they believe the Court should grant summary judgment in their favor: (1) under the circumstances, Ms. Virtue had no legal duty to provide the disclosures and advice identified as the Virtue Obligations, (2) no reasonable juror could conclude that a need to perform the Virtue Obligations was reasonably foreseeable to Ms. Virtue at the time, (3) Ms. Virtue discharged any legal duties she owed ACI in her November 21, 2012 email, and (4) a jury finding that triggers the contingent claim against the Garvey Defendants would be incompatible with and necessarily defeat the claim against them.  Defs.' Mem. at 1.  The Court analyzes each stated reason in turn.

1.  Legal Duty

Defendants first argue that Ms. Virtue owed no legal duty, the first prong in any negligence claim, to fulfill the Virtue Obligations.  Defs.' Mem. at 17–27.  They offer a slew of reasons to support this claim, but the general thrust is that the Virtue Obligations were beyond the scope of Ms. Virtue's duties as a lawyer hired to do FCC regulatory work.  *See* Defs.' Mem. at 19.  They state that ACI never "gave [Ms. Virtue] any reason to believe that they were relying on her to provide legal advice with respect to any other area."  *Id.*  They argue that if any lawyer had a duty to fulfill the obligations, it was Mr. Solomon, *id.* at 20, and that her representation of ACI alongside Mr. Solomon should not give rise to a duty to correct any omissions on his part.

Furthermore, they state that ACI had prior knowledge of the factual basis for the Virtue

Obligations, *id.* at 22, that ACI never explained their confusion about Mr. Solomon's retirement

status, *id.* at 24, and that Ms. Virtue should not have been required to give legal advice about an

issue about which she allegedly had a conflict of interest, *id.* at 26.  ACI responds that the

"Garvey Defendants try to blur the distinction between 'duty' and 'standard of care' in their

quest to have the Court rule on the Motion as a matter of law rather than deny it because the facts

are in dispute."  Pl.'s Opp'n at 18.  ACI argues, citing this Court's previous opinion, that there is

a "basic duty of all attorneys to recognize a conflict of interest . . . tell the client about it and

recommend getting independent advice before going any further."  *Id.* at 19.

As the Garvey Defendants correctly note, lawyers always owe a duty to their clients.

Defs.' Mem. at 17.  Under D.C. law, a lawyer owes a duty to "work in [the client's] interests

using a reasonable degree of knowledge, care, and skill."  *Biomet Inc. v. Finnegan Henderson

LLP*, 967 A.2d 662, 665 (D.C. 2009).  This is often described as a duty to "exercise that degree

of reasonable care and skill expected of lawyers acting under similar circumstances."  *Id.*

(quoting *Morrison v. MacNamara*, 407 A.2d 555, 561 (D.C. 1979)).  Ms. Virtue clearly owed a

duty to ACI because she represented ACI as its lawyer.  Recognizing this, Defendants argue the

issue is whether the Virtue Obligations fall within the scope of her legal duty.  In support of this

argument about the scope of the duty, Defendants cite *Maillard v. Dowdell*, 528 So. 2d 512 (Fla.

Dist. Ct. App. 1988)[4] and a treatise on legal malpractice.  Defs.' Mem. at 18–19.  Neither

authority entitles Defendants to summary judgment on this issue.

---

[4] Defendants actually cite this case *Mallard v. Dowdell*, 528 F.2d 512 (Fla. App. 1999). Defs.' Mem. at 18.  The cited page of the federal reporter is a Fifth Circuit case about employment discrimination.  *See Wade v. Mississippi Coop. Extension Serv.*, 528 F.2d 508 (5th Cir. 1976).  The Court searched for the quoted language and discovered it in the Florida case noted here, published more than ten years before Defendants' brief indicates.

In *Maillard*, the plaintiffs brought a legal malpractice claim against the attorney who represented them in purchasing a condominium unit. 528 So. 2d at 513. The seller of the unit allegedly told plaintiffs and the attorney that the condominium association had been involved in litigation with the building developers to "recover the costs of repairing minor cosmetic defects." *Id.* at 514. In reality, the lawsuit involved claims of serious structural problems with the building. *Id.* The plaintiffs alleged that the attorney assisting with the purchase was negligent for failing to investigate the lawsuit and potential structural defects. *Id.* In finding for the attorney, the court stated that "it is not sufficient to merely assert an attorney-client relationship existed between the parties; it is essential to allege the relationship existed with respect to the acts or omissions upon which the malpractice claim is based." *Id.* The court found the attorney, as one representing a buyer in a real estate transaction, only had a duty to investigate the title and handle the closing. *Id.* at 515.

Defendants also cite Mallen and Smith, a treatise on legal malpractice. The quoted language notes that in a legal malpractice action, the extent of a legal duty is usually the primary issue and that liability "depends on whether a duty was breached reasonably within the scope of the employment" and that "[t]he extent of the duty derives from the circumstances, being the subject matter of the retention and the parties' agreement." Defs' Mem. at 19 (quoting Ronald E. Mallen & Jeffery M. Smith, *Legal Malpractice*, § 8.5 (2019 ed.)). Relying on the treatise, Defendants state that ancillary duties "outside the scope of a retainer agreement" require showing "that 'the remedy or liability should have been apparent to the ordinary lawyer under the circumstances.'" *Id.* (quoting Mallen & Smith, *supra*, § 8.8).

The cited sources do not compel a finding for the Garvey Defendants. *Maillard* does not support Defendants' position because Ms. Virtue's relationship with ACI did exist with respect

to the application for Class A license, which is at the center of the malpractice claim. The Virtue Obligations focus on the mistakes made in the application for the Class A license and the consequences flowing from those mistakes—the same mistakes Ms. Virtue was employed to remedy. Similarly, the quoted treatise does not support Defendants' position. Problematically, Defendants offer no evidence of the scope of Ms. Virtue's employment beyond a citation to the complaint, *id.* at 18, and Ms. Virtue's statement that ACI never "gave her any reason to believe that they were relying on her to provide legal advice with respect to any other area," *id.* at 19. Even if Defendants could point to a retainer agreement limiting the scope of the representation, which they have not, the Court could not say as a matter of law that the liability at issue here was not "apparent to the ordinary lawyer under the circumstances." *Id.* (quoting Mallen & Smith, *supra*, § 8.8).

ACI points to cases that support the imposition of duties adjacent to an attorney's primary matter. *Janik v. Rudy, Exelrod & Zieff*, a California case, dealt with a malpractice claim brought against class action attorneys for failing to amend the complaint and add additional causes of action that would have resulted in higher damages. 14 Cal. Rptr. 3d 751, 754–55 (Cal. Ct. App. 2004). The court stated that "an attorney who undertakes one matter on behalf of a client owes that client the duty to at least consider and advise the client if there are apparent related matters that the client is overlooking and that should be pursued to avoid prejudicing the client's interest." *Id.* at 758. Even when duties are expressly limited by retainer agreement "the attorney may still have a duty to alert the client to legal problems which are reasonably apparent, even though they fall outside the scope of the retention." *Id.* (citations omitted). In another case cited by ACI, the New York court found that in order for an attorney "to limit the scope of [his or her] representation, [he or she] had a duty to ensure that [the client] understood the limits of [the]

representation." *Genesis Merch. Partners, L.P. v. Gilbride, Tusa, Last & Spellane, LLC*, 69

N.Y.S.3d 30, 33 (N.Y. App. Div. 2018).  Defendants attempt to distinguish these cases on the

facts, *see* Defs.' Reply at 10, but do not address the broader point that lawyers can, and often do,

owe duties adjacent to their primary duties.  *Cf. Zauderer v. Office of Disciplinary Counsel of*

*Supreme Court of Ohio*, 471 U.S. 626, 676 (1985) (O'Connor, J., concurring in part, dissenting

in part, and concurring in the judgement in part) (emphasis in original) ("The States

understandably require more of attorneys than of others engaged in commerce.  Lawyers are

*professionals*, and as such they have greater obligations.").

The Court will not declare as a matter of law that Ms. Virtue's duty as a lawyer did not

extend to disclosing a potential malpractice claim and conflict of interest regarding the matter on

which she was employed to work.  The Virtue Obligations are not so removed from her duties as

an FCC lawyer that the Court can say her scope of employment and duties did not cover them.  It

is not as if ACI claims Ms. Virtue had a duty to inform them about legal problems related to their

real estate practices.  The Virtue Obligations relate to the submission of the original application

for Class A status—the status Defendants agree Ms. Virtue was employed to secure.  The

malpractice claim, statute of limitations issue, and conflict of interest relate directly to that

original application.  Whether Ms. Virtue should be charged with raising these issues does not

relate to whether there is a duty as a matter of law, but rather whether her actions conformed

with the appropriate standard of care, which is a question for the jury.[5]  *See Beach TV Props.,*

---

[5] Defendants also claim there is no legal duty because: (1) the obligations belonged to
Mr. Solomon instead of Ms. Virtue, (2) ACI already knew about the underlying facts, (3) ACI
did not ask Ms. Virtue about the matter, and (4) Ms. Virtue cannot have a legal duty to provide
advice when she is potentially conflicted.  *See* Defs.' Mem. at 19–26.  None of these arguments
compel this Court to rule in Defendants' favor.  First, if Mr. Solomon owed ACI duties, that does
not erase the fact that Ms. Virtue represented ACI as well.  Second, even if ACI already knew all
the underlying facts relevant to the Virtue Obligations, a lawyer can make inferences from facts

*Inc. v. Solomon*, 254 F. Supp. 3d 118, 134 (D.D.C. 2017) ("Whether a reasonable attorney would have been aware of the doctrine of continuing representation and what specific conduct was required by the standard of care . . . are questions of fact that may be resolved with the aid of expert testimony.") (internal citations omitted).

### 2.   Reasonable Foreseeability

The Garvey Defendants next argue that "as a matter of law, no reasonable trier of fact could conclude that a need to perform the 'Virtue Obligations' was reasonably foreseeable to Ms. Virtue under the circumstances at the time." Defs.' Mem. at 1.  They argue, in essence, that a jury would need to find that Ms. Virtue should have anticipated the contours of this precise case, including the application of the continuous representation doctrine, in order to rule in ACI's favor on proximate cause. *See* Defs.' Mem. at 27–37.  Framed in this way, they claim that "only one conclusion can reasonably be drawn from [the] facts," *id.* at 27 (citing *Edwards v. Consolidated Rail Corp.*, 567 F. Supp. 1087 (D.D.C. 1983), *aff'd*, 733 F.2d 966 (D.C. Cir. 1984)), and therefore the Court should rule that reasonable foreseeability cannot be established as a matter of law.  ACI frames the issue differently, stating that "reasonable foreseeability in the proximate cause context means 'a defendant may not be held liable for harm actually caused where the chain of events leading to the injury appears highly extraordinary in retrospect.'"  Pl.'s Opp'n at 24 (citing *District of Columbia v. Carlson*, 793 A.2d 1285, 1290 (D.C. 2002) (quoting

---

that may not be readily apparent to a client.  *See Janik*, 14 Cal. Rptr. 3d at 758–59 (explaining that a layperson may fail to ask relevant questions about a legal problem due to lack of understanding).  Third, just because ACI did not ask about Mr. Solomon's retirement status or a potential malpractice claim does not mean that Ms. Virtue, as their lawyer, did not have a duty to talk about it.  And finally, that Ms. Virtue was a conflicted lawyer with respect to the malpractice claim does not, as a matter of law, wipe out her responsibility to say *something* to her client about the potential problem.  Her representation of ACI came with duties, and, as already explained, the Court cannot say those duties did not encompass the Virtue Obligations as a matter of law.

*Morgan v. District of Columbia*, 468 A.2d 1306, 1318 (D.C. 1983) (en banc))).  "The correct question," ACI argues, "is whether—as of March 1, 2012—the expiration of the [statute of limitations] due to Ms. Virtue's failure to fulfill the Virtue Obligations was such an extraordinary and fortuitous event that the Court and not the jury should decide" the issue.  *Id.* at 25.  The expiration of the statute of limitations on the claim against Mr. Solomon, they state, is not so extraordinary as to preclude submission to the jury.

The Court agrees with ACI's framing of the issue and notes that the Garvey Defendants' framing does not conform to D.C. law on negligence.  Reasonable foreseeability relates to the likelihood of harm, not the "need to perform."  *See Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1098 (D.C. 1994) ("[W]e must ask whether the injury to that individual [to whom a duty was owed] was reasonably foreseeable to the defendant.") (internal quotations omitted).  When the harm is not reasonably foreseeable given the circumstances, Court's will not impose a duty as a matter of law.  *See Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 n.1 (D.C. 2011) (en banc) ("[T]he problem [of foreseeability] is one of determining whether the duty imposed on the actor was designed to protect the one harmed from the risk of harm from the hazard in question.") (internal quotations omitted).  Reasonable foreseeability also relates to proximate cause; if the harm is not foreseeable, if it is so attenuated from the allegedly harmful action or inaction that a reasonable person could not foresee it, the Court can rule as a matter of law that proximate cause cannot be established.  *See Carlson*, 793 A.2d at 1290 (internal quotations omitted) ("[A] defendant may not be held liable . . . where the chain of events leading to injury appears highly extraordinary in retrospect.").  So the issue in this case is not whether Ms. Virtue's *need to perform* the Virtue Obligations was reasonably foreseeable; it is whether the

14

*harm* (the loss of the claim against Mr. Solomon) was reasonably foreseeable given the circumstances and Ms. Virtue's action or inaction.

Applying D.C. law, the D.C. Circuit recently considered whether the loss of a legal malpractice claim under the statute of limitations was reasonably foreseeable based on the advice provided by one of the attorney defendants. *See Seed Co. Ltd. v. Westerman, Hattori, Daniels & Adrian, LLP*, 961 F.3d 1190 (D.C. Cir. 2020). There, the defendant attorney provided legal advice regarding a potential malpractice claim against the plaintiff's former lawyer. *Id.* at 1192. The plaintiff argued that, based on the advice, it neglected to bring a legal malpractice against the defendant attorney (the same attorney who provided the advice) and consequently lost the claim under the statute of limitations. *See id.* at 1193. The court held that no reasonable jury could find that the loss of a claim against the defendant attorney was a foreseeable result of the advice about the potential claim against the other former lawyer. *Id.* at 1197. Here, the facts are different. ACI claims that Ms. Virtue's failure to fulfill the Virtue Obligations, which relate to the potential claim against Mr. Solomon, resulted in the loss of its claim against Mr. Solomon—there is no additional party like there was in *Seed Co.* A reasonable jury could find that the loss of the claim against Mr. Solomon was reasonably foreseeable based on Ms. Virtue's failure to discuss the issue after she took over the matter in March 2012. A reasonable jury could find that Ms. Virtue knew, or should have known, about the potential malpractice claim against Mr. Solomon (an error that was apparent), that the statute of limitations would be running (as it does in all cases), about the conflict of interest (she was partners with Mr. Solomon), and about the need to consult with independent counsel.

Questions of proximate cause are nearly always left to the jury to decide; it is appropriate to do the same here. "[C]ases are rare where issues of negligence and proximate cause can be

taken from the jury and decided by the court as a matter of law." *District of Columbia v. Harris*, 770 A.2d 82, 89 (D.C. 2001). Under D.C. law, the "'defendant need not have foreseen the precise injury, nor should [he] have had notice of the particular method in which a harm would occur, if the possibility of harm was clear to the ordinary prudent eye.'" *Id.* at 92 (quoting *Spar v. Obwoya*, 369 A.2d 173, 177 (D.C. 1977)). Whether the harm here was reasonably foreseeable is a question of fact for the jury; the Court will not as a matter of law limit Ms. Virtue's duty or rule on proximate cause based on reasonable foreseeability.

### 3.  Discharge of Duties

The Garvey Defendants also argue that, to the extent Ms. Virtue had duties, "no reasonable trier of fact could conclude that she failed to discharge them by her email of November 21, 2012, advising ACI to consult with independent counsel regarding any potential conflict of interest." Defs.' Mem. at 1. ACI states "the Virtue November Email did not fulfill all the other Virtue Obligations, including advising ACI that Mr. Solomon had committed legal malpractice, the [statute of limitations] may be running and ACI's consultation with independent counsel should include those specific issues." Pl.'s Opp'n 25–26. Furthermore, they argue that the "jury can also reasonably find that Ms. Virtue knew in March 2012" about the problems at the heart of the Virtue Obligations. *Id.* at 27.

Whether the November 2012 email discharged Ms. Virtue's duties is a question of fact for the jury. While it clearly will be relevant, the Court cannot say that it fulfilled her duty as a matter of law. At trial, the parties will present expert testimony for the trier of fact on the proper standard of care, what that standard required of Ms. Virtue, when it required action, and whether Ms. Virtue's actions met that standard. *See Crawford v. Katz*, 32 A.3d 418, 427 (D.C. 2011)

(noting that expert testimony is generally required to establish the standard of care in legal malpractice actions).

### 4.   Incompatible Jury Findings

The Garvey Defendants also argue a jury finding against ACI on the statute of limitations issue for its claim against Mr. Solomon, "would be incompatible with its ability to prevail against Ms. Virtue." Defs.' Mem. at 1.  This argument is based on the premise that in order for the jury to find against ACI on the continuous representation doctrine, it would need to conclude either "(a) that ACI's principals did not truly believe that Mr. Solomon continued to serve as ACI's counsel, but falsely claimed to; or (b) ACI's principals genuinely had such a belief, but their belief was not objectively reasonable." *Id.* at 41.  The Garvey Defendants argue either conclusion defeats the malpractice claim against them. *Id.* at 41–42.  According to the Garvey Defendants, conclusion (a) defeats the claim because a finding of fraud or litigating the claim in bad faith should result in dismissal. *See id.* at 42 (citing *Breezevale Ltd. v. Dickinson*, 879 A.2d 957 (D.C. 2005)).  They argue conclusion (b) defeats the claim because it would constitute a finding of negligence on the part of ACI, and D.C. operates under a rule of contributory negligence, which operates as a complete bar to negligence claims. *Id.* at 42–43.  ACI argues the Garvey Defendants would need to prove fraud by clear and convincing evidence and that, under the definition of contributory negligence, a jury finding against ACI on the continuous representation doctrine would not be dispositive. Pl.'s Opp'n at 28–29.  ACI additionally argues that because the Garvey Defendants have not offered expert testimony to establish the appropriate standard of care with respect to ACI, the Court should dismiss the Garvey Defendants' affirmative defense of contributory negligence. *Id.* at 30–32.

The Court generally agrees with ACI.  First, a finding of fraud cannot be inferred from a

jury finding against ACI on the continuous representation issue.  The Court agrees with ACI that fraud must be proved through clear and convincing evidence, and that the Garvey Defendants have not alleged fraud with particularity, as required by Fed. R. Civ. P. 9(b).  On the contributory negligence point, the Court notes that if ACI's belief that Mr. Solomon continued to represent the company was unreasonable, it does not necessarily follow that ACI negligently allowed the statute of limitations to lapse.  The question of whether ACI negligently allowed the statute of limitations to lapse on the claim against Mr. Solomon is not completely answered if ACI unreasonably believed Mr. Solomon continued to represent the company as its attorney—though it may be an important factor for the jury to consider.

As such, the Court will not dismiss the defense of contributory negligence as requested by ACI.  ACI claims that the Garvey Defendants must put forth expert testimony to establish the standard of care applicable to ACI, because whether to bring the suit against Mr. Solomon is "beyond the ken of the average lay person."  Pl.'s Opp'n at 31 (citing *Briggs v. Washington Metro. Area Transit*, 481 F.3d 839, 845 (D.C. Cir. 2007)).  ACI makes this argument based in part on the disagreements the parties have had regarding the applicable standard of care that should apply to Ms. Virtue.  *Id.* at 30–31.  But the standard of care an attorney owes a client— which is the subject of great disagreement between the parties' experts—is not the same as the standard of care applicable to a member of the public or a business.  That standard is the default standard applicable in all negligence cases—a reasonable person given the circumstances.  *Tolu v. Ayodeji*, 945 A.2d 596, 603 (D.C. 2008) (quoting *Morrison*, 407 A.2d at 560) ("In negligence actions the standard of care . . . is often stated as 'that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances.'").  The jury will be allowed to consider whether ACI acted reasonably as to the claim against Mr. Solomon and

whether the company's actions constitute contributory negligence that would bar relief.

### IV.  MOTION TO SUBSTITUTE EXPERT

Having concluded that the Garvey Defendants' motion for summary judgment should be denied, the Court turns to their motion to substitute their expert witness.

The Garvey Defendants appointed their original expert on liability issues, Myles Lynk, on April 10, 2019.  Defs.' Mot. Substitute Expert at 4.  Defendants explain that at the time of his appointment, Mr. Lynk was a full-time law professor.  *Id.* at 5.  In August 2019, Mr. Lynk left his professorship to take a position at the Office of Disciplinary Counsel for the District of Columbia.  *Id.* at 5–6.  When the Garvey Defendants informed the Court that Mr. Lynk may not be available to testify as their expert because of the job change, the Court required the Garvey Defendants to indicate definitively whether he would remain their expert.  *See* Min. Order Sept. 23, 2019.  On September 26, 2019, the Garvey Defendants learned that Mr. Lynk would not proceed as their expert because of his job change.  Defs.' Mot. Substitute Expert at 7. Defendants argue that good cause exists to allow a substitute expert, now identified as Lucian T. Pera, to take Mr. Lynk's place.  *See id.* at 8–11; Defs.' Rule 26(a)(2) Statement, ECF No. 171. Mr. Pera has adopted Mr. Lynk's report.  Expert Report Lucian T. Pera ¶ 10, ECF No. 171-1. ACI argues it will be prejudiced by the substitution because of the extra costs and delay associated with a new expert.  *See* Pl.'s Opp'n Mot. Substitute Expert, ECF No. 166.  ACI also submitted a motion for leave to file a surreply after Defendants submitted Mr. Pera's expert report, which is accepted as filed.  *See* Pl.'s Mot. for Leave to File Surreply, ECF No. 176; Proposed Surreply Mot. Substitute Expert, ECF No. 176-1.  ACI states that Mr. Pera raises new issues that will force ACI to incur expenses and delay.  Proposed Surreply Mot. Substitute Expert at 2–3.

The Court finds good cause exists to allow for the substitution.  Given that this case will turn on the appropriate standard of care, the Garvey Defendants would be substantially prejudiced at trial without expert testimony regarding liability.  The prejudice faced by the Garvey Defendants without an expert outweighs the potential prejudice faced by ACI due to extra discovery costs.  The Court finds that nothing suggests that the Garvey Defendants could have foreseen Mr. Lynk's eventual inability to testify and that they have approached this issue with good faith and diligence.  And while the substitution may create some additional work for ACI, the Court notes that the report of Mr. Lynk and the report of Mr. Pera are largely the same, so the prejudice to ACI is limited.  However, in the interest of fairness, the Court will allow ACI an opportunity to both depose Mr. Pera and to submit a rebuttal expert report in response to Mr. Pera's within thirty days of this order.[6]

## V.  CONCLUSION

For the foregoing reasons, the Garvey Defendants' motion for summary judgment (ECF No. 173) is **DENIED**; the Garvey Defendants' motion to substitute expert (ECF No. 163) is **GRANTED**; and ACI's motion for leave to file surreply (ECF No. 176) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 23, 2020                                         RUDOLPH CONTRERAS
                                                             United States District Judge

---

[6] ACI asks that the Garvey Defendants pay the costs associated with any additional discovery associated with Mr. Pera's expert report.  Pl.'s Opp'n Mot. Substitute Expert at 3.  The Court is not convinced that an award of costs is appropriate.  Given the functional equivalency of Mr. Pera's and Mr. Lynk's reports—and the fact that ACI never deposed Mr. Lynk—substitution of the report, by itself, should not impose *additional* costs on ACI.  Furthermore, because the Court has found that good cause exists to allow for substitution, sanctioning the Garvey Defendants in such a manner would be unjust.  *Cf. Parsi v. Daioleslam*, 778 F.3d 116, 128 (D.C. Cir. 2015) (stating that a sanction under Rule 37(b) is not appropriate where the conduct "was substantially justified or the circumstances would otherwise render an expense award unjust").