# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| THE ATLANTA CHANNEL, INC., | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 15-1823 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 210, 221 |
| | : | | |
| HENRY A. SOLOMON, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION & ORDER

### GRANTING NATIONAL CASUALTY COMPANY'S MOTION TO QUASH SUBPOENA; DENYING PLAINTIFF'S MOTION TO COMPEL

## I. INTRODUCTION

This longstanding legal malpractice action involves allegations that Defendant Henry A. Solomon failed to completely fill out a form that he filed with the Federal Communications Commission ("FCC") in December of 1999.  Two discovery motions are before the Court: a motion to quash subpoena filed by non-party National Casualty Company ("National Casualty"), *see* National Casualty's Mot. Quash ("Mot. Quash"), ECF No. 210, and a motion to compel filed by Plaintiff Atlanta Channel, Inc. ("ACI"), *see* Pl.'s Mot. Compel, ECF No. 221.  Both motions address the same general subject matter.  ACI seeks documents and communications related to the malpractice action sent between Mr. Solomon and his insurance company, National Casualty. Mr. Solomon and National Casualty both oppose production of these materials and primarily argue that the work product privilege, along with the common interest doctrine, protect against disclosure.  For the reasons set forth below, the Court finds that, at least at this stage, the work product privilege applies and protects the documents from disclosure.  Accordingly, National Casualty's motion to quash is granted and ACI's motion to compel is denied.

## II.  BACKGROUND[1]

ACI filed this suit to recover damages from the erroneous filing of an incomplete form—an application for a Class A license for a Low Power Television Station—with the FCC on December 29, 1999.  *See* 2d Am. Compl. ¶¶ 26–27, ECF No. 69.  ACI alleges that Mr. Solomon, who was responsible for filing the form, left several questions blank resulting in the FCC rejecting the application.  *Id.*  ¶¶ 28–29, 32.  ACI claims damages of at least $25,000,000 as a result of the rejection.  *Id.* ¶ 70.  Because of a decade-long administrative appeal process, resolution of the claim against Mr. Solomon depends on application of the statute of limitations and untangling a factual dispute about Mr. Solomon's employment status and retirement.  *See Beach TV Props., Inc. v. Solomon*, 306 F. Supp. 3d 70, 89 (D.D.C. 2018) (explaining factual issues that must be resolved by fact finder for claim against Mr. Solomon).

ACI also brought claims against one of Mr. Solomon's former partners, Melodie Virtue, and her law firm, Garvey, Schubert & Barer (the "Garvey Defendants"), for their alleged failure to alert ACI about the potential malpractice claims against Mr. Solomon.  *See* 2d Am. Compl. ¶¶ 80–87.  The claims against the Garvey Defendants are contingent on the jury finding that the statute of limitations bars ACI's claim against Mr. Solomon.  *See id.*  Of particular importance here, the Garvey Defendants assert as their Ninth Affirmative Defense that ACI's claims against them "are limited to the amount it could actually have been able to collect on any judgment obtained against Defendant Henry Solomon, either through available insurance proceeds or assets of Defendant Henry Solomon available to satisfy such judgment."  Garvey Defs.' Ans. at

---

[1] The Court assumes familiarity with its prior opinions—under a different case caption that reflects a prior plaintiff—and limits its discussion of the factual and procedural background to only those points relevant to the present motions.  *See, e.g.*, *Beach TV Props., Inc. v. Solomon*, 324 F. Supp. 3d 115, 118 (D.D.C. 2018); *Beach TV Props., Inc. v. Solomon*, No. 15-cv-1823, 2016 WL 6068806, at *1–4 (D.D.C. Oct. 14, 2016).

10, ECF No. 99.  The Garvey Defendants claim that any judgment entered against Mr. Solomon "would have been uncollectable in whole or in part."  *Id.* at 11.

Counsel for ACI suggests that the Ninth Affirmative Defense puts at issue Mr. Solomon's insurance policy with National Casualty, settlement offers made by ACI, responses to those settlement offers, and any other evidence supporting a claim of bad faith against National Casualty.  *See* W. James Mac Naughton Letter to Court at 1–2, ECF No. 203-1.  ACI has offered to settle the case for the policy limit of $7,000,000, but apparently Mr. Solomon and National Casualty have not responded to the offer.  *Id.* at 2.  ACI believes the refusal to settle the claim for the policy limit may create a viable bad faith claim against National Casualty.  *Id.*  Because the Garvey Defendants' Ninth Affirmative Defense addresses what amounts are collectible, counsel for ACI argues that a "presentation of evidence necessary to determine whether Mr. Solomon (or ACI) has a viable claim for bad faith against National Casualty for failure to settle at the policy limits and, therefore an obligation to pay the [e]xcess."  *Id.* at 2.

In pursuit of such a claim, ACI issued a subpoena to National Casualty seeking "correspondence or communication between National Casualty and [Mr.] Solomon" regarding this lawsuit, a separate lawsuit related to the scope of insurance coverage,[2] Mr. Solomon's insurance policy, settlement offers, and reservation of rights letters.  Subpoena Duces Tecum at 6,[3] ECF No. 210-2.  ACI also seeks production of documents "regarding any loss reserves made by National Casualty" related to this lawsuit.  *Id.*  ACI seeks essentially the same documents from Mr. Solomon.  *See* Solomon Objs. and Resp. to Pl.'s Reqs. for Produc., ECF No. 233-3.

---

[2] This separate lawsuit remains pending before this Court.  *See Nat'l Casualty Co. v. Henry A. Solomon, et al.*, No. 20-cv-699 (D.D.C.).

[3] The Court here cites the page numbers electronically generated by the case filing system.

ACI also seeks to compel Mr. Solomon to answer the following request for admission: "Defendant Henry A Solomon would accept [an offer to settle this action for $7,000,000] if advised by National Casualty that it consented to his acceptance of the [o]ffer and would pay the $7,000,000 from the proceeds of the [insurance policy from National Casualty]." *See* Solomon Objs. and Resp. to Pl.'s Reqs. for Admis. at 3, ECF No. 233-4.

### III.  LEGAL STANDARD

A person or entity served with a subpoena may move to quash or modify the subpoena under Federal Rule of Civil Procedure 45(c)(3).  "Rule 45(c)(3)(A)(iii) provides that a court may quash a subpoena if it 'requires disclosure of privileged or other protected matter, if no exception or waiver applies.'"  *W. Bay One, Inc. v. Does 1-1,653*, 270 F.R.D. 13, 14 (D.D.C. 2010) (quoting Fed. R. Civ. P. 45(c)(3)(A)(iii)).  Under Rule 45, "when subpoenaed information is withheld based on a claim of privilege, the claim of privilege must 'describe the nature of the withheld [information] in a manner that, without revealing the information itself privileged or protected, will enable the parties to assess the claim.'"  *Id.* at 15 (quoting Fed. R. Civ. P. 45(d)(2)).  The burden of persuasion on a motion to quash is borne by that movant.  *Id.*

A party may file a motion to compel discovery if another party has failed to respond to a proper discovery request.  Fed. R. Civ. P. 37(a).  "Courts consider the prior efforts of the parties to resolve the dispute, the relevance of the information sought, and the limits imposed by Rule 26(b)(2)(C) when deciding whether to grant a motion to compel."  *Barnes v. District of Columbia*, 289 F.R.D. 1, 5–6 (D.D.C. 2012).  "When the opposing party refuses to respond to a discovery request, the burden shifts to the opposing party to show that the movant's request is burdensome, overly broad, vague or outside the scope of discovery."  *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 27 (D.D.C. 2012).  Under Rule 26, a party "may

obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. Pro. 26(b)(1). "An appellate court will reverse a grant or denial of a motion to compel only if it finds that the district court abused its discretion." *Kellogg Brown*, 284 F.R.D at 27 (citing *Lipscomb v. Winter*, No. 08-cv-5452, 2009 WL 1153442, at *1 (D.C. Cir. Apr. 3, 2009)).

## IV.  ANALYSIS

The Court first discusses the application of the attorney work product privilege and common interest doctrine to the requested documents.  This analysis is applicable to both pending motions.  The Court will then address ACI's request for documents relating to National Casualty's loss reserve for this case.  Finally, the Court will turn to ACI's motion to compel a response to its request for admission.

### A.  Work Product Privilege and Common Interest Doctrine

"The attorney work-product privilege protects 'the files and the mental impressions of an attorney . . . reflected, of course, in interviews, statements, memoranda, correspondence, briefs . . . and countless other tangible and intangible ways.'" *Rockwell Int'l Corp. v. U.S. Dep't of Justice*, 235 F.3d 598, 604–05 (D.C. Cir. 2001) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947)).  The work product privilege "protect[s] the adversary trial process itself" because "the integrity of our system would suffer if adversaries were entitled to probe each other's thoughts and plans concerning the case." *Id.* at 605 (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980)).  While disclosure alone can waive the attorney-client privilege, "it is well-settled that it is more difficult to waive the attorney work-product privilege than it is to waive the attorney-client privilege." *Feld v. Fireman's Fund Ins. Co.*, 991 F. Supp. 2d 242, 252 (D.D.C. 2013); *see, e.g.*, *In re Sealed Case*, 676 F.2d 793, 814 n.83 (D.C.

Cir. 1982) (rejecting the theory "that the work product privilege would be waived for all material as to which the attorney-client privilege had also been waived"); *Permian Corp. v. United States*, 665 F.2d 1214, 1219 (D.C. Cir.1981) (contrasting "the strict standard of waiver in the attorney-client privilege context" with "the more liberal standard applicable to the work product privilege"); *United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980) ("We do not consider the strict standard of waiver in the attorney-client privilege context . . . to be appropriate for work product cases."); *United States v. Deloitte LLP*, 610 F.3d 129, 139 (D.C. Cir. 2010) ("While voluntary disclosure waives the attorney-client privilege, it does not necessarily waive work-product protection.").  Under D.C. Circuit precedent, "the work-product privilege is waived when the proponent takes action that would 'undercut the adversary process.'"  *Feld*, 991 F. Supp. 2d at 252 (quoting *Deloitte*, 610 F.3d at 140).  Such action includes "plac[ing] prior attorney work product squarely 'at issue' in the case."  *Id.*

The common interest doctrine "is an extension of the attorney-client privilege that protects from forced disclosure communications between two or more parties and/or their respective counsel if they are participating in a joint defense agreement."  *Intex Recreation Corp. v. Team Worldwide Corp.*, 471 F. Supp. 2d 11, 15–16 (D.D.C. 2007) (quoting *United States v. Hsia*, 81 F. Supp. 2d 7, 16 (D.D.C. 2000)).  The doctrine "protects communications between the parties where they 'are part of an on-going and joint effort to set up a common defense strategy' in connection with actual or prospective litigation."  *Id.* at 16 (quoting *Minebea Co., Ltd. v. Papst*, 228 F.R.D. 13, 15 (D.D.C. 2005)).  It applies "to communications and documents protected by the work product doctrine."  *Id.*  "[T]he party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were

designed to further the effort, and (3) the privilege has not been waived." *Minebea*, 228 F.R.D. at 16.

ACI claims the requested documents are relevant to the Garvey Defendants' Ninth Affirmative Defense and that no privilege prevents disclosure. ACI has a multi-step argument about the relevance of the documents. First, as noted above, ACI offered to settle this case for the policy limit of $7,000,000. ACI Opp'n Mot. Quash at 2, ECF No. 216. Second, ACI believes that National Casualty's rejection of this settlement offer may give rise to a bad faith claim[4] against the insurance provider. *Id.* Third, a successful claim of bad faith would potentially make National Casualty liable for damages greater than the policy limit. *Id.* Fourth, the Garvey Defendants' Ninth Affirmative Defense puts Mr. Solomon's ability to pay any damages beyond the policy limit at issue. *Id.* at 4. Therefore, any evidence supporting a potential claim of bad faith against National Casualty is relevant to the Garvey Defendants' Ninth Affirmative Defense. *Id.* ACI believes evidence supporting a potential claim of bad faith can only be found in the documents it seeks and, as such, it claims it has demonstrated a substantial need for the materials that overrides any work product or common interest protections. *See id.* at 13. ACI also argues that Mr. Solomon and National Casualty have failed to establish a common legal interest and that National Casualty's lawsuit seeking declaratory judgment destroys any common interest claim. *See id.* at 13–17.

Mr. Solomon and National Casualty primarily argue that the work product privilege protects the documents ACI seeks from disclosure. National Casualty points to two cases

---

[4] ACI does not discuss what law would govern such a claim or provide any description of the elements of a claim of bad faith.

decided by the Alabama Supreme Court[5] that stand for the proposition that the contents of an insurance file, when prepared in anticipation of litigation, are shielded from disclosure by the work product privilege.  *See* Mot. Quash at 3–5 (citing *Ex parte Nationwide Mut. Fire Ins. Co.*, 898 So. 2d 720 (Ala. 2004) and *Ex parte State Farm Mut. Auto. Ins. Co.*, 386 So. 2d 1133 (Ala. 1980)).  Furthermore, National Casualty filed a declaration that confirms National Casualty agreed to defend Mr. Solomon in 2015, has defended him continuously since that time, and only opened his claim file after the Complaint in this action was filed.  *See* Decl. of Larry D. Mason ("Mason Decl.") ¶¶ 3, 4, 7, ECF No. 210-1.  The declaration also states that the "claim file includes information directly received from Solomon's defense counsel, including, for example, defense counsel's communications regarding legal analysis, pre-trial and trial defense strategy, settlement and case value/risk evaluations, defense counsel's mental impressions, and attorney work product relevant to all stages of the litigation."  *Id.* ¶ 8.  Mr. Solomon argues that the broad protections of the work product privilege apply to the requested documents and that no actions have been taken to waive that protection.  *See* Solomon's Opp'n Mot. Compel at 6–9, ECF No. 233.  In support of his opposition, Mr. Solomon filed a privilege log that details the privilege claims for the requested documents, all of which include a claim of the work product privilege. *See* Solomon's Privilege Log, ECF No. 233-3.

The Court find that the work product privilege and common interest doctrine apply to the requested documents.  The materials submitted by Mr. Solomon and National Casualty support the claim of work product privilege because the requested materials were produced because of

---

[5] National Casualty's motion also refers to an erroneous party.  *See* Mot. Quash at 2 ("Consequently, Cahaba's subpoena must be quashed . . . .").  This error suggests that the citation of Alabama law may reflect that the argument was copied-and-pasted from another case by counsel.

ongoing litigation and contain counsel's mental impressions, litigation and trial strategy, and legal analysis. *See Deloitte*, 610 F.3d at 137 (stating that the D.C. Circuit "appl[ies] the 'because of' test, asking whether . . . the document can fairly be said to have been prepared or obtained because of the prospect of litigation"). Ordering disclosure would undermine the adversary process because it would allow ACI to review years of correspondence related to litigation strategy just months before trial. *See Rockwell*, 235 F.3d at 604–05. The common interest doctrine applies because National Casualty has "agreed to defend Henry A. Solomon," and has "continuously defended Mr. Solomon" since December 2015. Mason Decl. ¶¶ 3–4. National Casualty and Mr. Solomon share an obvious legal interest—National Casualty's liability rises and falls with Mr. Solomon's. Mr. Solomon's confidential disclosure of work product to National Casualty in this situation, where National Casualty is paying his legal bills and shares an interest in the outcome of the case, makes sense. For this reason, even if the common interest doctrine did not apply, the Court does not find that disclosure of the work product materials to National Casualty would waive the privilege. *See Deloitte*, 610 F.3d at 140 ("Voluntary disclosure does not necessarily waive work-product protection, however, because it does not necessarily undercut the adversary process."). Because of the relationship between National Casualty and Mr. Solomon, disclosure of work product in this case is not "inconsistent with the maintenance of secrecy from the disclosing party's adversary." *Id.* (quoting *Rockwell*, 235 F.3d at 605). Furthermore, the lawsuit brought by National Casualty against Mr. Solomon and ACI seeking declaratory judgment does not waive the work product privilege here because that matter does not place the work product in this case squarely at issue. *See Feld*, 991 F. Supp. 2d at 252.

ACI's claim of substantial need for the documents does not override the work product protection. In support of its position, ACI relies on a case involving an actual claim of bad faith

against an insurance company and a case where the work product privilege was upheld.  *See Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 575 (9th Cir. 1992) (reviewing judgment in "action for unfair claim settlement practices"); *Logan v. Commercial Union Insurance Company*, 96 F.3d 971, 977 (7th Cir. 1996) (holding that "a mere allegation of bad faith is insufficient to overcome the work product privilege").  There is no claim of bad faith here.  ACI's bare belief that National Casualty's rejection of its settlement offer constitutes evidence of bad faith is insufficient to override the work product privilege.  Although the Court can follow ACI's multi-step rationale for needing the documents, it is too attenuated to dissolve important work product protections.  It would be manifestly unjust to force disclosure of Mr. Solomon's work product simply because the Garvey Defendants pled a particular affirmative defense.  Accordingly, the Court finds that the documents requested in the subpoena issued to National Casualty and sought through ACI's motion to compel are protected by the work product privilege and common interest doctrine.

### B.  Loss Reserve Documents

ACI's subpoena also seeks "documents regarding loss reserves made by National Casualty" related to this lawsuit.  Subpoena Duces Tecum at 6.  National Casualty responds to this request by arguing that most courts have rejected attempts at discovery of an insurer's reserves.  Mot. Quash at 5–6.  National Casualty urges the Court to adopt the reasoning in *First Horizon Nat'l Corp. v. Certain Underwriters at Lloyd's*, No. 211-cv-02608, 2013 WL 11090763 (W.D. Tenn. Feb. 27, 2013).[6]  In that case, the court found that "reserves are of marginal relevance" because they amount to mere estimates and are not based on full knowledge of the

---

[6] *First Horizon* involved claims against insurers for breach of contract and bad faith. *First Horizon*, 2013 WL 11090763, at *1.

facts.  *Id.* at *9.  The court also found that reserve documents would likely constitute privileged materials.  *Id.*  Pointing to a different body of cases, ACI contends that the loss reserve documents are relevant and discoverable.  ACI's Opp'n Mot. Quash at 5–7.

At this point, because there is no claim of bad faith pending against National Casualty, the Court will not require production of the loss reserve documents.  All the cases cited by ACI involved actual claims of bad faith against an insurance provider.  *See Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 328 (N.D. W. Va. 2006) (noting complaint alleged failure "to attempt in good faith" to settle); *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 139 (S.D.N.Y. 2012) (explaining relevance of reserve documents to support plaintiff's claim of failure to settle in good faith); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 645 (D. Kan. 2007) (stating that "the actual amounts of the Insurers' loss reserves . . . could, at the least, lead to admissible evidence relating to . . . their good or bad faith in handling and investigating [the] claims"); *Bernstein v. Travelers Ins. Co.*, 447 F. Supp. 2d 1100, 1107 (N.D. Cal. 2006) (addressing claims that insurer acted "in bad faith"); *Dogra v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-01841, 2015 WL 5086434, at *1 (D. Nev. Aug. 25, 2015) (involving "'bad faith' claim[s] against Liberty Mutual").  ACI's theory about a hypothetical claim of bad faith does not implicate the precedent cited.  Accordingly, the Court will not require National Casualty to produce the documents.  *See Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 117 F.R.D. 283, 288 (D.D.C. 1986) (denying motion to compel production of loss reserve documents); *but see Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 192–93 (D.D.C. 1998) (allowing discovery of loss reserve documents to support claim of bad faith).

### C.  ACI's Request for Admission

Finally, ACI seeks to compel Mr. Solomon to answer the following request for admission: "Defendant Henry A Solomon would accept [an offer to settle this action for $7,000,000] if advised by National Casualty that it consented to his acceptance of the [o]ffer and would pay the $7,000,000 from the proceeds of the [insurance policy from National Casualty]." Solomon Objs. and Resp. to Pl.'s Reqs. for Admis. at 3.  Mr. Solomon responded to the request for admission as follows:

> Objection, on the grounds that Request for Admission does not seek admission of facts, the application of law to fact, or opinions about either as intended by Fed. R. Civ. P. 36, but instead seeks an admission as to a hypothetical fact situation that has not occurred to date.  Subject to and without waiving that objection, denies as phrased, and states that if National Casualty desires to negotiate a settlement, Defendant Solomon, subject to advice of counsel, would likely in advance of the negotiations provide his consent in writing to settlement.

*Id.*  ACI argues that Mr. Solomon "cannot evade stating his current intent (a relevant fact question) on the grounds of 'a hypothetical fact situation that has not occurred to date.'"  ACI's Mot. Compel at 6.  In response, Mr. Solomon argues that "[a] request for admission based on a hypothetical set of facts is improper."  Solomon Opp'n Mot. Compel at 10 (citing *Abbott v. United States*, 177 F.R.D. 92, 93 (N.D.N.Y. 1997)).

Requests for admission may ask an opposing party to admit matters relating to "facts, the application of law to fact, or opinions about either."  Fed. R. Civ. P. 36(a)(1)(A).  ACI's request unquestionably depends on a hypothetical fact situation, even as ACI attempts to portray the request as one about Mr. Solomon's current intent.  ACI has not supported with any precedent its position that Mr. Solomon must respond to the request for admission based on a hypothetical

situation.[7]  Mr. Solomon, in opposition, points to several cases from various districts that

concluded hypothetical requests for admission are improper.  *See* Solomon Opp'n Mot. Compel

at 10 (citing *Abbott*, 177 F.R.D. at 93; *Buchanan v. Chicago Transit Auth.*, No. 16-cv-4577, 2016

WL 7116591 (N.D. Ill. Dec. 7, 2016); *Morley v. Square, Inc.*, No. 4:10-cv-2243, 2016 WL

123118 (E.D. Mo. Jan. 11, 2016); *Storck USA, L.P. v. Farley Candy Co., Inc.*, No. 92-c-552,

1995 WL 153260 (N.D. Ill. 1995)).  The Court will follow the on-point cases and accordingly

deny ACI's request to compel a further response on the request for admission.

## V.  CONCLUSION

For the foregoing reasons, National Casualty's motion to quash subpoena (ECF No. 210)

is **GRANTED** and ACI's motion to compel (ECF No. 221) is **DENIED**.

**SO ORDERED**.

Dated:  November 18, 2020                                RUDOLPH CONTRERAS
                                                         United States District Judge

---

[7] In reply, ACI attempts to analogize the request for admission here with the narrow scenario where discovery has been allowed concerning "hypothetical negotiations" used in patent cases to establish lost royalties.  *See* ACI's Reply Mot. Compel at 3–4, ECF No. 234. ACI does not, however, offer any precedent about requests for admission involving hypothetical factual scenarios outside of that narrow context or attempt to explain why the Court should not follow the cases of broader applicability cited by Mr. Solomon.